UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUSCH BLACKWELL, LLP, | |
| Plaintiff, | |
| v. | Civil Action No. 24-2733 (JDB) |
| DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants, the Department of Commerce, by and through undersigned counsel, hereby move for summary judgment pursuant to Federal Rule of Civil Procedure 56. In support of this motion, Defendants respectfully submit the attached memorandum.

Dated: May 23, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Dedra S. Curteman* _____
      DEDRA S. CURTEMAN, D.C. Bar
      #90021492
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2550

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUSCH BLACKWELL, LLP,

Plaintiff,

v.

DEPARTMENT OF COMMERCE, et al.,

Defendants.

Civil Action No. 24-2733 (JDB)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

Background ................................................................................................................. 1

    I.    Procedural Background: .................................................................... 1

    II.   Exemptions Claimed ........................................................................ 5

Legal Standard ......................................................................................................... 5

Argument ................................................................................................................. 6

    I.    Defendants Performed A Reasonable Search. ................................. 7

    II.   Defendants Properly Invoked Exemptions 1 and 3 to Withhold Exempt Information. ............................................................................... 10

        A.    Exemption 1 Withholdings Pursuant to an Executive Order ................... 11

        B.    Exemption 3 Withholdings Pursuant to ECRA ........................................ 12

    III.  Defendants Properly Invoked Exemptions 5 and 6 to Withhold Exempt Information. ............................................................................... 15

        A.    The Attorney-Client Privilege & Attorney Work Product Withholdings . 15

        B.    The Deliberative Process Privilege Withholdings .................................... 17

        C.    The Exemption 6 Withholdings ............................................................... 21

    IV.  Defendants Reasonably Segregated Exempt Material from Non-Exempt Material. ...................................................................................... 22

CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

*Ghassan v. Dep't of Just.,*
  Civ. A. No. 22-1615 (RDM), 2023 WL 1815650 (D.D.C. Feb. 8, 2023) ............................... 5

*ACLU v. Dep't of Def.,*
  628 F.3d 612 (D.C. Cir. 2011) ........................................................................................ 11

*Amadis v. Dep't of State,*
  971 F.3d 364 (D.C. Cir. 2020) ....................................................................................... 20

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ........................................................................................................ 6

*Armstrong v. Exec. Off. of the President,*
  97 F.3d 575 (D.C. Cir. 1996) ......................................................................................... 22

*Bader Fam. Found. v. United States Dep't of Educ.,*
  630 F. Supp. 3d 36 (D.D.C. 2022) ................................................................................. 21

*Beck v. Dep't of Just.,*
  997 F.2d 1489 (D.C. Cir. 1993) ..................................................................................... 22

*Brown v. Dep't of Just.,*
  742 F. Supp. 2d 126 (D.D.C. 2010) ................................................................................. 9

*Canning v. Dep't of Just.,*
  567 F. Supp. 2d 104 (D.D.C. 2008) ............................................................................... 22

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,*
  600 F. Supp. 114 (D.D.C. 1984) .............................................................................. 18, 19

*Cleveland v. United States,*
  128 F. Supp. 3d 284 (D.D.C. 2015) ............................................................................... 17

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) .......................................................................... 16, 17, 18

*CREW v. Dep't of Homeland Sec.,*
  648 F. Supp. 2d 152 (D.D.C. 2009) ............................................................................... 18

*Defs. of Wildlife v. Dep't of Interior,*
  314 F. Supp. 2d 1 (D.D.C. 2004) ..................................................................................... 8

*Defs. of Wildlife v. U.S. Border Patrol,*
  623 F. Supp. 2d 83 (D.D.C. 2009) ................................................................................... 8

*Dep't of Def. v. Fed. Labor Relations Auth.,*
  510 U.S. 487 (1994) ........................................................................................................ 6

*Dep't of Just. v. Tax Analysts*,
  492 U.S. 136 (1989) ................................................................ 7

*Durant v. Dist. of Columbia*,
  875 F.3d 685 (D.C. Cir. 2017) ................................................ 6

*Elec. Frontier Found. v. Dep't of Just.*,
  739 F.3d 1, 10 (D.C. Cir. 2014) ........................................... 19

*Emuwa v. Dep't of Homeland Sec.*,
  113 F.4th 1009 (D.C. Cir. 2024) .......................................... 23

*Food Mktg. Inst. v. Argus Leader Media*,
  588 U.S. 427 (2019) ............................................................. 7

*FPL Grp. Inc. v. IRS*,
  698 F. Supp. 2d 66 (D.D.C. 2010) ...................................... 18

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................... 18

*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) ........................................... 8

*Horowitz v. Peace Corps*,
  428 F.3d 271 (D.C. Cir. 2005), cert denied, 547 U.S. 1041 (2006) ....................................... 21

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................ 18

*In re Sealed Case*,
  146 F.3d 881 (D.C. Cir. 1998) ............................................ 17

*Jud. Watch, Inc. v. Dep't of Just.*,
  20 F.4th 49 (D.C. Cir. 2021) ............................................... 18

*Jud. Watch, Inc. v. Food & Drug Admin.*,
  449 F.3d 141 (D.C. Cir. 2006) ............................................ 21

*Jud. Watch, Inc. v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ........................................ 8

*Kowalczyk v. Dep't of Just.*,
  73 F.3d 386 (D.C. Cir. 1996) ...................................... 8, 9, 10

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ....................................... 10, 11

*Leopold v. Dep't of Just.*,
  94 F.4th 33 (D.C. Cir. 2024) ............................................... 23

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ............................................................................ 22

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ........................................................................... 17

*McCutchen v. Dep't of Health & Hum. Servs.*,
    30 F.3d 183 (D.C. Cir. 1994) .............................................................................. 6

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ........................................................... 7, 15, 19, 22

*Moore v. CIA*,
    Civ. A. No. 20- 1027 (RCL), 2022 WL 2983419 (D.D.C. July 28, 2022) ............................ 11

*Nat'l Treas. Emps. Union v. Customs Serv.*,
    802 F.2d 525 (D.C. Cir. 1986) ............................................................................ 7

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ............................................................................. 15, 18, 19

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) .............................................................................. 8

*Petroleum Info. Corp. v. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ..................................................................... 17, 18

*Pub. Citizen Health Rsch. Grp. v. FDA*,
    185 F.3d 898 (D.C. Cir. 1999) ............................................................................ 7

*Reps. Comm. for Freedom of the Press v. CBP*,
    567 F. Supp. 3d 97 (D.D.C. 2021) ..................................................................... 16

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ........................................................................... 17

*Rockwell Int'l Corp. v. Dep't of Just.*,
    235 F.3d 598 (D.C. Cir. 2001) ......................................................................... 15

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197, 1201 (D.C. Cir. 1991)................................................................. 7-8

*Schrecker v. Dep't of Just.*,
    349 F.3d 657 (D.C. Cir. 2003) ........................................................................... 8

*Shapiro v. Dep't of Just.*,
    893 F.3d 796, 799 (D.C. Cir. 2018) .................................................................. 11

*Shem-Tov v. Dep't of Just.*,
    531 F. Supp. 3d 102 (D.D.C. 2021) ..................................................................... 6

*Shem-Tov v. Dep't of Just.*,
  Civ. A. No. 17-2452 (RDM), 2020 WL 2735613 (D.D.C. May 25, 2020) ........................... 6

*Steinberg v. Dep't of Just.*,
  23 F.3d 548 (D.C. Cir. 1994) ..................................................................................... 9

*Sussman v. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ................................................................................. 23

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ..................................................................... 9, 15, 16, 17

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) ..................................................................................... 8

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ..................................................................................... 7

*Watkins L. & Advoc., PLLC v. Dep't of Just.*,
  78 F.4th 436 (D.C. Cir. 2023) ..................................................................................... 6

*Weisberg v. Dep't of Just.*,
  627 F.2d 365 (D.C. Cir. 1980) ..................................................................................... 9

*Weisberg v. Dep't of Just.*,
  745 F.2d 1476 (D.C. Cir. 1984) ................................................................................... 8

*Weisberg v. Dep't of Just.*,
  705 F.2d 1344 (D.C. Cir. 1983) ................................................................................... 7

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ..................................................................................... 7

On September 27, 2023, Plaintiff Husch Blackwell LLP ("Husch Blackwell") submitted requests to Defendant Bureau of Industry and Security ("BIS") seeking the final proposal and accompanying materials submitted to the End-User Review Committee in support of the decision to place two corporations on the BIS Entity List.  Compl. (ECF No. 1) ¶¶ 15-16.  This lawsuit brought pursuant to the Freedom of Information ("FOIA"), 5 U.S.C. § 552, challenges BIS' responses.  Because Defendants produced all reasonably segregable information responsive to Plaintiff's requests, consistent with BIS's FOIA obligations and withholding only information exempt from production under FOIA Exemptions 1, 3, 5, and 6, this Court should grant summary judgment in favor of Defendants pursuant to Federal Rule of Civil Procedure ("Rule") 56.

## BACKGROUND

Defendants Department of Commerce ("Department") and BIS incorporate the attached Statement of Undisputed Material Facts ("SUMF") and the exhibits thereto, including the Declaration of Stephanie Boucher ("Boucher Decl.") and the Defendants' *Vaughn* Index (attached as Ex. 15).

## I.    **Procedural Background:**

BIS maintains the Entity List, which identifies foreign entities for which the United States Government finds "reasonable cause to believe, based on specific and articulable facts, that the entities have been involved, are involved, or pose a significant risk of being involved in activities contrary to the national security or foreign policy interests of the United States."  Compl. (ECF No. 1) ¶ 8 (quoting 60 F.3d Reg. 77,505 (Dec. 19, 2022)).  Under the Export Administration Regulations, placement on the Entity List subjects the entity to specific license requirements for the export, reexport, and/or transfer (in country) of specified items.  *See id*. ¶ 9.

On September 27, 2023, Mr. Gregg N. Sofer of Husch Blackwell filed two separate FOIA requests to BIS seeking "a copy of the final proposal and any accompanying attachments, exhibits,

or appendices that were submitted to the End-User Review Committee ("ERC") in support of the decision to place Yangtze Memory Technologies Corporation ("YMTC") and Yangtze Memory Technologies Corporation (Japan) ("YMTJ") on the BIS Entity List." The requestor sought these records from BIS both in its capacity as Chair of the End Use Review Committee and in its capacity as an individual member of the ERC. Boucher Decl. ¶ 4; *see also* Plaintiff's FOIA Requests (attached as Exs. 1 and 2). On September 29, 2023, BIS acknowledged both FOIA requests via email and assigned them tracking numbers DOC-BIS-2023-010061 and DOC-BIS-2023-010062. Boucher Decl. ¶ 5; *see also* Sept. 29, 2023, Acknowledgment Emails (attached as Exs. 3 and 4). On October 17, 2023, BIS sent fee estimate letters to Plaintiff for FOIA requests DOC-BIS-2023-010061 and DOC-BIS-2023-010062. Boucher Decl. ¶ 6; *see also* Fee Estimate Letters (attached as Ex. 5 and 6). On November 1, 2023, Plaintiff sent an email confirming that BIS was to combine FOIA requests DOC-BIS-2023-010061 and DOC-BIS-2023-010062 and that BIS would cancel one of the checks sent in by Husch Blackwell. Boucher Decl. ¶ 7; *see also* Ex. 7, Nov. 1, 2023, Email.

On January 26, 2024, BIS responded to Plaintiff, indicating that it had located 553 pages responsive to Plaintiff's combined FOIA requests. Boucher Decl. ¶ 10; *see also* Ex. 10, Jan. 26, 2024, Letter. The response informed Plaintiff that all of the records were exempt in full and exempt from production under FOIA pursuant to Exemptions 1, 3, 5, and 6. *Id.*

Plaintiff appealed BIS' withholding determination on February 26, 2024. Boucher Decl. ¶ 11; *see also* Ex. 11, Feb. 26, 2024, Appeal.

Subsequently, BIS made a first interim release to Plaintiff on March 21, 2025. Boucher Decl. ¶ 12; *see also* Ex. 12, Mar. 21, 2025, Interim Production. BIS released 10 pages in their entirety, and 124 pages in part with redactions made pursuant to FOIA Exemptions 3, 5, and 6. *Id.*

BIS also determined at that time that it would withhold 383 pages in their entirety pursuant to FOIA Exemptions 1, 3, and 5, and that 29 of the 553 pages originally deemed responsive were not actually responsive to the request. *Id*. Additionally, BIS sent 7 pages for consultation to another government agency. *Id*.

On April 11, 2025, the Information Law Division, Office of General Counsel, Department of Commerce issued the Department's final decision on Plaintiff's FOIA appeal. Boucher Decl. ¶ 13; *see also* Ex. 13, Apr. 11, 2025, Appeal Determination. The appeal was partially granted and partially denied. *Id*. The Under Secretary for BIS issued a National Interest Determination ("NID") on May 6, 2025, regarding the information withheld pursuant to FOIA Exemption 3 and 50 U.S.C. § 4820(h)(1), also known as section 1761(h)(1) of the Export Control Reform Act of 2018 ("ECRA"). Boucher Decl. ¶ 14. The Under Secretary made the determination that release of the withheld information was not in the national interest. *Id*. Plaintiff was made aware of the NID via BIS' final determination letter dated May 15, 2025. *Id*.

On May 15, 2025, BIS made a second and final interim release and provided Plaintiff with a final determination letter. Boucher Decl. ¶ 15; *see also* Ex. 14, May 15, 2025, Final Production Letter. BIS released seven pages which, at the time of the first interim release, had been pending consultation with another government agency and were released in part with redactions made pursuant to FOIA Exemptions 3, 5, and 6. *Id*. The second interim release also included 55 pages inadvertently omitted from the first interim document production, providing Bates-stamped records of pages that were withheld in full. *Id*. BIS also advised Plaintiff of the NID determination. *Id*.

As to BIS' search, on November 2, 2023, the former FOIA Officer sent a search tasker to the Department's Office of the Chief Information Officer ("OCIO") asking that an email search

be conducted in response to the Plaintiff's FOIA request.  The search tasker established the following search criteria: (a) listing of email accounts to be searched; (b) terms to be used; and (c) date range of the search.  *Id*. ¶ 16.  The tasker requested that the email accounts of Joseph Cristofaro, Elena Love, and Carmen Quesenberry be searched.  *Id*.; *see also* Boucher Decl. ¶ 23 (describing the role of the ERC and its administration of the Entity List; ¶ 25 (describing that the three BIS employees whose emails were chosen all served as the Chair or Acting Chair of the ERC).  The search terms that were to be used were Yangtze Memory Technologies Corporation "YMTC" and Yangtze Memory Technologies Corporation (Japan) "YMTJ."  The timeframe was December 1, 2022, to January 31, 2023.  Boucher Decl. ¶ 16.

The results from the first OCIO email search were received on November 3, 2023, by the former BIS FOIA Officer and sent to the e-discovery team used by BIS.  *Id*. ¶ 17.  On November 14, 2023, the e-discovery team notified the former BIS FOIA Officer that the documents provided did not seem to match the request.  A search term report and summary were provided.  The documents that had been provided by OCIO were all BIS news clips.  *Id*. ¶ 18.  Based on the feedback from the e-discovery team and a review of the documents provided, on December 2, 2023, a member of the BIS FOIA team requested OCIO to conduct the email search again using the same terms.  *Id*. ¶ 19.  On December 20, 2023, the BIS FOIA team received the results of the second email search and proceeded to have the documents loaded into the e-discovery tool used by BIS.  *Id*. ¶ 20.  On December 22, 2024, at Ms. Boucher's request, a member of the FOIA team requested that the ERC team conduct a search for records not on email to include shared drives, personal drives and classified systems.  *Id*. ¶ 21.  This search resulted in locating forty additional pages of documents.  *Id*.

Ms. Boucher personally reviewed all unclassified records withheld or released, including reviewing each record released in part, and found no segregable, releasable information that had been withheld. *Id*. ¶ 49.

## II.    **Exemptions Claimed**

BIS herewith provides a *Vaughn* Index. *See* Ex. 15. The Index details 121 documents that were released in part or withheld in full under Exemptions 1, 3, 5 and 6. *See id*. More specifically, BIS withheld in full[1] Document Number 121 under Exemption 1. *See id*. at Doc. No. 121.

Per Exemption 3, BIS released in part[2] Document Numbers 1-2, 4, 6, 8, 10-11, 23-24, 26, 29, 31-32, 35-36, 40, 42-43, 45, 49-50, 61-65, 70, 79, 83, 89, 92, and 100. *See* Ex. 15. Also under Exemption 3, BIS withheld in full Document Numbers 3, 5, 7, 9, 12-22, 25, 27-28, 30, 33-34, 37-39, 41, 44, 46-48, 50-57, 59-60, 66-69, 71-78, 80-82, 84-88, 90-91, 93-99, and 101-120. *See id*.

Per Exemption 5, BIS released in part Document Numbers 1, 2, 4, 6, 8, 10-11, 23-24, 26, 29, 31, 35-36, 40, 42-43, 45, 49, 63-65, 70, 79, 89, 92, and 100. Also under Exemption 5, BIS withheld in full Document Numbers 5, 7, 53, 71-72, 78, 80, and 105.

Per Exemption 6, BIS released in part Document Numbers 2, 6, 24, 29, 31, 36, 42, 63, 64-65, and 89.

## LEGAL STANDARD

"FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure ['Rule'] 56." *Ghassan v. Dep't of Just.*, Civ. A. No. 22-1615 (RDM), 2023 WL 1815650, at *2 (D.D.C. Feb. 8, 2023). Under Rule 56, "[t]he court shall grant summary

---

[1]    BIS has denoted "withheld in full" as "WIF" in the accompanying *Vaughn* Index. *See generally* Ex. 15.

[2]    BIS has denoted "released in part" as "RIP" in the accompanying *Vaughn* Index. *See id*.

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is warranted if the plaintiff has failed to 'present affirmative evidence . . . to defeat a properly supported motion for summary judgment.'"  *Durant v. Dist. of Columbia*, 875 F.3d 685, 696 (D.C. Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

"An agency [typically] proves its entitlement to summary judgment through affidavits or declarations, including a *Vaughn* index, explaining its searches and withholdings."  *Shem-Tov v. Dep't of Just.*, 531 F. Supp. 3d 102, 108 (D.D.C. 2021) (quoting *Shem-Tov v. Dep't of Just.*, Civ. A. No. 17-2452 (RDM), 2020 WL 2735613, at *4 (D.D.C. May 25, 2020)).  More specifically, an agency can meet its burden of showing the withheld material fits within the exemption by "submitting a Vaughn index that adequately explains the decision to withhold certain documents."  *Watkins L. & Advoc., PLLC v. Dep't of Justice*, 78 F.4th 436, 451 (D.C. Cir. 2023) (cleaned up).

## ARGUMENT

Plaintiff requested information in connection with BIS's administration of the Entity List, a list of persons reasonably believed to be involved, or to pose a significant risk of being or becoming involved, in activities contrary to the national security or foreign policy interests of the United States.  *See* Ex. 15, at n.4; *see also* Boucher Decl. ¶ 23.  Defendants properly withheld information pursuant to FOIA by invoking Exemptions 1, 3, 5, and 6, to withhold exempt information as segregated by non-exempt information in responding to Plaintiff's FOIA request.

FOIA does not allow the public to have unfettered access to government files.  *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  Although disclosure is the dominant objective of FOIA, there are several exemptions from the disclosure requirements.  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994).  FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected

from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). Yet agencies also have a public obligation to ensure that exempt information is protected if reasonably foreseeable harm would result from its release. *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) ("FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.' So, just as we cannot properly expand Exemption 4 beyond what its terms permit, we cannot arbitrarily constrict it either by adding limitations found nowhere in its terms." (citations omitted)). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* Index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Emps. Union v. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986); *see also Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treas.*, 802 F.2d at 527 n.9.

## I.    <u>Defendants Performed A Reasonable Search.</u>

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). An agency may search for responsive records in the way its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996). Nor does FOIA require an agency search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis omitted). The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micro manage the

executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 370 (D.C. Cir. 1980) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)). A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through 'purely speculative claims about the existence and discoverability of other documents.'" *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard*, 926 F.2d at 1200); *see also Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("mere speculation that as yet uncovered documents may exist" is insufficient to defeat summary judgment).

Moreover, in responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought. 5 U.S.C. § 552(a)(3)(A). That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort." H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271. The agency must be able to determine "precisely" which records are being requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997). An agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk*, 73 F.3d at 389. Here, as described in the accompanying Boucher Declaration, BIS conducted a reasonable search when it sent a search tasker to the Department's Office of the Chief Information Officer ("OCIO"), asked that an email *See* Boucher Decl. ¶ 16. The tasker subsequently requested that the email accounts of Joseph Cristofaro, Elena Love, and Carmen Quesenberry be searched. *Id.*; *see also* Boucher Decl. ¶ 23 (describing the role of the ERC and its administration of the Entity List; ¶ 25 (describing that the

three BIS employees whose emails were chosen all served as the Chair or Acting Chair of the ERC).  BIS utilized "Yangtze Memory Technologies Corporation "YMTC" and Yangtze Memory Technologies Corporation (Japan) "YMTJ" as search terms and performed a search for the timeframe of December 1, 2022, to January 31, 2023.  *See* Boucher Decl. ¶ 16.  After obtaining initial search results, the personnel from the BIS FOIA team requested OCIO to conduct the email search again using the same terms.  *See id*. ¶ 19.  Using the results from the second search, on December 20, 2023, the BIS FOIA team loaded the documents into an e-discovery tool used by BIS.  *See id*. ¶ 20.  Additionally, on December 22, 2024, at Ms. Boucher's request, a member of the FOIA team requested that the ERC team conduct a search for records not on email to include shared drives, personal drives and classified systems.  *See id.* ¶ 21.  On these bases and those described in the Boucher Declaration, the Court should find that BIS conducted a reasonable search.

## II.    **Defendants Properly Invoked Exemptions 1 and 3 to Withhold Exempt Information.**

Exemption 1 protects matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Exemption 3 covers matters "specifically exempted from disclosure by statute" provided that such statute leaves no discretion on disclosure or "establishes particular criteria for withholding or refers to types of matters to be withheld."  *Id*. § 552(b)(3).  "These exemptions cover not only the content of the protected government records but also the fact of their existence or nonexistence, if that fact properly falls within the exemption."  *Larson v. Dep't of State,* 565 F.3d 857, 861 (D.C. Cir. 2009) (internal quotation marks omitted).

A.      **Exemption 1 Withholdings Pursuant to an Executive Order**

As explained in the accompanying *Vaughn* index (Ex. 15) and the Boucher Declaration, BIS withheld information under FOIA Exemption 1 for document number 121, which is a document related to adding entities to the Entity List and providing supporting information. *See* Ex. 15, Vaughn, Index, at Doc. No. 121. In making that determination, BIS determined, in conjunction with a non-attribution agency, *see* Boucher Decl. ¶ 35, that the document in question met the requirements set forth under Executive Order 13526, an Executive Order that establishes various levels of classification of information based on its level of potential damage to national security. *See id*. ¶¶ 32-35. BIS stated that the document is classified at the Top Secret level and that release of the information will cause grave damage to the national security posture of the United States or its allies. *See* Boucher Decl. ¶ 34; *see also Larson*, 565 F.3d at 864 ("We accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of a particular classified record.") (internal quotation marks omitted).

"[T]his Court is not in a position to second-guess an agency's classification decisions absent a contradiction on the record or evidence of bad faith." *Moore v. CIA*, Civ. A. No. 20- 1027 (RCL), 2022 WL 2983419, at *6 (D.D.C. July 28, 2022) (rejecting plaintiff's argument that CIA "records [we]re too old to justify continued classification"). The D.C. Circuit has "consistently deferred to executive affidavits predicting harm to national security, and ha[s] found it unwise to undertake searching judicial review." *ACLU v. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011) (quoting *Ctr. for Nat'l Sec. Stud.*, 331 F.3d at 927); *see also Shapiro v. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) ("[I]nvoking a FOIA exemption is sufficient if it appears 'logical' or

'plausible.'" (quoting *Larson*, 565 F.3d at 862); *Schaerr v. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) (same). The Court accordingly should uphold the Exemption 1 withholdings.

### B.    Exemption 3 Withholdings Pursuant to ECRA

An agency may withhold information under Exemption 3 "specifically exempted from disclosure by statute" so long as the statute requires withholding from the public in such a manner as to leave no discretion on the issue or establishes particular criteria for withholding or refers to particular types of matters to be withheld. *See* 5 U.S.C. § 552(b)(3)(A)(i).

BIS's authority to administer the Entity List derives from ECRA, which authorizes BIS to "establish and maintain a list of foreign persons and end-uses that are determined to be a threat to the national security and foreign policy of the United States." 50 U.S.C. § 4813(a)(2). The End User Review Committee ("ERC"), an interagency committee chaired by the Department of Commerce, makes decisions on additions to the Entity List, which require a majority vote, as well as decisions on removals or modifications to the Entity List, which require a unanimous vote. 15 C.F.R. Part 744, Supp. No. 5—*Procedures for End-User Review Committee Entity List and 'Military End User' (MEU) List Decisions*. Following a majority vote by the ERC, BIS publishes the decision in the *Federal Register*, thereby notifying the public that a BIS license is required for transactions subject to the Export Administration Regulations to which the entity is a party. *Id.*

The ERC's activities are authorized under 50 U.S.C. § 4812, which authorizes the President to control exports, reexports, and transfers (in-country) of items subject to U.S. jurisdiction. Further, 50 U.S.C. § 4813(a)(2) enables BIS to "restrict exports, reexports, and in-country transfers of any controlled items to any foreign person or end-use" so listed. 50 U.S.C. § 4813(a)(4).

The information requested by Plaintiff, specifically its request for a final proposal and any accompanying attachments, exhibits, or appendices that were submitted to the ERC in support of the decision to place YMTC and YMTJ on the BIS Entity List, are central to the operations of the

ERC and accordingly are exempt from disclosure by statute. Under 50 U.S.C. § 4820(h)(1)(A), "[i]nformation described in subparagraph (B) shall be withheld from public disclosure and shall not be subject to disclosure under section 552(b)(3) of title 5, unless the release of such information is determined by the Secretary to be in the national interest." *Id*. Subsection (B) exempts from disclosure "information submitted or obtained in connection with . . . other operations under [the Export Control Reform Act]." *Id*. § 4820(h)(1)(B). More specifically, the ERC is the interagency body that makes decisions regarding additions to, removals from, or other modifications to the Entity List. *See* Boucher Decl. ¶ 23. The Entity List identifies foreign entities who are subject to specific license requirements for the export, reexport, and/or in-country transfer of certain goods and technologies because those entities are reasonably believed to be involved, or pose a significant risk of being or becoming involved, in activities contrary to the national security or foreign policy interests of the United States. *See id*. The ERC is comprised of representatives from the Departments of Commerce, Defense, Energy, State, and the Department of Treasury as appropriate. The ERC consults regularly with the Intelligence Community ("IC"), but the IC is not a voting member of the ERC. *See id*. If any ERC member agency is not satisfied with the outcome of the vote of the ERC, that agency may escalate the matter to the Advisory Committee on Export Policy ("ACEP"), which is comprised of Assistant Secretary-level representatives of the Departments of Commerce, Defense, Energy and State. *See id*. In addition to deciding on escalated Entity List matters from the ERC, ACEP also decides on export license applications for which the licensing agencies are not in agreement. *See id*.

The information withheld by BIS under Exemption 3 and in conjunction with ECRA squarely fits within the parameters of ECRA's disclosure prohibitions. As explained in the accompanying *Vaughn* Index (Ex. 15), BIS partially withheld or withheld in full information under

Exemption 3 in conjunction with ECRA that reflected the ERC's activities or the activities of the ACEP in the addition of entities to the Entity List, including the addition of YMTC and YMTJ to the Entity List.  Information that BIS partially withheld or withheld in full includes discussions with BIS staff members and BIS members of the ERC relating to adding entities to the BIS Entity List (*e.g.*, Ex. 15 at Doc. No. 1-2, 4, 6, 8-11, 14-18, 20, 22-38, 42-43, 45-51, 57, 60, 64); recommendations sent out by BIS to the interagency members of the ERC (*e.g.*, *id*. at Doc. No. 3); draft proposals made by the ERC for adding entities to the BIS Entity List (*e.g.*, *id*. at Doc. No. 5, 53); draft proposals for additions and revisions to the Entity List (*e.g.*, *id*. at Doc No. 7, 52-56); positions of interagency members of the ERC on proposed additions to the Entity List (*e.g.*, *id*. at Doc. No. 12-13, 41); internal BIS discussions regarding the position of the committee member, and information relating to the ACEP (*e.g.*, id. at Doc. No. 13, 41); statuses of companies to be added to the Entity List and the associated rulemaking (*e.g.*, *id*. at Doc. No. 19); summary for members of the ERC or proposed additions to the Entity List and the approval status with the ERC (*e.g.*, *id*. at Doc. No. 21); summary and outline of proposed entities to be added to the Entity List (*e.g.*, *id*. at Doc. No. 39); memo addressed to the ACEP regarding additions to the Entity List (*e.g.*, *id*. at Doc. No. 44); discussions between ERC members regarding proposed additions to the Entity List and the position of members on the proposed additions to the Entity List (*e.g.*, *id*. at Doc. No. 59, 61-63, 65); discussions between BIS counsel and BIS and ERC staff members regarding the addition of proposed entities to the Entity List and supporting information (*e.g.*, *id*. at Doc. No. 70); and discussions between BIS counsel and BIS and ERC staff members regarding the addition of proposed entities to the Entity List and supporting information (*e.g.*, *id*. at Doc. No. 79, 92).

BIS reasonably concluded that "[d]isclosure of this information would diminish BIS's ability to administer its export control program, in that release could reduce the government's

ability to obtain information that it needs to properly evaluate companies for addition to, removal from, or modification of the Entity List."  *See generally* Ex. 15; *see also* Boucher Dec. ¶ 38.  On May 6, 2025, the Under Secretary of Commerce for Industry and Security (to whom the Secretary has delegated authority with respect to export control matters), *see* Department Organizational Order 10-16, *available at* https://www.commerce.gov/opog/directives/DOO_10-16) (last accessed May 23, 2025), determined, consistent with the statute, *see* 50 U.S.C. § 4820(h)(1)(A), that it was not in the national interest to disclose the records otherwise prohibited from disclosure pursuant to ECRA.  *See* Boucher Decl. ¶ 14.  On these bases, the Court should uphold the Exemption 3 withholdings.

## III.    <u>Defendants Properly Invoked Exemptions 5 and 6 to Withhold Exempt Information.</u>

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client, attorney work-product, confidential commercial information, and deliberative-process privileges.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001).  The Exemption 5 withholdings in this case rest on the attorney-client, attorney work product, and deliberative-process privileges.

### A.    **The Attorney-Client Privilege & Attorney Work Product Withholdings**

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data*, 566 F.2d at 252.  It protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts*, 117

F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).  Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *see also Tax Analysts*, 117 F.3d at 618 ("[T]he 'client' may be the agency and the attorney may be an agency lawyer.").

Here, BIS redacted portions of internal BIS communications between BIS counsel and their agency clients that reflect the two-way exchanges that occur between clients and their attorneys when seeking and providing legal advice, and include facts divulged to one or more attorneys for the purpose of obtaining legal advice as well as opinions given by the attorneys based upon and reflecting those facts.  More specifically, the redacted information squarely fits within the attorney-client privilege because it concerns responses to BIS counsel inquiries and proposed edits, as well as a discussion of the edits made by counsel; requested responses to decisions from a prior meeting; comments and guidance on draft documents as well as proposals for resolution of identified issues; BIS employee responses to counsel edits, questions, and issues, as well as employee requests for review of changes; and questions from BIS attorneys required to be addressed by BIS staff regarding proposed additions to the Entity List.  *See* Ex. 15 at Doc. No. 2, 8, 23, 65, 70-72, 78-80, 92, 100, 105; *see also* Boucher Decl. ¶ 44.  The redacted information fits squarely within the attorney-client privilege.  *See id*.  Further, BIS reasonably determined that disclosure of this information would have a chilling effect on attorney consultations within the executive branch and undermine the future ability of those officials to seek legal advice to guide their policy decisions based upon a full understanding of the relevant facts and law.  *See id.*; *see also Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) (McFadden, J.) ("Release of attorney-client communications would undoubtably undermine our legal culture.  Agencies would

lose an important tool in their decisionmaking process—employees' ability to confidentially consult agency lawyers.").

The attorney work product privilege "protects written materials lawyers prepare 'in anticipation of litigation,'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998), quoting Fed. R. Civ. P. 26(b)(3), to include "factual materials prepared in anticipation of litigation," "opinions, legal theories, and the like." *Tax Analysts*, 117 F.3d at 620. Thus, it affords "a working attorney . . . a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). Here, BIS reasonably withheld information prepared by BIS attorneys in reasonable anticipation of litigation because additions to the Entity List are routinely challenged through litigation. *See* Ex. 15 at Doc. No. 71-72, 78, 80, 105; *see also* Boucher Decl. ¶ 46. On these bases, Defendants reasonably withheld attorney-client communications and attorney work product under Exemption 5.

### B.    The Deliberative Process Privilege Withholdings

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"

*Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States*, 617 F.2d at 866).

The deliberative process privilege protects "materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021).

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info.*, 976 F.2d at 1433–34 (internal quotation marks omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is

needed 'to prevent injury to the quality of agency decisions[.]'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

The withheld information is predecisional because it predates the final ERC determination to add YMTC and YMTJ to the Entity List, and it is deliberative because it contains candid and frank feedback regarding discussions on matters of policy and process relating to adding companies to the Entity List. These discussions reflect the give-and-take inter-agency process through which agency officials determine the substance of the Entity List. *See* Ex. 15 at Doc. No. 1, 2, 4-8, 10-11, 23-24, 26, 29, 31, 35-36, 40, 42-43, 45, 53, 63-65, 70-72, 78-80, 89, 92, 100, 105; *see also* Boucher Decl. ¶¶ 41-42. Specifically, the information withheld pursuant to the deliberative process privilege reflects predecisional and deliberative communications exchanged between BIS staff, counsel, and BIS ERC members on draft regulations, staff edits, discussion of recommended edits from counsel, and edits to the Entity List, as well as staff comments returned to counsel regarding drafts of the Entity List additions, internal staff discussions of processes, deadlines, and proposed plans to move the proposed Entity List additions through the publication process, and proposed timelines, processes, and options for moving the rule forward. *See id.*

This type of back and forth is necessary for BIS to ensure the rulemaking process is thorough and supported. *See Sears*, 421 U.S. at 151 (noting that postdecisional documents may still reflect protected "prior communications and the ingredients of the decisionmaking process"); *Mead Data*, 566 F.2d at 257 ("It would exalt form over substance to exempt documents in which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only 'report' what those recommendations and opinions are."); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014) (explaining that adoption occurs when it is evident that "'reasoning in the report is adopted by the [agency] as its reasoning,'" which is

different showing than simply demonstrating that agency "'agrees with the conclusion of a report'" (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 170 (1975)).

BIS has also provided detailed descriptions of the reasonably foreseeable harm that would ensue from disclosure of this information. *See* Ex. 15 at Doc. No. 1, 2, 4-8, 10-11, 23-24, 26, 29, 31, 35-36, 40, 42-43, 45, 53, 63-65, 70-72, 78-80, 89, 92, 100, 105; *see also* Boucher Decl. ¶ 42. As explained in the *Vaughn* Index, release of the withheld information would result in foreseeable harm to BIS's deliberative process by inhibiting candid internal discussions and the expression of recommendations and judgments by government officials when preparing Entity List recommendations. *See id*. Disclosure of the information, including the views and advice offered during internal discussions pertaining to Entity List recommendations, would chill the flow of internal recommendations, candid assessments, and other necessary exchanges in which BIS officials are involved. *See id*. Disclosure would also hamper future efforts by BIS officials to collaborate with inter-agency partners when drafting the Entity List and to arrive at final decisions on the Entity List in support of BIS' export control administration. *See id*. Further, release of the information would reduce the government's ability to obtain information that it needs to properly evaluate companies for addition to the Entity List and could also cause public confusion as to what constitutes a final ERC decision. *See id*. Enforcement of export controls would be substantially inhibited, and the national security accordingly threatened, if the officials and staff could not collaborate internally in an uninhibited fashion to ensure that listing decisions are made in appropriate circumstances. *See id*. In short, releasing the redacted information would chill or deter BIS employees from engaging in the candid and frank discussions that are so important and necessary to fulfill the Bureau's mission. This chilling effect, along with the other harms described above, fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Amadis v. Dep't of State*, 971

F.3d 364, 370–73 (D.C. Cir. 2020).  Because the materials are predecisional and deliberative, BIS

properly withheld the information under Exemption 5.

### C.    The Exemption 6 Withholdings

Exemption 6 allows agencies to "withhold certain information when disclosing it would

result in a 'clearly unwarranted invasion of personal privacy' and involves balancing privacy and

public interests."  *Bader Fam. Found. v. United States Dep't of Educ.*, 630 F. Supp. 3d 36, 45

(D.D.C. 2022) (quoting *Judicial Watch v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006)).    The

Supreme Court has read Exemption 6 broadly, "concluding the propriety of an agency's decision

to withhold information does not 'turn upon the label of the file which contains the damaging

information.'"  *Jud. Watch, Inc.*, 449 F.3d at 152–53 (D.C. Cir. 2006) (quoting *Dep't of State v.*

*Washington Post Co.,* 456 U.S. 595, 601 (1982)).  Likewise, the D.C. Circuit has read the statute

"to exempt not just files, but also pits of personal information, such as names and addresses, the

release of which would 'create[ ] a palpable threat to privacy.'"  *Jud. Watch, Inc.*, 449 F.3d at 152–

53 (quoting *Carter v. U.S. Dep't of Commerce,* 830 F.2d 388, 391 (D.C. Cir.1987)).

Here, BIS withheld the cellular phone number of a staff level employee in the Regulatory

Policy Division, email addresses of employees working at the National Security Council/

("NSC")/Executive Office of the President ("EOP"), and the identification of an internal general

email inbox.  *See* Ex. 15 at Doc. No. 2, 6, 24, 29, 31, 33, 36, 42, 63, 64-65, and 89; *see also* Boucher

Decl. ¶ 48.

To determine whether BIS appropriately withheld the information, a court must "balance

the private interest involved (namely, the individual's right of privacy) against the public interest

(namely, the basic purpose of the Freedom of Information Act, which is to open agency action to

the light of public scrutiny)."  *Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005), *cert*

*denied*, 547 U.S. 1041 (2006). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492. BIS appropriately determined that the cell phone number and email addresses implicated the privacy interests of BIS employees and employees working at the NSC/EOP, who are responsible for carrying out a national security mission as they manage and enforce export controls and weighed this against the public's right to know what their government is "up to." *See* Ex. 15 at Doc. No. 2, 6, 24, 29, 31, 33, 36, 42, 63, 64-65, and 89; *see also* Boucher Decl. ¶ 48. BIS also reasonably determined that the employees' privacy interests outweighed the public's right to information and that disclosure of this information would not further the core purpose of FOIA which is to shed light on agency activities, consistent with Exemption 6. *See* Ex. 15 at Doc. No. 2, 6, 24, 29, 31, 33, 36, 42, 63, 64-65, and 89; *see also* Boucher Decl. ¶ 48.

## IV.    **Defendants Reasonably Segregated Exempt Material from Non-Exempt Material.**

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that

they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). An agency, however, also "must specifically and thoughtfully" consider whether otherwise exempt information can be released without foreseeable harm to the interests protected by the particular exemption. *Leopold v. Dep't of Just.*, 94 F.4th 33, 37-38 (D.C. Cir. 2024). Nonetheless, an attestation "that 'no further segregation' [i]s possible without disclosing such [exempt] information" suffices to establish an agency's fulfillment of its duty to segregate non-exempt material and to establish foreseeable harm. *Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1017 (D.C. Cir. 2024) (citing 5 U.S.C. § 552(a)(8)(A)(ii)).

Here, Defendants have provided a sworn statement, under penalty of perjury, that Ms. Boucher personally reviewed the information withheld pursuant to these exemptions to ensure that all reasonably segregable information in the documents was released in accordance with the requirements of FOIA. *See* Boucher Decl. ¶ 49. She conducted "a line-by-line review" of all unclassified responsive records "to ensure compliance with FOIA" and to ensure "that the Department released all reasonably segregable non-exempt information." *See id.* Defendants are, accordingly, entitled to summary judgment.

*        *        *

**CONCLUSION**

For these reasons, Defendants request that the Court grant their motion for summary judgment.

Dated: May 23, 2025                    Respectfully submitted,

                                       JEANINE FERRIS PIRRO
                                       United States Attorney


                                       By:    _____*/s/ Dedra S. Curteman*_____
                                              DEDRA S. CURTEMAN
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252-2550

                                       *Attorneys for the United States of America*