UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HUSCH BLACKWELL LLP, | ) | |
| | ) | |
| | ) | Civil Action No. 1:24-cv-02733 (JDB) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF POINTS** |
| | ) | **AND AUTHORITIES IN** |
| DEPARTMENT OF COMMERCE, et al., | ) | **SUPPORT OF PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY** |
| Defendants. | ) | **JUDGMENT** |
| | ) | **[ORAL ARGUMENT** |
| | ) | **REQUESTED]** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................5

LEGAL STANDARD.............................................................................................................5

ARGUMENT .......................................................................................................................5

I.      The Government systematically failed to comply with FOIA...................................5

        A.      The Government has several obligations under FOIA ................................6

        B.      The Government failed to meet its FOIA obligations .............................8

        C.      The Court should order the Government to remedy its FOIA violations .............12

II.     The Government's claimed FOIA exemptions are unjustified and unsupported ..............14

        A.      FOIA Exemption 3.....................................................................................15

        B.      FOIA Exemption 5.....................................................................................23

        C.      FOIA Exemption 6.....................................................................................25

        D.      FOIA Exemption 1.....................................................................................25

        E.      Public information cannot be withheld ..................................................26

CONCLUSION....................................................................................................................27

CERTIFICATE OF SERVICE ...............................................................................................29

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*100Reporters LLC v. United States Dep't of Just.*,
  248 F. Supp. 3d 115 (D.D.C. 2017) .................................................................. 13

*Am. Immigr. Council v. U.S. Customs & Border Patrol*,
  590 F. Supp. 3d 306 (D.D.C. 2022) .................................................................. 24

*Anderson v. Diamondback Inv. Grp., LLC*,
  117 F.4th 165 (4th Cir. 2024) ........................................................................... 19

*Campbell v. U.S. Dep't of Just.*,
  164 F.3d 20 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999), *on remand*, 193 F. Supp. 2d 29
  (D.D.C. 2001) .................................................................................................... 26

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*,
  722 F. Supp. 2d 66 (D.D.C. 2010) ...................................................................... 3

*Citizens For Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*,
  583 F. Supp. 2d 146 (D.D.C. 2008) ......................................................... 23, 24, 25

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*,
  955 F. Supp. 2d 4 (D.D.C. 2013) ................................................... 5, 7, 10, 14

*Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*,
  711 F.3d 180 (D.C. Cir. 2013) .......................................................................... 12

*Clemente v. Fed. Bureau of Investigation*,
  71 F. Supp. 3d 262 (D.D.C. 2014) .................................................................... 12

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................... 23, 25

*Council for a Livable World Educ. Fund v. United States Dep't of State*,
  No. 96-1807 (HHK), 1998 U.S. Dist. LEXIS 23642 (D.D.C. Jan. 22, 1998) ......... 20

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ...................................................................... 5

*Dep't of Interior v. Klamath Water User Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................................................... 6

*Elec. Info. Ctr. v. Dep't of Just.*,
  511 F. Supp. 2d 56 (D.D.C. 2007) ...................................................................... 7

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
  416 F. Supp. 2d 30 (D.D.C. 2006) .................................................................... 12

*Ethyl Corp. v. U.S. Envt'l Protection Agency*,
  25 F.3d 1241 (4th Cir. 1994) .............................................................................. 5

*Fitzgibbon v. C.I.A.*,
  911 F.2d 755 (D.C. Cir. 1990) ................................................................... 26, 27

*Founding Church of Scientology of Washington, D. C., Inc. v. Bell*,
  603 F.2d 945 (D.C. Cir. 1979) .......................................................................... 14

*Jacobs v. Fed. Bureau of Prisons*,
  725 F. Supp. 2d 85 (D.D.C. 2010) ........................................................... 7, 10, 11

*Jud. Watch, Inc. v. Food & Drug Admin.*,
  449 F.3d 141 (D.C. Cir. 2006) .................................................................... 3, 10

*Khatchadourian v. Def. Intel. Agency,*
    453 F. Supp. 3d 54 (D.D.C. 2020) ......................................................... 6, 13
*Kleinert v. Bur. of Land Mgmt.,*
    132 F. Supp. 3d 79 (D.D.C. 2015) .......................................................... 3, 24
*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ......................................................... 6, 7, 8, 14
*Mobley v. C.I.A.,*
    924 F. Supp. 2d 24 (D.D.C. 2013) ............................................................. 26
*Nat'l Ass'n of Home Builders v. Norton,*
    309 F.3d 26 (D.C. Cir. 2002) ............................................... 3, 14, 15, 18, 21
*N.L.R.B. v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) .................................................................................... 5
*Nat'l Sec. Counselors v. C.I.A.,*
    960 F. Supp. 2d 101 (D.D.C. 2013) ............................................... 15, 19, 21
*Neuman v. United States,*
    70 F. Supp. 3d 416 (D.D.C. 2014) ............................................................. 5
*Phillippi v. C.I.A.,*
    546 F.2d 1009 (D.C. Cir. 1976) .......................................................... 19, 21
*Poitras v. Dep't of Homeland Sec.,*
    303 F. Supp. 3d 136 (D.D.C. 2018) ........................................... 3, 8, 10, 13
*Prison Legal News v. Samuels,*
    787 F.3d 1142 (D.C. Cir. 2015) .................................................................. 8
*Hayden v. Natl. Sec. Agency/C. Sec. Serv,*
    608 F.2d 1381 (D.C. Cir. 1979) ............................................................... 20
*Soundboard Ass'n v. Fed. Trade Comm'n,*
    888 F.3d 1261 (D.C. Cir. 2018) .................................................................. 5
*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) ................................................................... 7
*Whitaker v. C.I.A.,*
    31 F. Supp. 3d 23 (D.D.C. 2014) ............................................................. 19
*Whitaker v. U.S. Dept. of State,*
    No. 14-5275, 2016 WL 9582720 (D.C. Cir. Jan. 21, 2016) ...................... 20
*Wis. Project on Nuclear Arms Control v. U.S. Dep't of Com.,*
    317 F.3d 275 (D.C. Cir. 2003) ................................................................. 20
*Wolf v. C.I.A.,*
    473 F.3d 370 (D.C. Cir. 2007) ................................................................. 27

## Statutes

5 U.S.C. § 552(a)(4)(B) ............................................................................. 5, 14
5 U.S.C. § 552(b) ..................................................................................... 6, 7, 8
5 U.S.C. § 552(b)(1) ...................................................................................... 25
5 U.S.C. § 552(b)(3) ...................................................................................... 15
5 U.S.C. § 552(b)(5) ...................................................................................... 23
5 U.S.C. § 552(b)(6) ...................................................................................... 25
50 U.S.C. § 403g ........................................................................................... 19
50 U.S.C. § 4813(a)(2) ................................................................................... 1

50 U.S.C. § 4820(h) ............................................................................................... 15
50 U.S.C. § 4820(h)(1)(A) ..................................................................................... 16
50 U.S.C. § 4820(h)(1)(B) ............................................................... 15, 16, 21, 22

## **Rules**

Fed. R. Civ. P. 56 .................................................................................................... 5

## **Regulations**

87 Fed. Reg. 77505 (Dec. 19, 2022) ...................................................................... 1
*Additions to the Entity List*,
  90 Fed. Reg. 14046 (Mar. 28, 2025) .................................................................. 3

## **Other Authorities**

Exec. Order No. 13526, § 1.7 ...............................................................................26
*Include*, Black's Law Dictionary (12th ed. 2024).............................................18
James Pomfret & David Kirton, *U.S. Blacklist on China is Riddled with Errors, Outdated Details*, Reuters (May 2, 2025), https://bit.ly/4dpsrBW ....................................4, 27

# INTRODUCTION

Nearly 20 months ago, Husch Blackwell submitted two narrow FOIA requests seeking a single, specific record: "[A] copy of the final proposal and any accompanying attachments, exhibits, or appendices that were submitted to the End-User Review Committee ('ERC') in support of the decision to place [YMTC or YMTJ] on the BIS Entity List."[1] What should have been a straightforward disclosure instead spawned protracted U.S. Government noncompliance, continuing to this day.

The Government[2] resisted its FOIA obligations from the outset, initially withholding over 500 responsive pages in full based on conclusory invocations of statutory exemptions. After exhausting administrative appeals and enduring months of agency silence, Husch Blackwell initiated this litigation. Even after litigation commenced, the Government continued to push off its obligations, repeatedly issuing last-minute productions and response letters that necessitated delay. Only under the pressure of impending summary judgment did the Government finally produce documents. But those documents are all but indecipherable, littered with redactions often covering entire pages. In support of its blackout, the Government invoked multiple exemptions, including a novel—and novelly broad—interpretation of the Export Control Reform Act of 2018 (ECRA). Yet it failed to substantiate its claims with a *Vaughn* index, agency declarations, or even finality as to its determinations.

---

[1] YMTC is Yangtze Memory Technologies Company, Ltd., and YMTJ is Yangtze Memory Technologies (Japan), Inc. BIS is the Bureau of Industry and Security, which maintains the Entity List. 50 U.S.C. § 4813(a)(2); 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022).

[2] This memorandum uses the general term 'the Government' to refer to Defendants BIS and the Department of Commerce. Identical pairs of requests were also submitted to other agencies, but from the various agency responses, it became apparent that BIS and the Department of Commerce would be responsible for handling the requests.

At the Government's request, this Court further extended that the original summary judgment deadline to April 15, 2025, making clear its "expectation that the government will render final determinations as to plaintiff's administrative appeal and produce the corresponding documents prior to these deadlines." Minute Order (Mar. 20, 2025).  Four days before the April 15 deadline, the Government produced a so-called determination letter, which was styled as a "final decision of the Department of Commerce," but which still refused to certify the completeness or finality of its response. The letter offered vague justifications, parroting statutory language while sidestepping the agency's fundamental obligations of segregation, specificity, and support.

Given the late-breaking development, the Court moved the summary judgment deadline to May 16, 2025.[3] Once again, Husch Blackwell worked diligently to prepare its filing in advance of this deadline. Late on the eve of the May 16 deadline, the Government once again issued another partial production and another determination letter—despite calling the April 11 letter as a "final decision." This May 15 letter was styled as "BIS' final determination letter," but provided zero insight as to why a second "final" letter was warranted or whether anymore "final" letters or "interim" productions were on the horizon. Even if this is truly the Government's "final" determination and production, it still comes up short.

Procedurally, the Government has failed on every conceivable account, especially with regard to FOIA Exemption 3 under ECRA. Despite a statutory mandate to do so, the Government has made no serious attempt to segregate and disclose non-exempt information; the many full-page blackouts and other discrepancies brought to light by the appeal determination letter lay this defect bare. The Government also has not specified or explained the bases for its claimed exemptions

---

[3] The deadline was initially moved to May 2, 2025, but the Government later filed an unopposed motion for additional time. *See* Mot. for Ext. of Time (May 1, 2025) [ECF 19]. In response, this Court extended the deadline once more to May 16, 2025. *See* Minute Order (May 1, 2025).

beyond empty parroting of statutory language. And it has not produced a *Vaughn* index or offered any substantive evidentiary support for its sweeping withholdings.

The Government's obfuscation makes it impossible for Husch Blackwell to evaluate the Government's position, thereby preventing "the adversary system" from "operat[ing]." *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 150 (D.D.C. 2018). So too does the Government's conduct obstruct the Court's ability to conduct meaningful judicial review. The Court cannot assess the propriety of the withholdings when there is an "'asymmetrical distribution [ ] of knowledge' where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 78 (D.D.C. 2010) (quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006)).

Substantively, the Government fares no better. The Government has not provided sufficient support to show how any of the "narrowly construed" exemptions it claims actually apply. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). It has failed to overcome FOIA's "strong presumption in favor of disclosure." *Id.* To the contrary, some of the redacted documents cannot qualify for any exemption: to a reasonable degree of certainty, Husch Blackwell understands that at least some items responsive to its request are publicly available.

Finally, there is a strong public interest in the records sought by Husch Blackwell. *Cf. Kleinert v. Bur. of Land Mgmt.*, 132 F. Supp. 3d 79, 98 (D.D.C. 2015) (Bates, J.) (granting summary judgment in part to plaintiff based on balance of interests). The BIS Entity List is one of the most powerful tools in the U.S. government's arsenal, forming the basis of, for example, the current expansive restrictions on foreign semiconductor manufacturers. *See Additions to the Entity List*, 90 Fed. Reg. 14046 (Mar. 28, 2025); 15 C.F.R. Part 744. These expansive restrictions

naturally impede trade and competition in the name of furthering national security or pursuing other foreign policy goals. As such, the public has a legitimate interest in understanding whether BIS's usage of such a powerful tool is based on reliable sources rather than information that is difficult to verify or, worse yet, released with an anticompetitive agenda. At base, the public should be entitled to know the caliber of information that BIS considers in cases when making such economically consequential decisions that affect the entire global tech industry and its consumers. *See* James Pomfret & David Kirton, *U.S. Blacklist on China is Riddled with Errors, Outdated Details*, Reuters (May 2, 2025), https://bit.ly/4dpsrBW. This important public interest is surely not outweighed by the Government's barren invocation of a novel FOIA exemption.

In sum, the Government has not shown that it has met—or can meet—its burden to withhold information from public disclosure. The one thing the Government has shown, by contrast, is that judicial intervention is necessary. The Court should grant summary judgment for Husch Blackwell and order the Government to take any or all of the following actions, within two weeks, including, but not limited to: certify that its production and responses are final and that no more document productions or determination letters will be issued; produce a *Vaughn* index and provide declarations of agency personnel supporting any claimed exemptions or other determinations. Once this information is made available to Husch Blackwell, the Court should allow Husch Blackwell to further address the Government's production, should conduct an *in camera* review of withheld documents or unredacted versions of documents produced in redacted form, or both. Finally, the Court should declare that the Government's claimed exemptions do not apply and order the Government to disclose the requested information in full.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant factual and procedural background is fully set forth in Plaintiff's Statement of Material Facts Not in Genuine Dispute, incorporated herein by reference.[4]

## LEGAL STANDARD

FOIA cases "typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is proper when no genuine issue of material fact exists and the moving party establishes it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018).

"In the FOIA context, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *Neuman v. United States*, 70 F. Supp. 3d 416, 421 (D.D.C. 2014) (citing 5 U.S.C. § 552(a)(4)(B)); *see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013). The question of whether a document fits into a FOIA exemption is one of law. *Ethyl Corp. v. U.S. Envt'l Protection Agency*, 25 F.3d 1241, 1246 (4th Cir. 1994).

## ARGUMENT

## I.    The Government systematically failed to comply with FOIA.

FOIA's "basic purpose" strives "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA requires agencies to disclose records responsive to a request "unless the documents fall within enumerated

---

[4] This filing adopts and incorporates herein any defined terms as they are used in the Statement of Material Facts Not in Genuine Dispute.

exemptions." *U.S. Dep't of Interior v. Klamath Water User Protective Ass'n,* 532 U.S. 1, 7 (2001) (citing 5 U.S.C. § 552(b)).

To satisfy FOIA, an agency must:

- Segregate non-exempt material for disclosure;

- Specify the basis for any withholdings with document-level granularity;

- Support its withholdings with competent evidence, typically through a *Vaughn* index and agency declarations.

Here, the Government has done none of these things.

## A.    The Government has several obligations under FOIA.

To meet its burden to comply with FOIA, an agency must sufficiently justify any exemptions on which it relies to redact information or withhold documents. *See, e.g.*, *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977) ("[Agency] must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA."). Courts have consistently held that an agency's justifications for withholding documents are insufficient if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. *See id.*; *see also Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 73 (D.D.C. 2020). Put simply, to satisfy its burden, an agency's justifications for withholding documents should: (i) amply segregate exempt and non-exempt documents where possible; (ii) be specific to the documents themselves, instead of a mere recitation of statutory language, and (iii) provide sufficiently detailed support for its claimed exemptions.

**Segregation.** The Government must segregate and release non-exempt portions of documents wherever reasonably practicable:

> Any *reasonably segregable portion* of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. *The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record*, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made.

5 U.S.C.A. § 552(b) (emphases added). "[O]nce an agency identifies information that it believes is exempt, it must undertake a segregability analysis. The purpose of this assessment is to separate exempt material from any nonexempt material, and to produce the nonexempt material." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007). "[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead*, 566 F.2d at 260.

**Specificity.** "[T]o assist a court in its *de novo* review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish 'detailed and specific information demonstrating' that material withheld is logically within the domain of the exemption claimed." *Citizens*, 955 F. Supp. 2d at 13. To meet this standard, the Government "must provide a relatively detailed justification, specifically identifying *the reasons why a particular exemption is relevant* and *correlating those claims with the particular part of a withheld document* to which they apply." *Jacobs v. Fed. Bureau of Prisons*, 725 F. Supp. 2d 85, 91 (D.D.C. 2010) (emphases added). "Summary statements that merely reiterate legal standards" are insufficient. *Citizens*, 955 F. Supp. 2d at 13.

**Support**. To justify withholding documents—or segregated portions of documents—under any of FOIA's exemptions, the Government must supply *competent evidence* identifying the withheld documents and explaining, with specificity, the reasons why each should be exempt. *Vaughn v. Rosen*, 484 F.2d 820, 825–26 (D.C. Cir. 1973). To meet this burden, the Government must offer "sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or

both." *Poitras*, 303 F. Supp. 3d at 150. "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015). Such evidence is required both to facilitate the adversarial process and to allow the Court to do its job. *Poitras*, 303 F. Supp. 3d at 150.

### B.    The Government failed to meet its FOIA obligations.

**No segregation.** Despite claiming to have withheld or produced in redacted form over 500 pages of responsive documents, the Government made no effort to segregate and release non-exempt content. Instead, it produced voluminous records with entire pages—sometimes entire documents—redacted. This wholesale withholding defies FOIA's statutory mandate. See 5 U.S.C. § 552(b); *Mead*, 566 F.2d at 260.

In its original denial decision, the Government parroted four FOIA exemptions as a sweeping basis for withholding 553 pages of responsive documents in their entirety. Compl. Ex. D [ECF 1-4]. The Government did not segregate documents in any way. It did not specify what portion of the responsive documents or information each cited exemption applied to or otherwise explain the basis for its exemptions. *Id*. In both its tardy, and potentially still interim,[5] productions, the Government doubled down on these shortcomings. The Government again withheld broad swaths of information, in some cases redacting 30-page-long PDFs *in their entirety*, signaling that it made no attempt at any reasonable segregation. *See* March 2025 Cover Letter and Production Supplement Part 10 (Mar. 21, 2025), copy attached to Decl. of S. Neeley at Ex. K. Often, the

---

[5] The recent determination letter described the production as a "final interim production"—seemingly a contradiction on its face. *See* BIS Determination Letter (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M. This, combined with the Government's history of issuing letters and document releases at the last minute (including two separate letters both called "final") leads Husch Blackwell to believe that this *still* may not be the end of the line for the Government in responding to Husch Blackwell's original FOIA request.

Government's determination letters raised more questions than they provided answers. For example, the Government states that it "withheld 275 pages in full pursuant to Exemption 3," a fact seemingly supported by the many full-page redactions in the document production labeled with "Exemption 3." *See* Commerce OGC Determination Letter, p. 2 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L; *see generally* March 2025 Production (Mar. 21, 2025), copies attached to Decl. of S. Neeley at Ex. B-K. However, the Government went on to state: "[a]lthough not included in BIS's March 21, 2025 production, the 526 pages of responsive records also include… an additional 42 pages that BIS withheld in full pursuant to Exemption 3." *See* Commerce OGC Determination Letter, p. 2 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. If the produced pages were redacted in full, why could these additional 42 pages not be produced and redacted in full as well? Why were they withheld in their entirety instead? Incongruities such as this one suggest that the Government was not as careful in its exemptions and withholdings as is required.

As a further example of the Government's failure to segregate and specify, the Government's May 15 "final" determination letter stated that, out of 555 pages reviewed for potential responsiveness, 29 pages were found to be nonresponsive. *See* BIS Determination Letter (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M. These 29 pages were ostensibly withheld from production, leading to the conclusion that 526 pages were produced. But in total, the Government's various "interim" productions amounted to 533 pages. It is unclear what accounts for the 7-page discrepancy. This is further evidence of the difficulty Husch Blackwell—and this Court—faces in assessing the sufficiency of the Government's response as it stands.

**No specificity.** The Government's assertions lack any document-by-document analysis. It has not correlated specific redactions with specific exemption claims, or explained the type of

document being withheld and how the claimed exemption justifies the withholding. It merely parroted statutory language (by labeling redactions with a FOIA Exemption number), which courts have long held in-sufficient. *See Citizens*, 955 F. Supp. 2d at 13; *Jacobs,* 725 F. Supp. 2d at 91.

**No support.** The Government has failed to produce a *Vaughn* index or declarations from knowledgeable officials explaining its withholdings. Without this baseline documentation, the adversarial process cannot function, and judicial review is thwarted. *Poitras*, 303 F. Supp. 3d at 150. A *Vaughn* index would not only provide badly needed specificity, but it would preclude the need for confusing and conflicting lists like the one in both "final" determination letters, which go through various numbers and categories of withheld documents with no apparent methodology or purpose. For comparison, the D.C. Circuit found the following agency affidavit/*Vaughn* index combination to sufficiently meet the specificity and support requirements:

> [The Government] produced a *1,500–page Vaughn index* and *supplemented the index with the supporting declaration* of [a knowledgeable agency official]. The index itself includes *eleven categories*, consisting of the following: (1) an index identification number; (2) the document's subject; (3) its date; (4) the author; (5) the recipient; (6) the total number of pages; (7) a category entitled "Attach Page"; (8) the disposition (that is, whether entirely or partially withheld); (9) the reason for being withheld; (10) the statutory authority for the withholding; and (11) the number of pages containing withheld information. *Whereas the index takes a document-specific approach, the [agency] declaration steps through the claimed exemptions*. It avoids discussion of individual documents, instead describing the kinds of information withheld and how they relate to the exemptions. The intervenors filed two additional affidavits. Each covers issues specific to the documents submitted to the FDA during mifepristone's approval process, including matters ranging from competition in the abortion market to confidentiality issues.

*Jud. Watch*, 449 F.3d at 146–47 (emphasis added). In this case, the Government has come *nowhere close* to the level of detailed support and justification provided in *Judicial Watch.* These failures must be rectified.

Yet another failure of support occurred when the Government labeled its redactions with bare references to specific FOIA exemptions. *See generally* March 2025 Production (Mar. 21,

2025), copies attached to Decl. of S. Neeley at Ex. B-K; May 2025 Second Interim Production (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. N. But these "barren assertions" and mere "quot[ed] statutory language" are inadequate and do not meet the Government's specificity burden. *See Jacobs*, 725 F. Supp. 2d at 91. Furthermore, the determination letters did little to provide clarity as to the claimed exemptions. Each exemption is explored further below, including the deficiencies in the Government's claimed bases for the exemption, but here it is sufficient to note that the determination letters failed to provide any specific detail or explanation – instead, just relying on the "mere recitations of statutory language" and other bare assertions.

In its sparse communications since the original denial decision, the Government has repeatedly neglected to rectify its failures of segregation, specificity, and support. In correspondence with Husch Blackwell and in its Joint Status Reports filed with the Court, the Government made representations about its attempts to evaluate the documents for the appropriateness of the exemptions claimed and for segregability. *See* Joint Status Reports filed Dec. 12, 2024; Feb. 10, 2025; Mar. 14, 2025 [ECF 10, 14, 15]. Despite representing that it had segregated approximately 150 non-exempt pages of documents, however, the Government's productions do not contain even this promised level of information. *See* Joint Status Report, p. 2 (Feb. 10, 2025) [ECF 14]. Indeed, the more recent determination letter confirms this when it indicates that "30 pages were released in part pursuant to FOIA Exemption (b)(3) and Section 1761(h) of the Export Control Reform Act of 2018," but that the remainder of the 555 pages were either released in redacted form or withheld in full as exempt or non-responsive. *See* BIS Determination Letter, pp. 1-2 (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M. Withholding in part (by which the Government appears to mean releasing only the most non-substantive portions of emails) is not the same as segregating

full pages for release. Statements like these misled Husch Blackwell into believing that the Government's production and FOIA response are more expansive than they actually are.

In sum, the Government has violated its obligations under FOIA. It has not shown that it has satisfied its obligation to segregate. It has not sufficiently specified its justification for claiming exemptions. And its determination letters do not provide sufficient support for any of its claimed exemptions, as detailed further in Section II, *infra*.

## C. The Court should order the Government to remedy its FOIA violations.

Where, as here, a party has initiated suit based on an agency's failure to timely respond or to adequately comport with statutory response obligations, the Court "will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013); *see also Elec. Priv. Info. Ctr v. Dep't of Just.*, 416 F. Supp. 2d 30, 37–38 (D.D.C. 2006) ("FOIA, as amended, envisions the courts playing an important role in guaranteeing that agencies comply with its terms."). The Court has "equitable powers" to "require [BIS] to process documents according to a court-imposed timeline," *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014), and to play the "important role" "envision[ed by FOIA] . . . in guaranteeing that [BIS] compl[ies] with [FOIA's] terms." *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 37–38.

Despite having over one-and-a-half years to comply with FOIA, the Government has not done so. The Government has failed to provide *any* specificity as to the bases for their claimed exemptions, including a *Vaughn* index, agency affidavits, or any other supporting documentation or explanation. Thus, the Government has not only deprived Husch Blackwell of the withheld documents themselves (and potentially of other documents that should have been produced but were not, given the Government's repeated false indications of finality), but of even the

opportunity to evaluate or challenge the Government's withholding decisions. The Government's complete failure to segregate, specify, and support means it is impossible for Husch Blackwell to evaluate the documents. Husch Blackwell cannot reasonably discern whether any non-exempt portions of documents are being withheld or whether the claimed exemptions justify any withholding. The Government's insouciance, in short, prevents "the adversary system" from "operat[ing]." *Poitras*, 303 F. Supp. 3d at 150.

And it's not just Husch Blackwell: the Government's failure also makes it impossible for this Court to decide whether it has complied with FOIA. Typically, when deciding a FOIA summary judgment motion, courts will "determine *de novo* whether non-disclosure is permissible by reviewing the *Vaughn* index and any supporting declarations to verify the validity of each claimed exemption." *Poitras*, 303 F. Supp. 3d at 150 (cleaned up). Courts may also order an *in camera* review of materials including, but not limited to: the *Vaughn* index or supplements thereto, agency affidavits, a sample set of requested records, or further discovery as the court deems appropriate. *See Khatchadourian*, 453 F. Supp. 3d at 76 (cleaned up); *see also 100Reporters LLC v. United States Dep't of Just.*, 248 F. Supp. 3d 115, 166 (D.D.C. 2017) (explaining that courts have "'broad discretion' to decide whether *in camera* review is necessary to determine whether the government has met its burden").

Here, the Court should grant summary judgment as a whole, or at the very least require the Government to immediately remedy its FOIA violations. Specifically, the Court should order the Government to take any or all of the following actions as the Court sees fit, within two weeks, including, but not limited to: either produce further responsive documentation or certify that its production and determination letters represent a complete and final response to the original FOIA

request;[6] produce a *Vaughn* index; and provide declarations of agency personnel supporting any claimed exemptions or other determinations as the Court sees fit. Once this information is made available to Husch Blackwell, the Court should allow Husch Blackwell to further address the Government's production, should conduct an *in camera* review, or both.

## II.    The Government's claimed FOIA exemptions are unjustified and unsupported.

FOIA exemptions must be "narrowly construed," and agencies face a "strong presumption in favor of disclosure." *Norton*, 309 F.3d at 32; *see also Founding Church of Scientology of Washington, D. C., Inc. v. Bell*, 603 F.2d 945, 949–50 (D.C. Cir. 1979). In support of its sweeping redactions and withholdings, the Government points to FOIA Exemptions (b)(1), (b)(3), (b)(5), and (b)(6).

The Government bears the burden of proving that each withheld document falls within a FOIA exemption. 5 U.S.C. § 552(a)(4)(B); *see, e.g.*, *Mead*, 566 F.2d at 251. Again, rather than explain how each exemption applies to the responsive documents—as is required—the Government's original denial, subsequent correspondence, productions, and determination letters "merely reiterate legal standards." *Citizens*, 955 F. Supp. 2d at 13. As such, Husch Blackwell's ability to respond to each of the claimed exemptions is severely undermined. Because some exemptions are cited more than others in the recent production (and some not at all), the exemptions are addressed below in the order of the most- to least-cited in the production. Lastly, this brief explains that the withheld documents, or those produced with redactions, likely include publicly disclosed information, thus overriding any reliance on exemptions to withhold them.

---

[6] True, the most recent determination letter stated it was a "final determination letter." But so did the Government's prior determination letter. It is thus unclear whether the Government has finished what it intends to provide in response to Husch Blackwell's FOIA requests. The Court should order the Government to certify that its production is final and complete.

Ultimately, the Government has not—and cannot—overcome the "strong presumption in favor of disclosure." *Norton*, 309 F.3d at 32. It has failed to meet its burden to show that any exemption applies. Husch Blackwell is thus entitled to receive the information it has requested, in full.

### A.    FOIA Exemption 3

The Government relies most heavily on Section 1761(h) of ECRA, 50 U.S.C. § 4820(h), as grounds for withholding under Exemption 3. But it fails to meet either prong of the relevant statutory test:

- The Government asserts the withheld records relate to "operations under this sub-chapter," but it offers no explanation tying them to the specific categories enumerated in § 4820(h)(1)(B)(i)–(v). *See* Commerce OGC Determination Letter (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L.

- The Government's expansive reading of the statutory term "including" as permitting withholding of anything tangentially related to ECRA operations conflicts with FOIA's mandate for narrow construction. *See id*.

Courts routinely reject such broad readings. *See Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 176 (D.D.C. 2013). Adopting the Government's interpretation here with respect to the Entity List would permit BIS to shield *the entirety* of its operations, including its most powerful and consequential functions, from the public—an outcome squarely foreclosed by FOIA.

Drilling down on the Exemption 3 argument, we start with the language of FOIA. Exemption 3 allows agencies to withhold documents that are exempt from disclosure under *another* statute if it meets certain criteria. 5 U.S.C. § 552(b)(3). For the other statute here, the Government turns to Section 1761(h) of ECRA (codified at 50 U.S.C. § 4820(h)), asserting a novel and

expansive basis for keeping documents behind closed doors. Again, Husch Blackwell is forced to respond to this novel interpretation without the benefit of any *Vaughn* index or supporting evidence, such as an agency affidavit, to show that any part of ECRA allows it to deny disclosure.

Here, again, Husch Blackwell requested: "[A] copy of the final proposal and any accompanying attachments, exhibits, or appendices that were submitted to the End-User Review Committee ("ERC") in support of the decision to place [YMTC or YMTJ] on the BIS Entity List." Compl. ¶¶ 15, 16, Exs. A, B [ECF 1-1, 1-2]. It is far from clear that ECRA would prevent disclosure here, especially with the broad scope the Government claims. ECRA instructs that "information described in subparagraph (B) shall be withheld from public disclosure . . . , unless the release of such information is determined by the Secretary to be in the national interest." 50 U.S.C. § 4820(h)(1)(A). Subparagraph (B), in turn, lists the categories of information that may be withheld:

> (B) **Information described**: Information described in this subparagraph is information submitted or obtained in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, an enforcement activity, or other operations under this subchapter, including—
>
> > (i) the license application, license, or other authorization itself;
> > (ii) classification or advisory opinion requests, and the response thereto;
> > (iii) license determinations, and information pertaining thereto;
> > (iv) information or evidence obtained in the course of any investigation; and
> > (v) information obtained or furnished in connection with any international agreement, treaty, or other obligation.

§ 4820(h)(1)(B).

Based on this text, § 4820(h)(1)(B) envisions a two-part test before it covers any particular information. First, the information must be "submitted or obtained in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, an enforcement activity, or other

operations under this subchapter." Second, the information must be of one of the enumerated categories in the "including" list, (i)–(v). For example, the statute would cover "information obtained or furnished in connection with any international agreement, treaty, or other obligation" (satisfying the second part) that was "submitted or obtained in connection with an application for a license" (satisfying the first part).

The Government apparently agrees that these two things are required: it addressed both in each of its determination letters. But the Government then goes astray both in interpretation and application.

Start with the first part of the test. In its May 15 determination letter, the Government asserts that the withheld information "related to the End User Review Committee (ERC)'s review and determination of additions made to the BIS Entity List." BIS Determination Letter, p. 2 (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M. The Government does not specify or explain how the first part of the test is satisfied. Yet, in its prior determination letter, the Government claimed that the withheld information is "in connection with" "operations under this subchapter," and that the "operations under this subchapter" are "the operations of the End User Review Committee (ERC) concerning additions or other changes to the Entity List." *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. This is the *only* argument the Government makes concerning the first part of the test. It does *not* claim that Husch Blackwell requested information "in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, [or] an enforcement activity."

Then move on to the second part of the test—this is where the Government's explanation falls apart. Even assuming the withheld information is "in connection with" "operations under this

subchapter," the Government still comes up short. The Government makes no attempt to argue that the withheld information falls under any of the enumerated (i)–(v) categories of information. It does not claim, for instance, that Husch Blackwell requested a "license determination[], and information pertaining thereto." In its latter determination letter, the Government does not address the enumerated (i)–(v) categories of information at all. In its former determination letter, the Government hung its entire argument on what "including" means. For the Government, "including" is *always* illustrative—meaning it can shield from disclosure *other things* that are not enumerated in (i)–(v). *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. At least three problems afflict the Government's interpretation:

- First, although "including" "has traditionally introduced a nonexhaustive list," it is "now coming to be widely" used (even if misused) to mean "consists of." *Include*, Garner's Modern American Usage 454; *accord Include*, Black's Law Dictionary (12th ed. 2024). Congress could have written "including, but not limited to" or added a romanette (vi) that said "and all other similar types of information." But it chose not to, meaning in context, the word "including" is at best ambiguous.

- Second, in context, reading "including" as illustrative, instead of as exhaustive, allows the Government to withhold more and disclose less. Given that the word "including" is ambiguous, allowing the Government's reading to stand would run headlong into FOIA's cardinal principle of construction. Instead, FOIA exemptions must be "narrowly construed" according to a "strong presumption in favor of disclosure," *Norton*, 309 F.3d at 32, and any ambiguities in ECRA's text must be construed in Husch Blackwell's favor.

- Third, even if "including" were illustrative, it is not boundless. The other things the Government could withhold must be directly related to the things enumerated in the list. *See Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 192 (4th Cir. 2024) (observing that even when "includes" is used as "a term of enlargement, and not of limitation," that does "not suggest that 'including' phrases *enlarge* the categories they illustrate—or give courts *license to expand those categories beyond their definitional borders*." (emphases added)). And, because the Government bears the burden to prove a FOIA exemption, it would have to—at bare minimum—*explain* how its withholding relates to something on the list. But the Government made no attempt to do so at all. Its reasoning in its determination letter is wholly conclusory. *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 154 ("[T]he agency's justifications for its actions must be 'specific' and 'non-conclusory.'").

Neither this Court nor any federal appellate court has interpreted this provision of ECRA to mean what the Government asserts. But this Court *has* applied FOIA's narrow-construction rule to statutes invoked by the government under Exemption 3. For example, the CIA argued that 50 U.S.C. § 403g exempts the government from disclosure of all information about CIA's functions. *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 176. Section 403g provides that the government need not disclose details "of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." 50 U.S.C. § 403g. The Court held the CIA's broad interpretation of § 403g was inappropriate because it would come dangerously close to exempting from disclosure "*any information at all about what [the CIA] does*." *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 176 (quoting *Phillippi v. C.I.A.*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976)) (emphasis added); *see also Whitaker v. C.I.A.*, 31 F. Supp. 3d 23, 34 (D.D.C. 2014), *aff'd sub nom. Whitaker*

19

*v. U.S. Dept. of State*, No. 14-5275, 2016 WL 9582720 (D.C. Cir. Jan. 21, 2016) (holding that the Central Intelligence Act may be used to protect from disclosure only specific information on the CIA's personnel and internal structure as listed in the statute; it does not support a broad withholding of information relating to all CIA functions). These cases provide ample support for Husch Blackwell's position here.

In contrast, where courts *have* approved broad readings of an exemption statute, these decisions were generally supported by the need for "extreme security measures" and a clear Congressional intent to maintain confidentiality. *See Hayden v. Natl. Sec. Agency/C. Sec. Serv.*, 608 F.2d 1381, 1390 (D.C. Cir. 1979); *cf. Council for a Livable World Educ. Fund v. United States Dep't of State,* No. 96-1807 (HHK), 1998 U.S. Dist. LEXIS 23642, *19 (D.D.C. Jan. 22, 1998) (finding that the government interpreted exemption related to licensing in EAA too broadly based on the legislative history, and deciding the government must submit another Index to explain withheld documents). Here, no such national security concern exists to justify the Government's unbounded reading of ECRA. For example, while ECRA and its predecessor statutes reveal an intent to keep *export license application data* and limited other categories of information confidential, there is no support for a broad reading of ECRA which would exempt from disclosure basically any information at all about what the agency does. *See Wis. Project on Nuclear Arms Control v. U.S. Dep't of Com.*, 317 F.3d 275, 281 (D.C. Cir. 2003) ("Congress's actions throughout the long history of the EAA evince a clear appreciation of the dangers inherent in exposing *export application data* to public view.") (emphasis added). And the requested information here has nothing to do with any export license application, nor any of the other listed categories of information; indeed, the Government has not argued that it does. Nor has the Government even attempted to describe the category of information requested here, and why it should be read to fall alongside the listed

categories in § 4820(h)(1)(B)(i)–(v). The Government's broad proposed reading is contrary to the need for narrow construction of the exemptions to support the strong presumption in favor of disclosure.

The logical endpoint of the Government's argument should give the Court significant pause. The Government wants to combine "operations under this subchapter" with a boundless reading of "including." But doing so would give the Government limitless withholding authority. "Operations under this subchapter"—subchapter I of chapter 58, Title 50, U.S. Code (50 U.S.C. §§ 4811-4826)—in fact describes *all functions, authorities, and activities of BIS*, not merely ERC operations related to the Entity List. Combined with the Government's boundless reading of "including," the Government's overall argument would allow it to withhold from disclosure *all information about everything BIS does*. This flies in the face of the purpose of FOIA generally and the "narrowly construe" canon in particular. It impermissibly exempts from disclosure "*any information at all about what [BIS] does*." *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 176 (quoting *Phillippi,* 546 F.2d at 1015 n. 14) (emphasis added).

In contrast, the Court must "narrowly construe" the terms used in the ECRA withholding provision in a way that vindicates FOIA's "strong presumption in favor of disclosure." *Norton*, 309 F.3d at 32. To do so, the Government must provide Husch Blackwell, and the Court, with more information. At a minimum: when the Government claims that it withheld "information that was submitted or obtained in connection with the operations of the End User Review Committee (ERC) concerning additions or other changes to the Entity List (*including information derived from or directly related to such information*)," what type of information is it referring to? Why should this information fall in the list set forth in § 4820(h)(1)(B)(i)–(v)? What does "including

21

information derived from or directly related to such information" actually mean?[7] *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L (emphasis added). How exactly was this information "submitted or obtained in connection with" the ECRA operations at issue here? *See id.* Why would such "information fall[] squarely within the parameters of ECRA's disclosure prohibitions," and how would "[d]isclosure of this information [] diminish BIS's ability to administer its export control program" and "reduce the government's ability to obtain information that it needs to properly evaluate companies for addition to, removal from, or modification of the Entity List"? *See* BIS Determination Letter, p. 2 (May 15, 2025), copy attached to Dec. of S. Neeley at Ex. M. If the Government's broad reading of the ECRA withholding provisions is adopted, how can the Government assure this Court that such an interpretation will not lead to a complete bar to public visibility into *all operations carried out under ECRA, which includes all BIS operations*? Detailed explanations are required; none has been provided.

Particularly in light of its failure to sufficiently explain how ECRA should justify withholding the particular documents requested here without leading to a complete blackout of any public access to information about *any* BIS operations, and particularly in light of its total failure to proffer any *Vaughn* index or evidentiary support for this broad interpretation, the Government has failed to meet its burden to show that *any* part of ECRA protects *any* part of *any* document from disclosure.

---

[7] Indeed, it appears that the Government is proffering as vague and ambiguous a reading of § 4820(h)(1)(B) as possible. Not only does it rely on broad catch-all provisions and strained interpretations of the two-part examination (looking at withheld categories of "information" used in certain types of "operations"), but the Government has injected even more ambiguity by adding phrases like "including information derived from or directly related to such information" in its description of the types of information being requested. *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L.

### B.    FOIA Exemption 5

The Government invokes Exemption 5, but many of the produced documents cannot reasonably fall within that exemption's well-defined limits. Exemption 5 protects "predecisional" and "deliberative" communications. But the request here was for the final proposal submitted to the ERC. Such a proposal, by definition, constitutes the agency's final view—not protected pre-decisional input. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Under the FOIA statute, Exemption 5 exempts "inter-agency or intra-agency memorandums or letters" from disclosure when they "would not be available by law to a party other than an agency in litigation with the agency," and thus looks to typical "privilege[s] against discovery under judicial standards." 5 U.S.C. § 552(b)(5); *Citizens For Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*, 583 F. Supp. 2d 146, 156 (D.D.C. 2008) (cleaned up). In its determination letters, the Government asserts that its Exemption 5 claims are based on the deliberative process privilege because the production "consists only of email communications or documents exchanged among Federal employees." *See* Commerce OGC Determination Letter (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. Within the production, Exemption 5 is asserted to redact information primarily in documents that appear to be email communications. The Government claims that such emails contain "staff comments… regarding drafts of the [E]ntity list" and "candid and frank feedback regarding the discussions on matters of policy and process." *See* BIS Determination Letter (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M.

To start, the Government's determination letter does not establish that the withheld documents meet the deliberative process standard or that they were not subsequently adopted as agency policy. *Citizens*, 583 F. Supp. 2d at 157. As things stand, the fully and partially redacted pages, together with the lack of any *Vaughn* index, provide insufficient insight into what was redacted and why; neither Husch Blackwell nor "the Court can[ ] tell, and should not be forced to guess."

*Kleinert*, 132 F. Supp. 3d at 91. Indeed, it seems doubtful that email exchanges such as these would constitute the "final proposal"—which is what, and only what, Husch Blackwell requested—and asks the Court to conduct an *in camera* review of the unredacted versions of these materials to determinate that what has been produced is actually what Husch Blackwell requested.

Moreover, assuming that these email communications do constitute the "final proposal" as requested, the deliberative process privilege *does not protect them* because they are not predecisional and deliberative, as the Government claims. Any documents that constitute the final rationale or outcome of a deliberative process cannot be withheld under Exemption 5. *See, e.g.*, *Citizens*, 583 F. Supp. 2d at 157; *see also Am. Immigr. Council v. U.S. Customs & Border Patrol*, 590 F. Supp. 3d 306, 331 (D.D.C. 2022) ("[A] draft that was predecisional and deliberative when prepared may lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). Any documents responsive to Husch Blackwell's request would "merely describe *past* decisions" by the Government. *See Am. Immigr. Council*, 590 F. Supp. 3d at 325. *De novo* review by the Court should find that Exemption 5 does not apply. As things stand, the Government has come up short of meeting its burden to invoke Exemption 5.

Finally, it is worth reiterating that Husch Blackwell specifically requested the "*final proposal*," not deliberations leading up to it. Based on the Government's production (so far, at least), it does not appear that any final proposal was disclosed (unless it is fully redacted). Most if not all the Government's production appears to include communications related to the agency action, so it is not clear that the production is even responsive to the original request. This is yet another failure by the Government in providing an adequate, supported response, and further necessitates additional supporting information and an eventual *in camera* review. To cure its Exemption 5

failures, it is extremely important that the Government produce a *Vaughn* index and allow an *in camera* review to justify its classification of these documents as exempt from production. *See Citizens*, 583 F. Supp. 2d at 157 (quoting *Coastal States*, 617 F.2d at 867) ("The deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.").

### C.    FOIA Exemption 6

Husch Blackwell does not challenge the Government's limited Exemption 6 withholdings, which appear facially proper and narrowly applied.  In relying on Exemption 6—under which an agency may withhold "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6)—the Government adequately explained the type of information withheld from disclosure, minimally and segregationally redacted such information, and provided Husch Blackwell with sufficient information to analyze its decision. Husch Blackwell does not dispute the Government's minimal Exemption 6 withholdings, and instead urges the Court to impose upon the Government the obligation to treat the other exemptions the same way.

### D.    FOIA Exemption 1

Finally, the Government relies on Exemption 1, which protects classified national security information. 5 U.S.C. § 552(b)(1). That exemption, too, does not apply, nor was it sufficiently supported. Under Exemption 1, information and records may be withheld when they are specifically authorized by and classified pursuant to an executive order. *Id.* Executive Order 13526, *Classified National Security Information*, sets forth the procedural and substantive criteria for assessing Exemption 1 withholdings based on national defense or foreign policy grounds. Documents may be withheld under Exemption 1 based on a national security classification "only if such classification meets the requirements of this order and is accomplished on a *document-by-document* basis

25

*with the personal participation or under the direction of the agency head, the deputy agency head,*

*or the senior agency official designated under section 5.4 of this order*." Exec. Order No. 13526,

§ 1.7 (emphases added); *see also Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 57 (D.D.C. 2013). Although

agency decisions on national security matters are viewed with deference, agencies still must *justify*

their classification decisions in supporting affidavits. *See, e.g.*, *Campbell v. U.S. Dep't of Just.*,

164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). Agency affidavits supporting clas-

sification decisions must generally be provided by an agency official with direct knowledge of the

classification decision and must be sufficiently detailed to allow the requester and the court mean-

ingful opportunity to evaluate it. *Id.* at 37, *on remand*, 193 F. Supp. 2d 29, 37 (D.D.C. 2001)

(finding declaration insufficient where it merely concluded, without further elaboration, that "dis-

closure of [intelligence information] . . . could reasonably be expected to cause serious damage to

the national security").

Here, the Government has not provided any explanation, let alone a supporting affidavit,

from BIS or any other classifying agency. Moreover, it is unlikely that many of the withheld or

redacted documents are actually classified, particularly if they include documents that have other-

wise already been publicly disclosed, i.e., "officially acknowledged," or that were submitted by

the companies included on the Entity List in the first place. *See Fitzgibbon v. C.I.A.*, 911 F.2d 755,

765 (D.C. Cir. 1990). In all events, the Government has failed to meet its burden to show that

Exemption 1 protects any information from disclosure.

### E.    Public information cannot be withheld.

Finally, the Government's broad and indiscriminate invocations of each exemption de-

tailed above likely lack merit—or more specifically, can be overridden—for another reason. With-

held documents containing lawfully publicly available or "officially acknowledged" information,

cannot be withheld under FOIA. *See Fitzgibbon*, 911 F.2d at 765. Husch Blackwell has a

26

reasonable basis to believe that many of the documents responsive to its requests are already publicly available elsewhere, and thus cannot be withheld on any basis. Husch Blackwell's belief is supported by former Principal Deputy Assistant Secretary of BIS, Matthew S. Borman, who recently stated to *Reuters* that "entities are listed based on BIS analysts' review of *open-source* and classified information." Pomfret & Kirton, *supra* (emphasis added). Accordingly, an agency's invocation of a FOIA exemption can be overcome if "the specific information sought by the plaintiff [is] already [] in the public domain by official disclosure," i.e., "official acknowledgment." *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007); *see also Fitzgibbon*, 911 F.2d at 765 ("[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim.").

## CONCLUSION

The Court should grant Husch Blackwell's motion for summary judgment and order injunctive relief. Given the strong public interest in this information, Husch Blackwell requests that the Court order the Government to take any or all of the following actions, within two weeks, including, but not limited to: certify that its productions and determination letters are final and complete and no further response to the original FOIA request is forthcoming; produce a *Vaughn* index; and provide declarations of agency personnel supporting any claimed exemptions or other determinations. Once this information is made available to Husch Blackwell, the Court should allow Husch Blackwell to further address the Government's production, should conduct an *in camera* review, or both. Finally, the Court should declare that the Government's claimed exemptions do not apply and order the Government to disclose the requested information.

**Husch Blackwell requests oral argument on this motion.**

**DATED** this May 23, 2025.

Respectfully submitted,


By:    /s/ Steven A. Neeley
Steven A. Neeley (D.C. Bar No. 998792)
Joseph S. Diedrich, *pro hac vice*
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue NW, Suite 1000
Washington, DC  20006
Telephone: (202) 378-2331
Facsimile: (202) 378-2319
steve.neeley@huschblackwell.com
joseph.diedrich@huschblackwell.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Memorandum of Points and Authorities was

served on Defendant via CM/ECF, per LCvR 5.4(d)(1), this 23rd day of May 2025 to the follow-

ing:

Jeanine Ferris Pirro
United States Attorney

Brian P. Hudak
Chief, Civil Division

Debra S. Curteman
Assistant United States Attorney

601 D Street, NW
Washington, DC 20530
(202) 252-2550

*Attorneys for the United States of America*

*/s/ Steven A. Neeley*
Steven A. Neeley