UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUSCH BLACKWELL LLP, | ) | |
| | ) | |
| | ) | Civil Action No. 1:24-cv-02733 (JDB) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF POINTS** |
| | ) | **AND AUTHORITIES IN** |
| DEPARTMENT OF COMMERCE, et al., | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| Defendants. | ) | **JUDGMENT** |
| | ) | **[ORAL ARGUMENT** |
| | ) | **REQUESTED]** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.    The Government still has not complied with FOIA............................................................. 3

II.   The claimed exemptions do not shield from disclosure any documents actually
      responsive to Husch Blackwell's request. ..................................................................... 6

      A.    The Government has not met its burden to show that Exemption 3 applies........... 6

      B.    Other claimed exemptions do not shield documents actually responsive to
            Husch Blackwell's request.................................................................................. 18

            1.    Exemption 5 ............................................................................................. 18

            2.    Exemption 1 ............................................................................................. 24

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Immigr. Council v. U.S. Customs & Border Patrol*,
590 F. Supp. 3d 306 (D.D.C. 2022) ............................................................... 20

*American Oversight v. U.S. Department of Health and Human Services*,
380 F.Supp.3d 45 (D.D.C. 2019) ................................................................... 23

*Anderson v. Diamondback Inv. Grp., LLC*,
117 F.4th 165 (4th Cir. 2024) ........................................................................ 13

*Army Times Publ'g Co. v. U.S. Dep't of Air Force*,
998 F.2d 1067 (D.C. Cir. 1993) ..................................................................... 20

*Campaign For Responsible Transplantation v. U.S. Food And Drug Admin.*,
180 F. Supp. 2d 29 (D.D.C. 2001) ................................................................... 5

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*,
722 F. Supp. 2d 66 (D.D.C. 2010) ................................................................... 5

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ....................................................................... 19

*Council for a Livable World Educ. Fund v. United States Dep't of State*,
No. 96-1807 (HHK), 1998 U.S. Dist. LEXIS 23642 (D.D.C. Jan. 22, 1998) ....................... 14

*Council v. U.S. Customs & Border Patrol*,
590 F. Supp. 3d 306 (D.D.C. 2022) ............................................................... 20

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ................................................................................. 22, 23

*Electronic Frontier Foundation v. U.S. Dept. of Justice*,
739 F.3d 1 (D.C. Cir. 2014) .......................................................................... 21

*Fischer v. United States*,
603 U.S. 480 (2024) ................................................................................. 11

*Hayden v. Natl. Sec. Agency/C*,
608 F.2d 1381 (D.C. Cir. 1979) ..................................................................... 14

*Heartland All. for Hum. Needs & Hum. Rts. v. United States Immigr. & Customs Enf't*,
406 F. Supp. 3d 90 (D.D.C. 2019) .................................................................... 4

*Jud. Watch, Inc. v. Food & Drug Admin.*,
  449 F.3d 141 (D.C. Cir. 2006) ............................................................. 5

*Nat'l Sec. Counselors v. C.I.A.*,
  960 F. Supp. 2d 101 (D.D.C. 2013) .................................... 9, 13, 14, 16

*National Ass'n of Home Builders v. Norton*,
  309 F.3d ........................................................................................ 13, 16

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ........................................................................... 21

*Phillippi v. C.I.A.*,
  546 F.2d 1009 (D.C. Cir. 1976) .................................................... 14, 16

*Poitras v. Dep't of Homeland Sec.*,
  303 F. Supp. 3d 136 (D.D.C. 2018) ..................................................... 5

*Post v. St. Paul Travelers Ins. Co.*,
  691 F.3d 500 (3d Cir. 2012) .............................................................. 13

*Public Employees for Environmental Responsibility v. U.S. Section, Int'l Boundary and Water
  Comm'n, U.S.-Mexico*,
  740 F.3d 195 (D.C. Cir. 2014) ..................................................... 22, 23

*Public Employees for Envt'l Responsibility v. EPA*,
  288 F. Supp. 3d 15 (D.D.C. 2017) ................................................ 18, 20

*SafeCard Services, Inc. v. S.E.C.*,
  926 F.2d 1197 (D.C. Cir. 1991) .................................................... 21, 22

*United States v. Brock*,
  94 F.4th 39 (D.C. Cir. 2024) ............................................................. 13

*W. Virginia v. Env't Prot. Agency*,
  597 U.S. 697 (2022) ........................................................................... 11

*Washington v. Nat'l Archives & Recs. Admin.*,
  583 F. Supp. 2d 146 (D.D.C. 2008) .............................................. 18, 20

*Whitaker v. C.I.A.*,
  31 F. Supp. 3d 23 (D.D.C. 2014) ....................................................... 14

*Whitman v. American Trucking Assns.*,
  Inc., 531 U.S. 457 (2001) .................................................................. 11

*Wis. Project on Nuclear Arms Control v. U.S. Dep't of Com.*,
   317 F.3d 275 (D.C. Cir. 2003) ................................................................................ 15

**Statutes**

5 U.S.C. § 552(b) ...................................................................................................... 9, 18

50 U.S.C. § 403g ...................................................................................................... 14

50 U.S.C. § 4811-4826 ............................................................................................ 15

50 U.S.C. § 4813(a)(2) ............................................................................................ 3

50 U.S.C. § 4820(h) ......................................................................................... 8, 9, 10

**Regulations**

15 C.F.R. Part 744 .................................................................................................. 3, 8

90 Fed. Reg. 14046 (Mar. 28, 2025) ...................................................................... 3

87 Fed. Reg. 77505 (Dec. 19, 2022) ............................................................... 1, 3, 21

## INTRODUCTION

Almost two years ago, Husch Blackwell submitted a FOIA request for a single document and its attachments: the final proposal upon which Defendants relied when announcing that they "determined" to place YMTC and YMTJ on the Entity List, "based on information" supposedly warranting that determination. *See* 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022). After protracted delay, and only upon filing its own motion for summary judgment, the Government finally produced a *Vaughn* index and agency declaration. Now, for the first time, Husch Blackwell has evidence showing the Government identified a set of documents that appears to be woefully overinclusive. As a result, even with the Government's late-breaking production, it is still impossible to meaningfully evaluate the Government's productions and claimed exemptions. The *Vaughn* index and declaration do not provide sufficient evidence about *which* of the 100-plus identified documents are responsive to Husch Blackwell and which, if any, are wholly extraneous. At the threshold, then, the Court should order the Government to clarify which documents are actually responsive. It should also conduct *in camera* review of all documents to verify the Government's assertions.

The Government also fails on the merits to support its claimed exemptions. Over and over, the Government turns to FOIA Exemption 3 and the Export Control Reform Act of 2018 (ECRA) to withhold several documents in whole or in part. As Husch Blackwell explained in its own summary judgment motion and explains again now, the Government's sweeping application of Exemption 3 is overbroad and wrong.

Nor can the Government rely on Exemption 5 privileges to shield responsive documents from public view. Because Husch Blackwell sought only the agency's "final" proposal—not any pre-decisional deliberation—Exemption 5 should be a non-starter. But if the Government is, in

fact, claiming Exemption 5 over actually responsive documents, that claim fails for multiple reasons. The Government's Exemption 1 claim fails, too.

In sum, this Court should deny the Government's motion and order specific relief. First, because the Government has not sufficiently identified the responsive documents in a way that allows Husch Blackwell to fully respond to the exemptions claimed, the Court should order the Government to declare which documents listed in its *Vaughn* index are responsive to Husch Blackwell's FOIA request, conduct *in camera* review, or both. Second, given the Government's erroneous understanding of Exemption 3 and dubious assertions of Exemption 5 and Exemption 1, the Court should further order the Government to produce all documents listed on the *Vaughn* index to the Court, after which the Court should review all documents *in camera*—both for responsiveness and for exemptions. Finally, after *in camera* review, the Court should order the Government to produce to Husch Blackwell those documents that are responsive and not protected by any exemption.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant factual and procedural background is fully set forth in Plaintiff's Statement of Material Facts Not in Genuine Dispute attached to its Motion for Summary Judgment [ECF 022], incorporated herein by reference. Plaintiff also responds to Defendant's Statement of Undisputed Material Facts [ECF 021-017] in the attached Counter-Statement of Genuine Issues of Material Facts, which is also incorporated herein by reference.

## ARGUMENT

### I.    The Government still has not complied with FOIA.

The BIS[1] Entity List is one of the most powerful tools in the U.S. government's arsenal, forming the basis of, for example, the current expansive restrictions on foreign semiconductor manufacturers. *See Additions to the Entity List*, 90 Fed. Reg. 14046 (Mar. 28, 2025); 15 C.F.R. Part 744. These expansive restrictions naturally impede trade and competition in the name of furthering national security or foreign policy goals. As such, the public has a legitimate interest in understanding whether the Government's usage of such a powerful tool is based on reliable sources rather than information that is difficult to verify or, worse yet, released with an anticompetitive agenda. At base, the public should be entitled to know the caliber of information that the Government considers in cases when making such economically consequential decisions that affect the entire global tech industry and its consumers. *See* James Pomfret & David Kirton, *U.S. Blacklist on China is Riddled with Errors, Outdated Details*, Reuters (May 2, 2025), https://bit.ly/4dpsrBW.

In 2022, the Government placed YMTC and YMTJ[2] on the Entity List. 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022). The *Federal Register* notice effecting this placement stated:

> The agencies represented on the [End-User Review Committee ("ERC")] determined to add [YMTC] under the destination of China and [YMTJ] under the destination of Japan to the Entity List for posing a significant risk of becoming involved in activities contrary to the national security or foreign policy interests of the United States. This request is based on information indicating that these companies present a risk of diversion to parties on the Entity List, to include Huawei Technologies Co., Ltd., and Hangzhou Hikvision Digital Technology Co., Ltd. This activity is contrary to the national security or foreign policy interests of the United States under § 744.11(b) of the EAR.

---

[1] BIS is the Bureau of Industry and Security, within the Department of Commerce, which maintains the Entity List. 50 U.S.C. § 4813(a)(2); 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022).

[2] YMTC is Yangtze Memory Technologies Company, Ltd., and YMTJ is Yangtze Memory Technologies (Japan), Inc.

Although short, this statement discloses critical facts. First, per the notice's own terms, the Government had "information indicating these companies present a risk of diversion." Second, the notice cites § 744.11(b) of the EAR (15 C.F.R.), which authorizes the Government to add a company to the Entity List only when there is "reasonable cause to believe, based on specific and articulable facts" that the company is doing certain enumerated things. In short, the Government relied on "specific and articulable facts" and "information" to add YMTC and YMTJ to the Entity List—a designation that affects American companies who may otherwise wish to do business with them. Despite incorporating that "information" into the *Federal Register* notice itself, the Government did not publicize any final memorandum or other proposal that justified, based on the required "specific and articulable facts," its decision to add YMTC and YMTJ to the Entity List.

"Congress enacted FOIA to permit citizens to discover 'what their government is up to.'" *Heartland All. for Hum. Needs & Hum. Rts. v. United States Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 108 (D.D.C. 2019). To that end, almost two years ago, Husch Blackwell submitted two narrow FOIA requests seeking a single, specific record: "[A] copy of the final proposal and any accompanying attachments, exhibits, or appendices that were submitted to the End-User Review Committee ('ERC') in support of the decision to place [YMTC or YMTJ] on the BIS Entity List." This narrow request sought the basis for the Government's decision to place YMTC and YMTJ on the Entity List.

As Husch Blackwell explained at length in its own summary judgment brief, the Government's response to its FOIA request was delayed, insouciant, and noncompliant. Only *now*—filed in court with its own summary judgment motion—did the Government produce its long-overdue *Vaughn* index and agency declaration.

Still, though, the Government's index and declaration fail to provide sufficient information. Though a step in the right direction, the "the adversary system" still cannot "operate." *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 150 (D.D.C. 2018) (citation modified). Neither Husch Blackwell nor the Court can assess the propriety of the Government's withholdings when there is an "'asymmetrical distribution [ ] of knowledge' where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 78 (D.D.C. 2010) (quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006)).

In particular, the *Vaughn* index appears to be both overinclusive and underinclusive. Theoretically, the documents identified on the *Vaughn* index are ones that the Government identified as responsive to Husch Blackwell's FOIA request. *See Campaign For Responsible Transplantation v. U.S. Food And Drug Admin.*, 180 F. Supp. 2d 29, 32 (D.D.C. 2001) ("A *Vaughn* index is an affidavit that specifically describes the withheld or redacted documents and justifies, in detail, why each withheld record that would be responsive to the request is exempt from disclosure under FOIA.") (emphasis added). Husch Blackwell requested *only* the agency's "final proposal"—presumably, a memorandum, report, or presentation—and attachments. Yet the *Vaughn* index includes 121 documents, many of which are described as "emails" or other communications that, at least based on what the Government has disclosed, do not appear to be responsive to Husch Blackwell's request. *See* Entries 1-4, 6, 8, 9, 10, Gov't. Mot. Summ. J., Exhibit 15 [ECF 21-16]. At the same time, the *Vaughn* index lacks sufficient information for Husch Blackwell to assess what actually *is* responsive to its request. Although it can make some educated guesses, *see infra* Section II.A, FOIA won't stand for that. The Government has the burden to adequately segregate, specify,

and support its disclosures and withholdings. *See* Mem. in Support of Husch Blackwell's Mot. for Summ. J. 6–12 [ECF 22-1]. The current *Vaughn* index does not meet that burden.

Accordingly, the Court should order the Government to fulfill its FOIA obligations. Specifically, the Court should order the Government to (i) state, on the record, which documents listed in its *Vaughn* index are responsive to Husch Blackwell's FOIA request and (ii) produce all documents listed on the *Vaughn* index to the Court for *in camera* review to verify which documents are responsive. *See* Mem. in Support of Husch Blackwell's Mot. for Summ. J. 12–14 [ECF 22-1]. Such *in camera* review will also allow the Court to evaluate the viability of exemptions—at least as applied to the set of documents actually responsive to the original FOIA request—as further discussed below.

## II.    The claimed exemptions do not shield from disclosure any documents actually responsive to Husch Blackwell's request.

### A.    The Government has not met its burden to show that Exemption 3 applies.[3]

The Government claims Exemption 3 over several documents in full and in part. Although Husch Blackwell cannot know for sure without further information, *in camera* review, or both, it appears that certain documents listed on the *Vaughn* index are responsive to Husch Blackwell's request. Specifically, there are a variety of described documents that are or could be the agency's "final proposal"—the *only* document requested by Husch Blackwell—in the form of a memorandum(a) addressed to the ERC and/or the Advisory Committee on Export Policy ("ACEP").[4] The

---

[3] This argument is similar to, but expands on, the argument about Exemption 3 presented in Husch Blackwell's own summary judgment brief.

[4] Although it is possible that no such "final proposal" exists, Husch Blackwell's request is based upon a good faith information and belief of the ERC's process. If no "final proposal" exists, the Government could avoid considerable time and expense by declaring as much, but it has never done so. That several of the Government's withholding justifications also cite "supporting information" for entity proposals also suggests that the document sought in Husch Blackwell's original, targeted request exists in that form.

memorandum(a) addressed to the ERC, which is at least *initially* responsible for decisions to place entities on the Entity List, is identified in the first table below. There are several slight variations in the Government's description and withholding justification—as well as the page length—for the memorandum(a), though they all generally relate to proposed entities and supporting information for additions to the Entity List. Given the different page lengths, it is not clear whether multiple final versions exist or what else may account for the difference. The Government has not explained. Notably, though, the Government claims *only* Exemption 3 as a basis for withholding them and not Exemption 5, further supporting that one or more of these documents are the "final" version.[5]

| ERC Memorandum | | | |
|---|---|---|---|
| Document No. | Pages | Commerce's Document Description | Commerce's Withholding Justification |
| 16 | 10 | Memorandum for Interagency ERC members regarding addition to the Entity List. | "The withheld document is a memorandum prepared for the interagency ERC members regarding additions to the Entity List." |
| 17, 18 | 4 | Memorandum for Interagency ERC members regarding addition to the Entity List. | "The withheld document is a memorandum prepared for the ERC members regarding additions to the Entity List." |
| 18 | 4 | Memorandum for ERC members regarding addition to the Entity List. | "The withheld document is a memorandum prepared for the ERC members regarding additions to the Entity List." |
| 22 | 8 | Memorandum for ERC members regarding addition to the Entity List. | "The withheld document is composed of a memorandum prepared for the ERC members regarding additions to the Entity List." |
| 54–56 | 4, 10 | Memorandum regarding the addition of companies to the Entity List. | "The information withheld in this document relates to proposals and supporting information for additions to the Entity List." |
| 73, 74 | 5, 8 | Memorandum regarding adding entities to the Entity List. | "The withheld memorandum discusses proposed entities for placement on the Entity List and supporting information." |
| 87, 88, 93, 94, 97–99, 104, 106, 112, 114, 118, 120 | 3, 4, 6, 7, 8 | Memorandum regarding additions to the Entity List and supporting information. | "The withheld memorandum contains proposed entities to be included on the Entity List and supporting information." |

---

[5] Contrast these documents with those described as a "draft memorandum" and for which the Government also claims Exemption 5, such as Document Nos. 53, 71–72, 78, and 80.

Any ERC member agency that disagrees with the outcome of an ERC vote to place (or remove) an entity on the Entity List may escalate the matter to the member-agency political appointees that compose the ACEP. *See* Supplement No. 5 to 15 C.F.R. Part 744. That there are communications and one or more memoranda involving the ACEP indicates that at least one member agency objected to the decision to add YMTC and YMTJ to the Entity List. However, the Government has not explained whether the ACEP memorandum would or does contain any new or different "supporting information" than the ERC memorandum—and thus arguably constituting the "final proposal"—or if the ACEP memorandum functions as merely a statement of appeal. At the very least, the Court should order the Government to provide that explanation and/or conduct an *in camera* review of the memorandum(a) to evaluate its responsiveness. The memorandum(a) addressed to the ACEP is identified in this second table below.

| ACEP Memorandum | | | |
|---|---|---|---|
| Document No. | Pages | Commerce's Document Description | Commerce's Withholding Justification |
| 14, 44 | 3 | Memorandum for the Advisory Committee on Export Policy (ACEP). | The withheld document is a memorandum that was addressed to the ACEP regarding additions to the Entity List. |
| 68 | 3 | Memorandum prepared for the ACEP. | The withheld memorandum was prepared for the ACEP and outlines proposed additions to the Entity List with supporting information. |
| 84, 101, 108 | 3, 4, 8 | Memorandum to the ACEP. | The withheld memorandum contains proposed entities to be included on the Entity List and supporting information. |
| 90 | 3 | Memorandum to the ACEP. | The withheld memorandum was prepared for the ACEP and contains information relating to the entities being proposed for inclusion on the Entity List. |

As to the above documents and others, the Government cites Section 1761(h) of ECRA, 50 U.S.C. § 4820(h), as grounds for its withholdings under Exemption 3. But it fails to meet either prong of the relevant statutory test:

- The Government asserts the withheld records relate to "operations under this sub-chapter," but it offers no explanation tying them to the specific categories enumerated in § 4820(h)(1)(B)(i)–(v). *See* Commerce OGC Determination Letter (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L.

- The Government's expansive reading of the statutory term "including" as permitting withholding of anything tangentially related to ECRA operations conflicts with FOIA's mandate for narrow construction. *See id*.

Courts routinely reject such broad readings. *See Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 176 (D.D.C. 2013). Adopting the Government's interpretation here with respect to the Entity List would permit BIS to shield *the entirety* of its operations, including its most powerful and consequential functions, from the public—an outcome squarely foreclosed by FOIA.

Drilling down on the Exemption 3 argument, start with the language of FOIA. Exemption 3 allows agencies to withhold documents that are exempt from disclosure under *another* statute if it meets certain criteria. 5 U.S.C. § 552(b)(3). For the other statute here, the Government turns to Section 1761(h) of ECRA (codified at 50 U.S.C. § 4820(h)), asserting a novel and expansive basis for keeping documents behind closed doors. Neither its *Vaughn* index or supporting agency affidavit specifically explain how ECRA allows the Government to deny disclosure.

Here, again, Husch Blackwell requested: "[A] copy of the final proposal and any accompanying attachments, exhibits, or appendices that were submitted to the End-User Review Committee ('ERC') in support of the decision to place [YMTC or YMTJ] on the BIS Entity List." Compl. ¶¶ 15, 16, Exs. A, B [ECF 1-1, 1-2]. It is far from clear that ECRA would prevent disclosure here, especially with the broad scope the Government claims. ECRA instructs that "information described in subparagraph (B) shall be withheld from public disclosure . . . , unless the

release of such information is determined by the Secretary to be in the national interest." 50 U.S.C.

§ 4820(h)(1)(A). Subparagraph (B), in turn, lists the categories of information that may be with-

held:

> (B) **Information described**: Information described in this subparagraph is infor-
> mation submitted or obtained in connection with an application for a license or
> other authorization to export, reexport, or in-country transfer items or engage in
> other activities, a recordkeeping or reporting requirement, an enforcement activity,
> or other operations under this subchapter, including—
>
> > (i) the license application, license, or other authorization itself;
> > (ii) classification or advisory opinion requests, and the response thereto;
> > (iii) license determinations, and information pertaining thereto;
> > (iv) information or evidence obtained in the course of any investigation; and
> > (v) information obtained or furnished in connection with any international
> > agreement, treaty, or other obligation.

§ 4820(h)(1)(B).

Based on this text, § 4820(h)(1)(B) envisions a two-part test before it covers any particular

information. First, the information must be "submitted or obtained in connection with an applica-

tion for a license or other authorization to export, reexport, or in-country transfer items or engage

in other activities, a recordkeeping or reporting requirement, an enforcement activity, or other op-

erations under this subchapter." Second, the information must be of one of the enumerated cate-

gories in the "including" list, (i)–(v). For example, the statute would cover "information obtained

or furnished in connection with any international agreement, treaty, or other obligation" (satisfying

the second part) that was "submitted or obtained in connection with an application for a license"

(satisfying the first part).

The Government apparently agrees that these two things are required: it addressed both in

each of its determination letters. But the Government then goes astray both in interpretation and

application.

10

Start with the first part of the test. In its May 15 determination letter, the Government asserts that the withheld information "related to the End User Review Committee (ERC)'s review and determination of additions made to the BIS Entity List." BIS Determination Letter, p. 2 (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M. The Government does not specify or explain how the first part of the test is satisfied. Yet, in its prior determination letter, the Government claimed that the withheld information is "in connection with" "other operations under this subchapter," and that the "other operations under this subchapter" are "the operations of the End User Review Committee (ERC) concerning additions or other changes to the Entity List." *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. This is the *only* argument the Government makes concerning the first part of the test. It does *not* claim that Husch Blackwell requested information "in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, [or] an enforcement activity."

But the Government does not set forth any argument explaining how the ERC's Entity List additions are, in fact, "other operations under this subchapter." This omission is glaring, especially in light of recent Supreme Court precedent cabining the Government's expansive reliance on "other," "otherwise," and other residual clauses. *See Fischer v. United States*, 603 U.S. 480, 487 (2024) (reading "otherwise" narrowly to exclude conduct at issue, in light of *noscitur a sociis* and *ejusdem generis* canons); *cf. W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 724 (2022) (rejecting reliance on "vague language of an ancillary provision" of a statute (citation modified)); *Whitman v. American Trucking Assns.*, Inc., 531 U.S. 457, 468 (2001) (observing that Congress does not "hide elephants in mouseholes").

Then move on to the second part of the test—this is where the Government's explanation falls apart. Even assuming the withheld information is "in connection with" "other operations under this subchapter" (which is not conceded, see above), the Government still comes up short. The Government makes no attempt to argue that the withheld information falls under any of the enumerated (i)–(v) categories of information. It does not claim, for instance, that Husch Blackwell requested a "license determination[], and information pertaining thereto." In its latter determination letter, the Government does not address the enumerated (i)–(v) categories of information at all. In its former determination letter, the Government hung its entire argument on what "including" means. For the Government, "including" is *always* illustrative and *always* boundless—meaning it can shield from disclosure *any other thing* that is not enumerated in (i)–(v). *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. At least three problems afflict the Government's interpretation:

- First, although "including" "has traditionally introduced a nonexhaustive list," it is "now coming to be widely" used (even if misused) to mean "consists of." *Include*, Garner's Modern American Usage 454; *accord Include*, Black's Law Dictionary (12th ed. 2024). Congress could have written "including, but not limited to" or added a romanette (vi) that said "and all other similar types of information." But it chose not to, meaning in context, the word "including" is at best ambiguous.

- Second, in context, reading "including" as illustrative, instead of as exhaustive, allows the Government to withhold more and disclose less. Given that the word "including" is ambiguous, allowing the Government's reading to stand would run headlong innto FOIA's cardinal principle of construction. Instead, FOIA exemptions must be "narrowly construed" according to a "strong presumption in favor of

disclosure," *Norton*, 309 F.3d at 32, and any ambiguities in ECRA's text must be construed in Husch Blackwell's favor.

- Third, even if "including" were illustrative, it is not boundless. The other things the Government could withhold must be directly related to the things enumerated in the list. *See Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 192 (4th Cir. 2024) (observing that even when "includes" is used as "a term of enlargement, and not of limitation," that does "not suggest that 'including' phrases *enlarge* the categories they illustrate—or give courts *license to expand those categories beyond their definitional borders*" (emphases added)); *United States v. Brock*, 94 F.4th 39, 57 (D.C. Cir. 2024) (explaining that because "illustrative list *illustrates* what type of conduct is encompassed by the definition," "other unlisted forms of conduct must fit that same mold"; "[e]xpanding the phrase 'administration of justice' to capture the administration of all governmental actions required by law breaks that mold"); *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 520 (3d Cir. 2012) ("It is widely accepted that general expressions such as 'including, but not limited to' that precede a specific list of included items should not be construed in their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." (citation modified)). And, because the Government bears the burden to prove a FOIA exemption, it would have to—at bare minimum—*explain* how its withholding relates to something on the list. But the Government made no attempt to do so at all. Its reasoning in its determination letter is wholly conclusory. *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 154

("[T]he agency's justifications for its actions must be 'specific' and 'non-conclusory.'").

Neither this Court nor any federal appellate court has interpreted this provision of ECRA to mean what the Government asserts. But this Court *has* applied FOIA's narrow-construction rule to statutes invoked by the government under Exemption 3. For example, the CIA argued that 50 U.S.C. § 403g exempts the government from disclosure of all information about CIA's functions. *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 176. Section 403g provides that the government need not disclose details "of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." 50 U.S.C. § 403g. The Court held the CIA's broad interpretation of § 403g was inappropriate because it would come dangerously close to exempting from disclosure "*any information at all about what [the CIA] does.*" *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 176 (quoting *Phillippi v. C.I.A.*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976)) (emphasis added); *see also Whitaker v. C.I.A.*, 31 F. Supp. 3d 23, 34 (D.D.C. 2014), *aff'd sub nom. Whitaker v. U.S. Dept. of State*, No. 14-5275, 2016 WL 9582720 (D.C. Cir. Jan. 21, 2016) (holding that the Central Intelligence Act may be used to protect from disclosure only specific information on the CIA's personnel and internal structure as listed in the statute; it does not support a broad withholding of information relating to all CIA functions). These cases provide ample support for Husch Blackwell's position here.

In contrast, where courts *have* approved broad readings of an exemption statute, these decisions were generally supported by the need for "extreme security measures" and a clear Congressional intent to maintain confidentiality. *See Hayden v. Natl. Sec. Agency/C. Sec. Serv.*, 608 F.2d 1381, 1390 (D.C. Cir. 1979); *cf. Council for a Livable World Educ. Fund v. United States Dept of State,* No. 96-1807 (HHK), 1998 U.S. Dist. LEXIS 23642, *19 (D.D.C. Jan. 22, 1998)

(finding that the government interpreted exemption related to licensing in EAA too broadly based on the legislative history, and deciding the government must submit another Index to explain withheld documents). Here, no such national security concern exists to justify the Government's unbounded reading of ECRA. For example, while ECRA and its predecessor statutes reveal an intent to keep *export license application data* and limited other categories of information confidential, there is no support for a broad reading of ECRA which would exempt from disclosure basically any information at all about what the agency does. *See Wis. Project on Nuclear Arms Control v. U.S. Dep't of Com.*, 317 F.3d 275, 281 (D.C. Cir. 2003) ("Congress's actions throughout the long history of the EAA evince a clear appreciation of the dangers inherent in exposing *export application data* to public view.") (emphasis added). And the requested information here has nothing to do with any export license application, nor any of the other listed categories of information; indeed, the Government has not argued that it does. Nor has the Government even attempted to describe the category of information requested here, and why it should be read to fall alongside the listed categories in § 4820(h)(1)(B)(i)–(v). The Government's broad proposed reading is contrary to the need for narrow construction of the exemptions to support the strong presumption in favor of disclosure.

The logical endpoint of the Government's argument should give the Court significant pause. The Government wants to combine "operations under this subchapter" with a boundless reading of "including." But doing so would give the Government limitless withholding authority. "Operations under this subchapter"—subchapter I of chapter 58, Title 50, U.S. Code 50 U.S.C. §§ 4811-4826)—in fact describes *all functions, authorities, and activities of BIS*, not merely ERC operations related to the Entity List. Combined with the Government's boundless reading of "including," the Government's overall argument would allow it to withhold from disclosure *all*

*information about everything BIS does*. This flies in the face of the purpose of FOIA generally and the "narrowly construe" canon in particular. It impermissibly exempts from disclosure "*any information at all about what [BIS] does.*" *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 176 (quoting *Phillippi,* 546 F.2d at 1015 n. 14) (emphasis added).

In contrast, the Court must "narrowly construe" the terms used in the ECRA withholding provision in a way that vindicates FOIA's "strong presumption in favor of disclosure." *Norton*, 309 F.3d at 32. To do so, the Government must provide Husch Blackwell, and the Court, with more information. At a minimum: when the Government claims that it withheld "information that was submitted or obtained in connection with the operations of the End User Review Committee (ERC) concerning additions or other changes to the Entity List (*including information derived from or directly related to such information*)," what type of information is it referring to? Why should this information fall in the list set forth in § 4820(h)(1)(B)(i)–(v)? What does "including information derived from or directly related to such information" actually mean?[6] *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L (emphasis added). How exactly was this information "submitted or obtained in connection with" the ECRA operations at issue here? *See id.* Why would such "information fall[] squarely within the parameters of ECRA's disclosure prohibitions," and how would "[d]isclosure of this information [] diminish BIS's ability to administer its export control program" and "reduce the government's ability to obtain information that it needs to properly evaluate companies for addition to,

---

[6] Indeed, it appears that the Government is proffering as vague and ambiguous a reading of § 4820(h)(1)(B) as possible. Not only does it rely on broad catch-all provisions and strained interpretations of the two-part examination (looking at withheld categories of "information" used in certain types of "operations"), but the Government has injected even more ambiguity by adding phrases like "including information derived from or directly related to such information" in its description of the types of information being requested. *See* Commerce OGC Determination Letter, p. 3 (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L.

removal from, or modification of the Entity List"? *See* BIS Determination Letter, p. 2 (May 15, 2025), copy attached to Dec. of S. Neeley at Ex. M. If the Government's broad reading of the ECRA withholding provisions is adopted, how can the Government assure this Court that such an interpretation will not lead to a complete bar to public visibility into *all operations carried out under ECRA, which includes all BIS operations*? Detailed explanations are required; none has been provided. The *Vaughn* index and agency affidavit do nothing to add to or expound upon previously provided explanations.

The Government's final argument on Exemption 3 is a nonstarter. It claims that "BIS reasonably concluded that disclosure of this information would diminish BIS's ability to administer its export control program, in that release could reduce the government's ability to obtain information that it needs to properly evaluate companies for addition to, removal from, or modification of the Entity List." Mot. 14–15 (citation modified). The Government makes this conclusory statement without describing how disclosure would (or even could) impair its ability to obtain such information. Instead, the Government asks this Court to accept this summary determination as fact—an unsettling proposition given Commerce's proposed limitless interpretation of ECRA's withholding authority.

Particularly in light of its failure to sufficiently explain how ECRA should justify withholding the particular documents requested here without leading to a complete blackout of any public access to information about *any* BIS operations, and particularly in light of its total failure to proffer any additional detail or support in its *Vaughn* index or agency affidavit for this broad interpretation, the Government has failed to meet its burden to show that *any* part of ECRA protects *any* part of *any* document from disclosure.

At the very minimum, the Court should review *in camera* responsive documents that have been fully or partially withheld under Exemption 3. *Cf. Public Employees for Envt'l Responsibility v. EPA*, 288 F. Supp. 3d 15, 24 n.3 (D.D.C. 2017). The Government's novel and sweeping application of ECRA requires judicial oversight.

### B. Other claimed exemptions do not shield documents actually responsive to Husch Blackwell's request.[7]

#### 1. Exemption 5

Under FOIA, Exemption 5 exempts "inter-agency or intra-agency memorandums or letters" from disclosure when they "would not be available by law to a party other than an agency in litigation with the agency," and thus looks to typical "privilege[s] against discovery under judicial standards." 5 U.S.C. § 552(b)(5); *Citizens For Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*, 583 F. Supp. 2d 146, 156 (D.D.C. 2008) (cleaned up). In its determination letters, the Government asserts that its Exemption 5 claims are based on the deliberative process privilege because the production "consists only of email communications or documents exchanged among Federal employees." *See* Commerce OGC Determination Letter (Apr. 11, 2025), copy attached to Decl. of S. Neeley at Ex. L. Within the production, Exemption 5 is asserted to redact information primarily in documents that appear to be email communications. The Government claims that such emails contain "staff comments… regarding drafts of the [E]ntity list" and "candid and frank feedback regarding the discussions on matters of policy and process." *See* BIS Determination Letter (May 15, 2025), copy attached to Decl. of S. Neeley at Ex. M. The Government further explains it is claiming Exemption 5 privileges over "portions of internal BIS communications," "responses to BIS counsel inquiries and proposed edits, as well as a discussion of the edits made by counsel;

---

[7] Husch Blackwell does not dispute the Government's Exemption 6 redactions and thus does not address them here.

requested responses to decisions from a prior meeting; comments and guidance on draft documents as well as proposals for resolution of identified issues," "predecisional and deliberative communications exchanged between BIS staff, counsel, and BIS ERC members on draft regulations, staff edits, discussion of recommended edits from counsel, and edits to the Entity List, as well as staff comments returned to counsel regarding drafts of the Entity List additions, internal staff discussions of processes, deadlines, and proposed plans to move the proposed Entity List additions through the publication process, and proposed timelines, processes, and options for moving the rule forward," "candid internal discussions and the expression of recommendations and judgments by government officials *when preparing* Entity List recommendations," and more. Gov't. Mot. Summ. J., Exhibit 15, pp. 16-20.

On the one hand, it appears that many if not all the documents the Government claims are subject to Exemption 5 *are not responsive to Husch Blackwell's request*. It seems doubtful that documents such as these constitute the "final proposal"—which is what, and only what, Husch Blackwell requested. Exemption 5 protects "predecisional" and "deliberative" communications. It does so to ensure vigorous debate and to prevent the chilling of free-flowing discussion. But Husch Blackwell requested only the final proposal submitted to the ERC. Such a proposal, by definition, constitutes the agency's final view—not protected predecisional input. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Disclosing the actually requested document would not implicate any of the valid interests Exemption 5 seeks to protect.

On the other hand, *if the Government has claimed Exemption 5 over responsive documents*, then that exemption cannot stand. In other words, if the documents withheld or redacted under Exemption 5 are indeed part of the "final proposal" requested, then deliberative process privilege *does not protect them* because they are not predecisional and deliberative. Any documents that

constitute the final rationale or outcome of a deliberative process cannot be withheld under Exemption 5. *See, e.g.*, *Citizens*, 583 F. Supp. 2d at 157; *see also Am. Immigr. Council v. U.S. Customs & Border Patrol*, 590 F. Supp. 3d 306, 331 (D.D.C. 2022) ("[A] draft that was predecisional and deliberative when prepared may lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). Any documents responsive to Husch Blackwell's request would "merely describe *past* decisions" by the Government. *See Am. Immigr. Council*, 590 F. Supp. 3d at 325.

As things stand, Husch Blackwell does not know which of the above is true. Neither the *Vaughn* index, the declaration, the determination letters, nor the production itself provides sufficient information. Perhaps the Government *over*-produced and does not claim Exemption 5 over actually responsive documents (and instead claims only Exemption 3). But it is impossible to know for sure.[8] Accordingly, in *camera* review is necessary.

Additional reasons defeat the Government's Exemption 5 claims, especially as to actually responsive documents.

First, BIS's final Entity List decision published in the Federal Register in December 2022 publicly adopts and relies upon, and thus waives any deliberative aspect of, the information considered by the ERC that supposedly "indicated" a risk of diversion to Huawei and Hikvision. The Federal Register notice announcing the Entity List decision states:

---

[8] It also may be true that *parts* of responsive documents are properly subject to Exemption 5, while others are not. "Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains." *Army Times Publ'g Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993). At this point, the Government has not suggested as much in any way that Husch Blackwell can reasonably discern and therefore has failed to meet its segregability burden. *E.g.*, *Pub. Employees*, 288 F. Supp. 3d at 27. *In camera* review would help sort this out, too.

> *The agencies represented on the ERC determined to add* Yangtze Memory Tech-
> nologies Co., Ltd. and Hefei Core Storage Electronic Limited under the destination
> of China and Yangtze Memory Technologies (Japan) Inc. under the destination of
> Japan to the Entity List for posing a significant risk of becoming involved in activi-
> ties contrary to the national security or foreign policy interests of the United States.
> *This request is based on information indicating* that these companies present a risk
> of diversion to parties on the Entity List, to include Huawei Technologies Co., Ltd.,
> and Hangzhou Hikvision Digital Technology Co., Ltd." (87 Fed. Reg. 77505 (Dec.
> 19, 2022) (emphasis added).

87 Fed. Reg. 77505 (Dec. 19, 2022). "[T]he adoption exception . . . applies if the reasoning in the

privileged document is adopted by the agency as its reasoning." *Electronic Frontier Foundation*

*v. U.S. Dept. of Justice*, 739 F.3d 1, 11 (D.C. Cir. 2014). Of course, a final opinion "in the adjudi-

cation of a case [i]s the paradigm of a document that is not pre-decisional." *NLRB v. Sears, Roe-*

*buck & Co.*, 421 U.S. 132, 152 n. 19 (1975). However, the reasoning for the deliberative process

privilege also does not apply to an agency's explanation of its final action because *"[t]he proba-*

*bility that an agency employee will be inhibited from freely advising a decision maker for fear that*

*his advice, if adopted, will become public is slight." SafeCard Services, Inc. v. S.E.C.*, 926 F.2d

1197, 1204 (D.C. Cir. 1991) (quoting *Sears*, 421 U.S. at 161) (emphasis in original).

    In reviewing whether the minutes of SEC meetings were subject to the deliberative process

exemption, the D.C. Circuit observed that "[s]urely any portion of the minutes recounting a Com-

missioner's explanation of why he or she voted in a particular way could not be considered pre-

decisional, any more than would that Commissioner's separate written opinion accompanying the

agency's final order." *SafeCard*, 926 F.2d at 1206. Further, "if, in explaining its collective decision,

the Commission expressly adopts or incorporates any element of a Commissioner's or a staff mem-

ber's prior oral or written discussion of the matter, those incorporated portions of earlier minutes

or documents would no longer qualify as pre-decisional." *Id.*

    Here, the ERC determined to add YMTC and YMTJ to the Entity List. BIS's reasoning for

this determination was "based on information indicating [YMTC and YMTJ] present a risk of

diversion to parties on the Entity List." By making this final determination on these grounds, the ERC necessarily incorporated and adopted any and all such underlying information—whether in the form of formal memoranda, an agency's oral or written explanation, or otherwise. Therefore, any information supporting the conclusion that YMTC and YMTJ constitute diversion risks cannot be pre-decisional and cannot be withheld from disclosure under Exemption 5. *See SafeCard*, 926 F.2d at 1206.

Second, to the extent that the information relied upon by the ERC consists of information provided by third parties advancing their own interests at the expense of YMTC, Exemption 5 does not protect that information, either. As such, Exemption 5 is not sufficient to withhold any information provided by competitors or others with an interest in having YMTC cut out of the U.S. market.

The Supreme Court has acknowledged Courts of Appeals' decisions observing "that a document prepared for a Government agency by an outside consultant qualifies as an 'intra-agency' memorandum," when "the records submitted by outside consultants played essentially the same part in an agency's deliberative process as documents prepared by agency personnel." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2–3 (2001). Withholding is justified under the assumption that "the consultant does not represent its own interest, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth . . . ." *Id.* at 3.

The D.C. Circuit has extended this interpretation, referred to as the "consultant corollary," to include "U.S. agency records authored by non-agency entities if those records were *solicited* by a U.S. agency in the course of its deliberative process." *Public Employees for Environmental Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 201

(D.C. Cir. 2014) (Kavanaugh, J.) (citations omitted). However, "[i]n the wake of *Klamath*, [the D.C. Circuit has] confined the consultant corollary to situations where an outside consultant did not have its own interests in mind." *Id.* at 201–02; *see also American Oversight v. U.S. Department of Health and Human Services*, 380 F.Supp.3d 45, 54 (D.D.C. 2019) ("And since *Klamath*, the D.C. Circuit has consistently reiterated the principle that the outside consultant must be a neutral party who is not representing its own interests.").

Husch Blackwell has reason to believe, based on publicly available information, that third parties have previously attempted to target YMTC and its business by tying it to the Chinese military. Indeed, Bloomberg has previously reported on the tactic of "'astroturfing,' the technique of disguising corporate messaging as grassroots advocacy[.]" *Dell, Micron Backed a Group Raising Alarms on Rivals' China Ties*, Bloomberg Businessweek (Jan. 25, 2024), https://www.bloomberg.com/news/articles/2024-01-25/dell-micron-backed-a-group-criticizing-chinese-rivals. Further, public records show that YMTC has filed separate lawsuits addressing what it believes to be a coordinated campaign against it by a combination of consulting firms, public affairs firms, and even a competitor in the semiconductor industry. *See Yangtze Memory Technologies Company, Ltd., et al. v. Strand Consult (d/b/a China Tech Threat), Roslyn Layton, and DCI Group AZ, LLC*, No. 5:24-cv-03454-BLF (N.D. Cal June 7, 2024); *Yangtze Memory Technologies Company, Inc. v. Micron Technology, Inc.*, No. 1:25CV01795 (D.D.C. June 7, 2025).

Given the fierce technological and geopolitical competition between the United States and China, Husch Blackwell and the public at large have a legitimate interest in knowing whether BIS or any other Government agency may have relied on any information advanced, directly or indirectly, by a party with a conflicted, private agenda—one that would have profound implications for U.S. companies and consumers. There is a particular policy interest for the Court to ensure

transparency, consistent with FOIA, so that a third-party competitor cannot improperly exploit a cloistered national security process. Therefore, any such information cannot be and is not protected by Exemption 5.

### 2.    Exemption 1

Finally, the Government claims Exemption 1 for only one document: Vaughn Document No. 121. It is unclear whether this document is responsive to Husch Blackwell's request. If it is not, then Husch Blackwell does not challenge the Exemption claim. If it is, the Government has not met its burden to specify what the document is or support with appropriate evidence why it must be withheld in full. *See* Mem. in Support of Husch Blackwell's Mot. for Summ. J. 25–26 [ECF 22-1]. Indeed, the Boucher Declaration does not provide the names of relevant officials or agencies, nor does it elaborate in any detail on *why* the disclosure of the information would be a threat to national security. Such threadbare support is insufficient for an Exemption 1 claim. *Id.* The Court should review the document *in camera* to determine whether it is responsive and, if is, require the Government to supplement its *Vaughn* index and declaration with further information such that Husch Blackwell can meaningfully challenge the exemption claim if appropriate.

### CONCLUSION

The Court should deny the Government's motion.

The Court should further order the Government to declare which documents listed in its *Vaughn* index are responsive to Husch Blackwell's FOIA request.

The Court should further order the Government produce all documents listed on the *Vaughn* index to the Court, after which the Court should review all documents *in camera*—both for responsiveness and for exemptions. *In camera* review makes extra sense here, given the Government hiring freeze. *See* Boucher Decl. n.1 [ECF 21-1].

Finally, the Court should reject the Government's claimed exemptions over responsive documents and order the Government to produce those responsive documents in full.

**Husch Blackwell requests oral argument on is motion.**


**DATED** this June 13, 2025.

                    Respectfully submitted,


                 By: _____*/s/ Steven A. Neeley*_____
                      Steven A. Neeley (D.C. Bar No. 998792)
                      Joseph S. Diedrich, *pro hac vice*
                      Husch Blackwell LLP
                      1801 Pennsylvania Avenue NW, Suite 1000
                      Washington, DC  20006
                      Telephone: (202) 378-2331
                      Facsimile: (202) 378-2319
                      steve.neeley@huschblackwell.com
                      joseph.diedrich@huschblackwell.com

                      *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum of Points and Authorities was served on Defendant via CM/ECF, per LCvR 5.4(d)(1), this 13th day of June 2025 to the following:

Jeanine Ferris Pirro
United States Attorney

Brian P. Hudak
Chief, Civil Division

Debra S. Curteman
Assistant United States Attorney

601 D Street, NW
Washington, DC 20530
(202) 252-2550

*Attorneys for the United States of America*

_/s/ Steven A. Neeley_
Steven A. Neeley