UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUSCH BLACKWELL, LLP, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF COMMERCE, et al., <br><br> Defendants. | Civil Action No. 24-2733 (JDB) |

**DEFENDANTS' MEMORANDUM IN REPLY
IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, the Department of Commerce and Bureau of Industry and Security ("BIS"), by and through undersigned counsel, respectfully submit this reply memorandum in support of their motion for summary judgment ("Defs.' Mot.") (ECF No. 21).

For the reasons explained in Defendants' motion for summary judgment and herein, Defendants respectfully request that the Court find that Defendants provided a sufficient *Vaughn* index, properly invoked FOIA Exemptions 1, 3, 5, and 6[1], and that *in camera* review is not warranted. The Court, therefore, should grant summary judgment in Defendants' favor.

**ARGUMENT**

**I.    Defendants' *Vaughn* Index is Sufficient.**

In its opposition, Plaintiff avers that Defendants' "*Vaughn* index appears to be both overinclusive and underinclusive." Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgement ("Pls.' Opp'n") at 5 (ECF No. 23). Plaintiff argues that (1) some of the

---

[1] Plaintiff does challenge Defendant's Exemption 6 withholdings. *See* Pls. Opp'n at 18 n. 7 (ECF No. 23).

documents may not be responsive because they were described as emails, and (2) Defendants' *Vaughn* index lacked sufficient information to assess responsiveness. *See id.* Plaintiff misunderstands Defendants' burden.

First, Plaintiff's FOIA request is not as narrow as its opposition claims; rather, its request is actually quite expansive. Plaintiff contends that it "submitted a FOIA request for a single document and its attachments: the final proposal upon which Defendants relied when announcing that they 'determined' to place YMTC and YMTJ on the Entity List." Pls.' Opp'n at 1 (ECF No. 23). But, Plaintiff actually sought a "copy of the final proposal and any accompanying *attachments, exhibits, or appendices* that were submitted to the End-User Review Committee ('ERC') in support of the decision to place [YMTC or YMTJ] on the BIS Entity List.'" *Id.* at 4 (ECF No. 23). (emphasis added). Attachments, exhibits, and appendices can be inclusive of a variety of records, such as emails, prior draft proposals, and memoranda.

In response to Plaintiff's expansive FOIA request, Defendants conducted a thorough and targeted search for the documents. *See* Declaration of Stephanie Boucher, Director of the Office of Planning, Evaluation and Management at BIS, ("Boucher Decl.") ¶¶ 16-26 (ECF No. 21-1). Plaintiff does not challenge the adequacy or reasonableness of that search. And, Defendant's search yielded the responsive records identified in its *Vaughn* Index.

Second, Defendant's Vaughn index is sufficient as prepared. "To be adequate, a *Vaughn* index (1) 'should be contained in one document ....'; (2) 'must adequately describe each withheld document or deletion from a released document,' and (3) 'must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant.'" *Dorsett v. U.S. Dep't of the Treasury*, 307 F.Supp.2d 28, 34 (D.D.C. 2004) (quoting *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979)). However, "[t]he explanation of the

exemption claim and descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal . . .." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 294 (D.D.C. 2007) (quoting *Founding Church of Scientology*, 603 F.2d at 949).

Defendant's *Vaughn* index "separately identifies each of the [121] documents at issue, provides a description of the documents, lists the applicable exemptions, and states the basis for the applicability of the claimed exemptions." *Dorsett*, 307 F.Supp.2d at 34; *see generally Vaughn* index (ECF No. 21-16). In addition, Defendants' *Vaughn* index links each document with one or more exemptions. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1100 (D.C. Cir. 2014). Hence, Defendants are not required to provide a revised index based solely on Plaintiff's speculation that some of the resulting documents may not be responsive because of their document type. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). To the extent Plaintiff believes one or more entries on the *Vaughn* index identifies nonresponsive records, Plaintiff should feel free to disregard those entries.

Defendant (1) "conducted a line-by-line review of all unclassified records responsive to Plaintiff's FOIA requests to ensure compliance with FOIA," Boucher Decl. (ECF No. 21-1) ¶ 49, and (2) provided a thorough and detailed explanation for each claimed exemption, *see id* ¶¶ 27-48. "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Plaintiff's speculation that some of the documents may not be responsive based on their descriptions, does not meet the threshold to overcome that presumption.

Notably, in Plaintiff's Motion for Summary Judgement ("Pls.' Mot."), when discussing its reason for not challenging Defendant's Exemption 6 withholding, Plaintiff states, "In relying on Exemption 6 . . . the Government adequately explained the type of information withheld from disclosure, minimally and segregationally redacted such information, and provided Husch Blackwell with sufficient information to analyze its decision." Pls.' Mot. at 25 (ECF No. 22-1). Defendants note that this is exactly in line with what Defendants provided for all claimed exemptions, as Exemption 6 determinations are a part of the same *Vaughn* index as the other exemptions.

As further support, Defendants' *Vaughn* index was accompanied by a detailed declaration which the Court must "accord substantial weight" . . . regarding FOIA exemptions." *People for the Am. Way Found.*, 503 F.Supp.2d at 292 (citing 5 U.S.C. § 552(a)(4)(B)).

Accordingly, Defendant's *Vaughn* index presents presumptively responsive documents and sufficiently asserts Defendant's claimed exemptions over those documents.

## II.  <u>Defendants' Withholdings Pursuant to Exemption 3 Are Appropriate.</u>

Next, Plaintiff challenges Defendants' withholdings pursuant to FOIA Exemption 3. *See* Pls.' Opp'n at 6 (ECF No. 23). Plaintiff argues that Defendants' explanations regarding its Exemption 3 withholdings do not provide sufficient information to justify the exemption. *See* Pls.' Opp'n at 6-18 (ECF No. 23). Plaintiff is incorrect.

FOIA Exemption 3 exempts from disclosure information that is specifically exempted from disclosure by statute.  5 U.S.C. § 552 (b)(3). "The D.C. Circuit has explained that 'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; [but] the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" *Gannett Satellite Info. Network, LLC v. U.S. Dep't of Just.*, No. 22-CV-475 (BAH), 2023 WL 2682121, at *5 (D.D.C.

Mar. 29, 2023) (quoting *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007)). Defendants "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)).

Defendants withheld the Exemption 3 records "based on the Export Control Reform Act of 2018 [("ECRA"] found at 50 U.S.C. § 4820(h)(1)." Boucher Decl. ¶ 37 (ECF No. 21-1). ECRA requires that "information submitted or obtained in connection with an application for a license or other authorization to export, reexport . . .," pursuant to the statute be withheld "unless the release of such information is determined by the Secretary to be in the national interest." 50 U.S.C. § 4820(h)(1).  The Under Secretary for BIS, via delegated authority, *see* Defs.' Mot. at 14 (ECF No. 21), determined that the release of the withheld material, which had been collected pursuant to ECRA, "was not in the national interest," Boucher Decl. ¶ 14 (ECF No. 21-1).

In response, referring to Defendants' assertion of ECRA's confidentiality clause as "novel," Pl.'s Opp'n at 9 (ECF No. 23), Plaintiff takes issue with what it calls, Defendants' "expansive reading of the statutory term 'including,'" *id*. But Plaintiff fails to apprehend that information collected pursuant to ECRA is *presumptively* withheld, absent a release determination by the Secretary of Commerce. *See Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 433 (D.D.C. 2016) (Jackson, J.) (using ECRA's predecessor statute, as an example of Congress creating a "clear withholding mandate.").

Further, in addition to showing that ECRA is a statute contemplated by Exemption 3, Defendant described in detail how the withheld material fell within the scope of the statute. *See Gannett Satellite Info. Network, LLC*, 2023 WL 2682121, at *5; *see e.g.*, *Vaughn* index at Doc. 1 ("Internal email chain . . . regarding license review, license policies, and questions for the End Use

Review Committee (ERC)"), Doc. 4 ("Internal BIS email . . . regarding additions, edits and modifications to the Entity List"), Doc. 37 ("Email chain regarding additions to the Entity List"), Doc. 61 ("Email from ERC Chair . . . regarding discussing proposed additions to the Entity List"), Doc. 89 ("Internal BIS email . . . regarding questions related to the Unverified List and the Entity List.") (ECF No. 21-16). As noted, the withheld material was collected "pursuant to ECRA and [d]isclosure of this information would diminish BIS's ability to administer its export control program, in that release could reduce the government's ability to obtain information that it needs to properly evaluate companies for addition to, removal from, or modification of the Entity List." Boucher Decl. ¶ 38 (ECF No. 21-1). Once the Boucher Declaration shows the proper official made a determination that the records pursuant to ECRA are not releasable, the records "may be properly withheld under FOIA Exemption 3." *Houghton v. U.S. Dep't of State*, 875 F. Supp. 2d 22, 33 (D.D.C. 2012) (finding that an "uncontradicted, plausible" affidavit from the President's designee withholding records pursuant to a separate withholding statute is sufficient to prove the agency properly withheld records under Exemption 3); *see also Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 177 (D.D.C. 2016) (Summary judgment in favor of an agency "is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.") (citation and internal quotations omitted).

Plaintiff has not overcome the presumption that Defendants complied with their disclosure obligations. *See Sussman*, 494 F.3d at 1117. Accordingly, these confidential materials were properly withheld under Exemption 3.

## III. Defendants' Withholdings Pursuant to Exemption 5 Are Appropriate.

Plaintiff next challenges Defendants' withholdings pursuant to FOIA Exemption 5. Plaintiff does not contest Defendants' assertion of Exemption 5 over records protected by the attorney client privilege and the attorney work product privilege, thereby conceding that those records are properly withheld under those privileges. *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded"); *see also See Vaughn* index at Docs. 2,8,23,65,70-72,78-80,92,100 and 105 (ECF No. 21-16).

Instead, Plaintiff challenges Defendants' assertion of deliberative process privilege because (1) "only the final proposal submitted to the ERC" was requested and (2) "BIS's final Entity List decision . . . publicly adopts and relies upon . . . information considered by the ERC . . .." Pls.' Opp'n at 19-20 (ECF No. 23). Contrary to Plaintiff's assertions, Defendants properly applied the deliberative process privilege under Exemption 5 to withhold the affected records. *See Vaughn* index at Docs. 1-2, 4-8, 10-11, 23-24, 26, 29, 31, 35-36, 40, 42-43, 45, 49, 53, 63-65, 70-72, 78-80, 89, 92,100, and 105 (ECF No. 21-16).

The deliberative process privilege protects intra- or inter-agency documents that are "both pre-decisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021). A document is deemed "'pre-decisional' if it precedes, in temporal sequence, the 'decision' to which it relates.'" *Abtew v. Dep't of Homeland Sec*., 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Senate of P.R. v. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987)). And a record is deliberative if it "reflects the give-and-take of the consultative process." *Mountgordon v. Coast Guard*, Civ. A. No. 21-1319 (RDM), 2023 WL 5607454, at *4 (D.D.C. Aug. 30, 2023).

First, Plaintiff's claim that the deliberative process privilege does not apply because it requested "a copy of the final proposal" of the BIS Entity List decision, Pls.' Opp'n at 19 (ECF

No. 23), misses the mark. Upon receiving a FOIA request, agencies are obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Here, Defendants conducted an expansive search that was "targeted and thorough." Boucher Decl. ¶ 26 (ECF No. 21-1). Plaintiff's mentioning of the word "final" in its request does not remove the deliberative process privilege nature of the withheld documents. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021) (noting that it "is not always self-evident whether a document represents an agency's final decision").

Second, Plaintiff's claim that Defendants' deliberative process privilege was waived when BIS's Entity List decision stated publicly that the companies were added "based on information indicating that these companies present a risk of diversion to parties on the Entity List," Pls.' Opp'n at 21 (ECF No. 23), fairs no better. To support its claim, Plaintiff cites to *Electronic Frontier Foundation v. U.S. Dept. of Just.*, 739 F.3d 1, 11 (D.C. Cir. 2014), but that case actually hinders Plaintiff's assertion. In *Electronic Frontier*, 739 F.3d at 5, the plaintiff sought the release of an opinion drafted by the Department of Justice's Office of Legal Counsel ("OLC Opinion"), which had been publicly referenced in Congressional testimony by the FBI's then General Counsel. The D.C. Circuit ruled that the FBI's deliberative process privilege over the OLC Opinion was not waived because the FBI had not expressly adopted the OLC Opinion's reasoning. *See id*. at 11. Similarly, in this case, Plaintiff has not pointed to any expressed adoption of any specific final proposal submitted to the ERC. Instead, Plaintiff attempts to equate Defendants' note that the decision was "based on information" with an expressed adoption. However, "[s]uch [a] casual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda is not the express adoption or incorporation by reference which . . . would

remove the protection of Exemption 5." *Common Cause v. Internal Revenue Serv.*, 646 F.2d 656, 660 (D.C. Cir. 1981).

In addition, Defendants reiterate that the "[r]elease of the withheld information would result in foreseeable harm to [the] deliberative process by inhibiting candid internal discussions and the expression of recommendations and judgments by government officials when preparing the Entity List." Boucher Decl. ¶ 42 (ECF No. 21-1). This is especially true for records, such as these, that inform a list of entities that are of "significant risk of becoming involved in activities contrary to the national security or foreign policy interests of the United States." *Id*. ¶ 23. Accordingly, these confidential materials were properly withheld under Exemption 5.

**IV.** **Defendants' Withholdings Pursuant to Exemption 1 Are Appropriate.**

Finally, Plaintiff challenges Defendants' withholdings pursuant to FOIA Exemption 1. Plaintiff avers that Defendants do not "elaborate in any detail on why the disclosure of the information would be a threat to national security." Pls.' Opp'n at 24 (ECF No. 23). Contrary to Plaintiff's assertion, Defendants have provided sufficient information, without putting national security at risk, to support its Exemption 1 withholding. *See* Defs.' Mot. at 11 (ECF No. 21) ("BIS determined, in conjunction with a non-attribution agency . . . that the document in question met the requirements set forth under Executive Order 13526, an Executive Order that establishes various levels of classification of information based on its level of potential damage to national security.")

Exemption 1 shields from release, information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The D.C. Circuit has "consistently deferred to executive affidavits predicting harm to national security, and ha[s] found it unwise to undertake searching judicial review." *ACLU v. Dep't*

*of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011) (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C.Cir.2003)).

In this instance, Defendants explained that the information "received from the original classifying agency is classified at the Top Secret level." Boucher Decl. ¶ 34 (ECF No. 21-1); *see Judicial Watch v. U.S. Dep't of Just.*, 616 F. Supp. 3d 13, 23 (D.D.C. 2022) (government "affidavits and declarations are entitled to substantial deference given the 'uniquely executive' nature of the national security determinations at stake."). In addition, Defendants described the document in its *Vaughn* index with enough detail to show the withheld record is subject to protection under Exemption 1 but the information would not cause "grave damage to the national security." *Vaughn* index at Doc. No. 121 ("Classified document from non-attribution agency related to adding entities to the Entity List and providing supporting information for the addition to the Entity List.") (ECF No. 21-16). Accordingly, these confidential materials were properly withheld under Exemption 1.

## V. *In Camera* Review is Not Warranted.

Though the decision of whether to conduct an *in camera* review of withheld records is "committed to the broad discretion of the trial court judge, . . . a district court need not and should not "resort[ ]" to *in camera* review as a matter of course. *Quiñon v. FBI*, 86 F.3d 1222, 1227-28 (D.C. Cir. 1996) (internal quotation marks omitted).

In this instance, Defendants have provided a detailed *Vaughn* index describing each document and the exemption that covers it, as well as sworn affidavits which sufficiently demonstrate that Defendants have met their FOIA obligations. *See Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (quoting *Johnson v. Executive Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C.Cir.2002) ("The combination of the *Vaughn* index and the affidavits ... are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be

further segregated."). Here, an "*in camera* review is neither necessary nor appropriate." *Larson*, 565 F.3d at 870 (quoting *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)). Indeed, [t]here is always a risk that information could be disclosed—intentionally or unintentionally—by someone or by some process involved." *Judicial Watch.*, 616 F. Supp. 3d at 25 n.7. "Also of significance is that other would-be leakers may be incrementally more comfortable disclosing information whenever there are incrementally more potential sources of the leaks." *Id.* "Particularly when dealing with matters the government contends are highly sensitive, courts must carefully consider whether to conduct in camera review and do so only when it would add value." *Id.*

\*   \*   \*

## CONCLUSION

For these reasons, Defendants request that the Court deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

Dated: July 14, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ Derrick A. Petit_____
    Derrick A. Petit, D.C. Bar 144466
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    Derrick.Petit@usdoj.gov
    (202) 252-7269

    *Attorneys for the United States of America*