UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUSCH BLACKWELL LLP, | ) ) Civil Action No. 1:24-cv-02733 |
| Plaintiff, | ) (JDB) ) |
| v. | ) **SUPPLEMENTAL BRIEF IN** ) **SUPPORT OF PLAINTIFF'S** |
| DEPARTMENT OF COMMERCE, et al., | ) **MOTION FOR SUMMARY** ) **JUDGMENT** |
| Defendants. | ) ) **[ORAL ARGUMENT** ) **REQUESTED]** |

## ARGUMENT

"Congress enacted FOIA to permit citizens to discover what their government is up to." *Heartland All. for Hum. Needs & Hum. Rts. v. United States Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 108 (D.D.C. 2019) (citation omitted). Two years ago, Husch Blackwell submitted two narrow FOIA requests seeking a single, specific record: "[A] copy of the final proposal and any accompanying attachments, exhibits, or appendices that were submitted to the End-User Review Committee ('ERC') in support of the decision to place [YMTC or YMTJ] on the BIS Entity List." *See* ECF No. 1-1. These narrow requests sought the basis for the Government's decision to place YMTC and YMTJ on the Entity List.

Based on the Government's sprawling *Vaughn* index—finally produced during summary-judgment briefing—Husch Blackwell made an educated assessment about which of the 121 documents listed were likely responsive to its FOIA requests and are still in dispute. Specifically, Husch Blackwell identified documents that (1) were likely responsive to its requests, (2) were not protected communications, and (3) were not withheld under Exemption 5. Those documents are identified in Husch Blackwell's recently filed status report. *See* ECF No. 30.

Still, despite Husch Blackwell's educated assessment, the Government's overinclusive but underinformative *Vaughn* index has made it impossible to know *exactly* which documents are the documents Husch Blackwell requested. The Government has never confirmed as much. *In camera* review by this Court is thus necessary.

At least one—and maybe all—the documents still in dispute should contain the basis for the Government's decision to place YMTC and YMTJ on the Entity List. Shining sunlight on the requested documents is necessary for Husch Blackwell "to discover what [its] government is up to." *Heartland All.*, 406 F. Supp. 3d at 108. Understanding why the Government has placed a foreign company on the List matters for that foreign company, for other foreign companies placed

on the List, for foreign companies that want to stay off the List, for domestic individuals and companies who want to do business with those foreign companies, and for the public at large.

Indeed, the Entity List is one of the most powerful tools in the Government's arsenal, forming the basis of, for example, the current expansive restrictions on foreign semiconductor manufacturers. *See Additions to the Entity List*, 90 Fed. Reg. 14046 (Mar. 28, 2025); 15 C.F.R. Part 744. Companies placed on the Entity List face legal restrictions and practical stigma and are effectively blacklisted from doing business with U.S. companies. When companies are added to the List, those additions are "likely to disrupt supply chains," "make[ ] it more difficult for companies to determine whether exports to a customer or supplier are restricted," and "place[ ] more of a burden on the [domestic] exporter to figure out ownership [of foreign entities] before moving forward." Karen Freifeld, *US Expands Export Blacklist in Crackdown on Chinese Subsidiaries*, Reuters (Sept. 9, 2025), https://bit.ly/4h540eU. Because "transactions of any nature with listed entities carries a Red Flag," the Bureau of Industry and Security has advised that "U.S. companies [should] proceed with caution with respect to such transactions." BIS, *Entity List FAQs* (updated Sept. 29, 2025), https://bit.ly/46P1moI. At minimum, domestic companies must conduct additional due diligence, at substantial cost, before doing business with a company on the Entity List. Beyond strict legal compliance, doing business with parties on the Entity List carries reputational and business risk. All told, the public should be entitled to know the caliber of information that the Government relies on to make such economically consequential decisions that affect the entire global tech industry and its consumers. *See* James Pomfret & David Kirton, *U.S. Blacklist on China is Riddled with Errors, Outdated Details*, Reuters (May 2, 2025), https://bit.ly/4dpsrBW.

Of the documents still in dispute as identified in Husch Blackwell's status report [ECF No. 30], the vast majority were withheld only under Exemption 3 and the Export Control Reform Act of 2018 (ECRA). As Husch Blackwell explained in its reply in support of its motion for summary judgment [ECF No. 27 at 3–4] and elsewhere, the Government does not meaningfully dispute Husch Blackwell's interpretation of ECRA:

- The Government does not dispute that ECRA, 50 U.S.C. § 4820(h)(1)(B), envisions a two-part test before it covers any particular information. *See also* ECF No. 22-1 at 16; ECF No. 23 at 10.

- The Government does not dispute Husch Blackwell's interpretation of the term "including" in § 4820(h)(1)(B)—or Husch Blackwell's argument that "including" must be narrowly construed in a FOIA case. *See also* ECF No. 22-1 at 18–19; ECF No. 23 at 12–14.

- The Government does not dispute that, under Circuit precedent, there is no concern in this case about "extreme security measures" or similar national security implications that would justify the Government's expansive reading of ECRA. *See also* ECF No. 22-1 at 20–21; ECF No. 23 at 14–15.

- The Government does not dispute that, if the Court were to agree with its interpretation of ECRA, then the Government could shield from disclosure *everything that BIS does*. *See also* ECF No. 22-1 at 21–22; ECF No. 23 at 15–16.

Because the Government did not dispute these arguments, they are conceded. *See Wonders v. Dep't of the Army Off. of Gen. Couns.*, 749 F. Supp. 3d 122, 131 (D.D.C. 2024), *aff'd*, 2025 WL 717386 (D.C. Cir. Feb. 28, 2025).

Despite numerous opportunities, the Government has not provided a specific and non-conclusory justification for its withholdings under Exemption 3 *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("FOIA places the burden of justifying nondisclosure on the agency seeking to withhold information[.]"). Plus, the Government has produced the same kind of documents requested here in other litigation. *See* ECF No. 27 at 6–7. In short, the Government offers no sound basis for withholding responsive documents based on Exemption 3.

In addition, one of the documents still in dispute was withheld under Exemption 1. *See* ECF No. 30. But just like with Exemption 3, the Government's Exemption 1 argument also lacks merit. *See* ECF No. 22-1 at 25–26; ECF No. 23 at 24. Exemption 1 protects classified national security information. The Government has not provided sufficient evidence to justify the classification of the disputed documents. The lack of detailed affidavits or declarations from knowledgeable officials undermines the Government's claim that disclosure would harm national security. And the Government's blanket assertion of national security concerns without specific justification fails to meet the burden of proof required under FOIA.

In sum, to fulfill "FOIA's purpose" to "provide transparency to the public about the operations of government," the Court should grant Husch Blackwell's motion for summary judgment, conduct *in camera* review, and order the Government to disclose responsive documents. *Washington Lawyers' Comm. for C.R. & Urb. Affs. v. United States Dep't of Just.*, 145 F.4th 63, 71 (D.C. Cir. 2025); *see also see also 100Reporters LLC v. United States Dep't of Just.*, 248 F. Supp. 3d 115, 166 (D.D.C. 2017) (explaining that courts have "'broad discretion' to decide whether *in camera* review is necessary to determine whether the government has met its burden").

4

## CONCLUSION

The Court should grant Husch Blackwell's motion for summary judgment and deny the Government's motion for summary judgment.

In addition, the Court should order the Government to produce all documents listed in Husch Blackwell's status report [ECF No. 30] to the Court, after which the Court should review all documents *in camera*—both for responsiveness and for exemptions. The Court should reject the Government's claimed exemptions over responsive documents and order the Government to produce those responsive documents in full.

**Husch Blackwell requests oral argument.**

DATED this October 10, 2025.

Respectfully submitted,

By: */s/ Joseph S. Diedrich*
Steven A. Neeley (D.C. Bar No. 998792)
Joseph S. Diedrich, *pro hac vice*
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue NW, Suite 1000
Washington, DC  20006
Telephone: (202) 378-2331
Facsimile: (202) 378-2319
steve.neeley@huschblackwell.com
joseph.diedrich@huschblackwell.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment was served on Defendant via CM/ECF, per LCvR 5.4(d)(1), this 10th day of October 2025 to the following:

>Jeanine Ferris Pirro
>United States Attorney
>
>Brian P. Hudak
>Chief, Civil Division
>
>Derrick A. Petit
>Assistant United States Attorney
>
>601 D Street, NW
>Washington, DC 20530
>(202) 252-2550
>
>*Attorneys for the United States of America*

>>/s/ Joseph S. Diedrich
>>Joseph S. Diedrich