# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HUSCH BLACKWELL LLP,
    Plaintiff,

    v.

DEPARTMENT OF COMMERCE, *et al.*
    Defendants.

Civil Action No. 24-2733 (JDB)

## MEMORANDUM OPINION

This is a Freedom of Information Act (FOIA) dispute over records relating to the addition of two foreign corporations to the Bureau of Industry and Security's (BIS) export restrictions list. Husch Blackwell seeks the final proposal to list the two entities at issue but BIS has withheld the responsive documents under FOIA's national security and statutory exemptions.

Because BIS has failed so far to demonstrate that the withheld records fall within each exemption, the Court denies its motion for summary judgment. But because BIS may yet be able to correct that failure by submitting supplemental declarations with more specificity as to why each exemption applies, the Court also denies Husch Blackwell's motion for summary judgment.

## Background

Under the Export Control Reform Act of 2018, Pub. L. No. 115-232, 132 Stat. 2208 (codified at 50 U.S.C. §§ 4801–4852) (ECRA), the President must "control" and "regulate the export, reexport, and in-country transfer" of sensitive items. 50 U.S.C. §§ 4811, 4812(a)(1), (b)(1). To carry out that duty on behalf of the President, the Secretary of Commerce must establish and maintain a list of foreign persons determined to be a national security or foreign policy threat and restrict exports to such persons. Id. § 4813(a)(2), (4). BIS—an agency within the Department of

Commerce—therefore maintains an "Entity List" as part of Commerce's broader Export Administration Regulations (EARs).  See Additions and Revisions to the Entity List and Conforming Removal from the Unverified List, 87 Fed. Reg. 77,505, 77,505 (Dec. 19, 2022) (Entity List Changes); 15 C.F.R. § 744.16.

Entities are included on the list if there is "reasonable cause to believe, based on specific and articulable facts, that the entities have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to the national security or foreign policy interests of the United States."  Entity List Changes, 87 Fed. Reg. at 77,505.  The End-User Review Committee (ERC), which Commerce chairs and which includes representatives from the Departments of State, Defense, Energy and, where appropriate, Treasury, makes decisions about changes to the list.  Id. at 77,506.  Exports to listed entities are restricted.  Id.; see also Fed. Express Corp. v. Dep't of Commerce, 39 F.4th 756, 760 (D.C. Cir. 2022).  If an ERC agency disagrees with the outcome of the vote, that agency may escalate the issue to the Advisory Committee on Export Policies (ACEP).  See Decl. of Stephanie M. Boucher ¶ 23 ("Boucher Decl."), Dkt. 21-1; Exec. Order 12,981 § 5 (Dec. 5, 1995); Suppl. No. 5 to 15 C.F.R. Part 744 (2025).

Subject to two exemptions at issue here, FOIA requires government agencies to make records available on request.  See 5 U.S.C. § 552(a)(3), (b)(1), (b)(3).  Exemption 1 shields from disclosure information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "in fact properly classified pursuant to such Executive order."  Id. § 552(b)(1).  Exemption 3 generally covers information "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  Id.

§ 552(b)(3)(A).  A statute enacted after the OPEN FOIA Act of 2009, Pub. L. No. 111–83, 123 Stat. 2142, must also specifically cite to exemption 3.  Id. § 552(b)(3)(B).

In September 2023, Husch Blackwell—a Wisconsin-registered partnership based principally in Missouri—submitted two FOIA requests to BIS and ten requests to the Departments of Commerce, State, Defense, Energy, and Treasury about BIS's decision to list Yangtze Memory Technologies Corporation (YMTC) and Yangtze Memory Technologies Corporation (Japan) (YMTJ).  Compl. ¶¶ 1, 3, 15-17, Dkt. 1.  These requests sought "the final proposal and any accompanying attachments, exhibits, or appendices" submitted to the ERC in support of its decision to list YMTC and YMTJ.  Id. ¶¶ 15-17.  When listing YMTC and YMTJ, BIS explained that the ERC had determined that they posed a "risk of diversion" to listed entities, including Huawei Technologies Co., Ltd. and Hangzhou Hikvision Digital Technology Co., Ltd.  Entity List Changes, 87 Fed. Reg. at 77,506.

The Departments of Commerce, Energy, State, and Treasury forwarded their FOIA requests to BIS and the Department of Defense did not respond.  Compl. ¶ 19.  BIS identified 553 pages of responsive documents but initially withheld the records in full, citing FOIA exemptions 1, 3, 5, and 6.  Id. ¶ 21.[1]  Husch Blackwell timely submitted an administrative appeal of BIS's withholding decision and did not timely receive a decision on that appeal, thereby exhausting administrative remedies.  Compl. ¶ 22-25; see also 5 U.S.C. § 552(a)(6)(A), (C) (setting out administrative appeal and exhaustion requirements).  Husch Blackwell then sued Commerce and

---

[1] Husch Blackwell does not challenge the withholdings under exemption 6, which covers personnel, medical, or similar files the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy."  Mem. in Supp. of Pl.'s Mot. for Summ. J. 25, Dkt. 22-1 (quoting 5 U.S.C. § 552(b)(6)).

Following the Court's order to clarify which documents remain in dispute, Husch Blackwell withdrew its challenge to documents withheld under exemption 5, Pl.'s Status Report 3, Dkt. 30, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5).

BIS in this Court, seeking an injunction ordering disclosure of the responsive records as well as attorney's fees and costs.  Compl. at 1, 7; see also 5 U.S.C. § 552(a)(4)(B).

While this case has been pending, BIS made two interim releases of documents disclosed in part or in full, partially granted and partially denied Husch Blackwell's administrative appeal, and made a final determination on disclosure.  Boucher Decl. ¶ 12-13, 15.  In the first release, BIS disclosed 10 pages in full and 124 pages in part, withheld 383 pages in full, and determined that 29 pages were not actually responsive.  Id.  In the second release, BIS disclosed seven pages it had sent for interagency review and 55 pages inadvertently omitted from the first disclosure.  Id.  Under exemption 3, the Under Secretary for BIS also issued a national interest determination (NID) that release of the withheld information was not in the national interest.  Id. ¶ 14 (citing ECRA § 1761(h)(1) (codified at 50 U.S.C. § 4820(h)(1))); see also Final Determination Letter 5, Dkt. 21-15.[2]  The parties have now fully briefed cross-motions for summary judgment.

## Discussion

Under FOIA, government agencies must make records available on request.  5 U.S.C. § 552(a)(3).  To do so, agencies must conduct an adequate search for responsive records.  See Watkins L. & Advoc., PLLC v. DOJ, 78 F.4th 436, 442 (D.C. Cir. 2023).[3]  Upon finding such records, agencies may withhold information that falls within one of nine exemptions.  5 U.S.C. § 552(b).  "Those 'limited exemptions do not obscure the basic policy [of] disclosure, not secrecy . . . .'"  Human Rights Def. Ctr. v. U.S. Park Police, 126 F.4th 708, 712-13 (D.C. Cir. 2025) (HRDC) (quotation omitted).  "This 'strong presumption in favor of disclosure places the burden

---

[2] The Under Secretary is delegated the authority to make such determinations as head of BIS.  See Department Organization Order 10-16 (Apr. 12, 2022).

[3] Husch Blackwell does not challenge the adequacy of BIS's search.  See Defs.' Mem. in Reply in Supp. of Mot. for Summ. J. 2, Dkt. 28.

on the agency to justify the withholding of any requested documents.'"  Id. at 713 (quotation omitted); see also Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011) ("These exemptions . . . must be 'narrowly construed.'" (quotation omitted)).  Courts review withholdings de novo and may examine agency records in camera to determine whether they are properly withheld under an exemption.  5 U.S.C. § 552(a)(4)(B).

Additionally, any "reasonably segregable portion" of a record shall be provided to the requestor "after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Courts must make "specific findings of segregability" before approving the application of a FOIA exemption.  Sussman v. U.S. Marshalls Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).  An agency is "entitled to a presumption that it complied with the obligation to disclose reasonably segregable material" and to overcome that presumption a requestor must provide "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation."  Rudometkin v. United States, 140 F.4th 480, 494 (D.C. Cir. 2025) (quotations omitted).

Under the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), an agency must disclose even information covered by an exemption "unless it reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."  HRDC, 126 F.4th at 714 (quoting 5 U.S.C. § 552(a)(8)(A)(i)).  Moreover, the FOIA Improvement Act reiterates that an agency must "consider whether partial disclosure of information is possible" if full disclosure is not and take "reasonable steps" to "segregate and release nonexempt information."  Leopold v. DOJ, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C.

§ 552(a)(8)(A)(ii)). However, the FOIA Improvement Act's additional disclosure requirements—including as to segregation—do not apply to exemption 3. 5 U.S.C. § 552(a)(8)(B).[4]

To carry its FOIA burden, an agency must proffer a Vaughn index (1) "contained in one document," (2) "adequately describ[ing] each withheld document or deletion from a released document," and (3) stating "the exemption claimed for each deletion or withheld document[] and . . . why the exemption is relevant." Founding Church of Scientology, Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979) (Scientology I). The explanation "must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt" but "need not be so detailed as to reveal that which the agency wishes to conceal." Id. at 949. Agencies may also establish an exemption's applicability by declaration, and courts afford such declarations "substantial weight." Judicial Watch, Inc. v. DOD, 715 F.3d 937, 940-41 (D.C. Cir. 2013).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the FOIA context, summary judgment is warranted when the Vaughn index and declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are

---

[4] Courts have continued to analyze segregability of exemption 3 records under FOIA subsection (b)'s general requirement as to segregation without considering the impact of the FOIA Improvement Act. See 5 U.S.C. § 552(a)(8); Magassa v. TSA, 2025 WL 561296, at *7 (D.D.C. Feb. 20, 2025); Khatchadourian v. Def. Intel. Agency, 453 F. Supp. 3d 54, 89-90 (D.D.C. 2020); Ctr. for Investigative Reporting v. CBP, 436 F. Supp. 3d 90, 114-15 (D.D.C. 2019); Liounis v. Krebs, 2019 WL 7176453, at *1 (D.C. Cir. 2019) (per curiam). That may be simply because the issue was not briefed. But under the "last-in-time" rule, generally the "more recent legal pronouncement controls." Owner-Operator Indep. Drivers Ass'n v. DOT, 724 F.3d 230, 233 (D.C. Cir. 2013). And a "specific provision" typically controls one "of more general application." Bloate v. United States, 559 U.S. 196, 207 (2010) (quotation omitted). Here, paragraph (a)(8) is both later in time and more specific as to exemption 3. This different treatment regarding segregability also makes sense for exemption 3, which "differs from the other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents." Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quotation omitted). Instead, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Id. (quotation omitted). Thus, there is no segregation requirement for records properly withheld under exemption 3.

not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quotation omitted).  An agency's FOIA exemption justification is sufficient if it appears "logical or plausible."  Id. (citation modified).

## I.    Exemption 1

Exemption 1 protects from disclosure information that is properly classified in the interest of national security pursuant to executive order.  See 5 U.S.C. § 552(b)(1).  This Circuit has "consistently deferred to executive affidavits predicting harm to national security" under exemption 1 and "found it unwise to undertake searching judicial review."  ACLU v. DOD, 628 F.3d 612, 624 (D.C. Cir. 2011).  However, even in the national security context a declaration will not suffice if it "contains merely a categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure" or "if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  Campbell v. DOJ, 164 F.3d 20, 30 (D.C. Cir. 1998) (quotation omitted); see also Larson, 565 F.3d at 863 (affirming withholding of classified information under exemption 1 where the "agency described with reasonably specific detail the reason for nondisclosure: the importance for continuing intelligence operations of keeping intelligence sources and methods classified and confidential"); ACLU, 628 F.3d at 624 (affirming withholding of classified information where the agency "identified five reasons" why disclosure may harm national security).

BIS withheld one classified document "related to adding entities to the Entity List and providing supporting information."  Vaughn Index [ECF 21-16], Doc. No. 121.[5]  BIS asserted that

---

[5] A Vaughn index provides "descriptions of withheld documents," which gives "the court and the challenging party a measure of access without exposing the withheld information."  Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006); see also Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

the information is classified at the Top-Secret level, so its release would cause "grave damage" to national security.  Id.; see also Boucher Decl. ¶¶ 32-35; Exec. Order No. 13,526 §§ 1.1, 1.2, 75 Fed. Reg. 707, 707-08 (Jan. 5, 2010) (providing standards for classification).  BIS also declared that its personnel worked with the classifying agency to ensure that the information met the executive order's requirements.  Boucher Decl. ¶ 35.

Husch Blackwell argues that BIS's explanation as to why it has withheld information under exemption 1 is insufficient because it has not provided the names of relevant officials or agencies or explained why disclosing the information would threaten national security.  Mem. in Opp'n to Defs.' Mot. for Summ. J. 24 [ECF 23] (Pl.'s Opp'n).  BIS points out in response that FOIA declarations are entitled to deference, especially in the national security context.  Defs.' Mem. in Reply in Supp. of Mot. for Summ. J. 10 [ECF 28] (Defs.' Reply).  True enough.  However, the issue is not whether the information is classified, which is undisputed.  Instead, it is whether the information is "properly classified," which requires the agency to "establish that public disclosure of the withheld information will harm national security."  ACLU, 628 F.3d at 624.

The declaration and Vaughn index simply recite the statutory standard that the information is classified and its release would cause grave damage to national security.  Vaughn Index, Doc. No. 121; Boucher Decl. ¶¶ 32-35.  That is not enough.  See Campbell, 164 F.3d at 30.  Although the agency need not reveal the substance of what it wishes to conceal, Scientology I, 603 F.2d at 949, it must provide at least some reason for nondisclosure beyond the mere recitation of damage from the release of classified information.  It has not done so here.  Hence, the government has not yet carried its burden as to exemption 1, although it may be able to do so by providing a more specific declaration explaining the national security risks from disclosure.

## II.        Exemption 3

Exemption 3 shields documents that another statute specifically exempts from disclosure, provided that the other statute (i) requires withholding "in such a manner as to leave no discretion" or (ii) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The other statute must also specifically cite to exemption 3 if enacted after the Open FOIA Act of 2009.  Id. § 552(b)(3)(B).  Courts accordingly engage in a two-step inquiry as to, first, whether the other statute is an exemption 3 withholding statute and, second, whether the withheld records fall within the statute's coverage.  Newport Aeronautical Sales v. Dep't of Air Force, 684 F.3d 160, 165 (D.C. Cir. 2012) (citing Larson, 565 F.3d at 865).  However, 5 U.S.C. § 552(b)(3)(A)(ii) is still intended to assure that Congress decides the boundary of "governmental secrecy," Founding Church of Scientology, Inc. v. NSA, 610 F.2d 824, 827 (D.C. Cir. 1979) (Scientology II) (quotation omitted), so "courts must be particularly careful" when exemptions are claimed based on "expansive terms," id. at 829 (quotation omitted).

ECRA provides that certain information "shall be withheld from public disclosure and shall not be subject to disclosure under [exemption 3]," unless release is "determined by the Secretary to be in the national interest."  50 U.S.C. § 4820(h)(1)(A).  This default withholding covers "information submitted or obtained in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, an enforcement activity, or other operations under [ECRA]."  Id. § 4820(h)(1)(B).  Protected information includes (1) licenses or license applications, (2) classification or advisory opinions, (3) license determinations and "any information pertaining

thereto," (4) information or evidence from an investigation, and (5) information obtained or given in connection with an international agreement.  Id. § 4820(h)(1)(B)(i)-(v).[6]

Because ECRA specifically cites to exemption 3 and refers to particular types of matters to be withheld, it is an exemption 3 withholding statute.  See Wis. Project on Nuclear Arms Control v. Dep't of Com., 317 F.3d 275, 281 (D.C. Cir. 2003) (holding that nondisclosure provision in predecessor statute was exemption 3 statute); CIA v. Sims, 471 U.S. 159, 164 (1985) (holding that statute entrusting CIA Director to protect "intelligence sources and methods" was exemption 3 withholding statute because it referred to particular types of matters).  And the Under Secretary of Commerce has determined that release of documents withheld under exemption 3 was not in the national interest.  Boucher Decl. ¶ 14; Final Determination Letter 5.[7]

Husch Blackwell does not dispute the national security determination.  Instead, it argues that BIS takes too expansive a view of the scope of protected documents under ECRA and contends

---

[6] In full, subclause (B) states:

Information described in this subparagraph is information submitted or obtained in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, an enforcement activity, or other operations under this subchapter, including—

(i) the license application, license, or other authorization itself;

(ii) classification or advisory opinion requests, and the response thereto;

(iii) license determinations, and information pertaining thereto;

(iv) information or evidence obtained in the course of any investigation; and

(v) information obtained or furnished in connection with any international agreement, treaty, or other obligation.  50 U.S.C. § 4820(h)(1)(B).

[7] BIS further explains that disclosure of the withheld records could "reduce the government's ability to obtain information" needed to properly maintain the Entity List, thereby diminishing the government's ability to administer export controls.  Boucher Decl. ¶ 38.  The FOIA Improvement Act provides that agencies may withhold information only if the agency reasonably foresees that disclosure would harm a subsection (b) exemption interest or the disclosure is prohibited by law, and further provides that agencies must nevertheless consider whether partial disclosure is possible and take reasonable steps to segregate and release non-exempt information.  5 U.S.C. § 552(a)(8)(A).  But these requirements do not apply to exemption 3.  Id. § 552(a)(8)(B).  Thus, there is no need to conduct a harm analysis for records that properly fall within exemption 3.  5 U.S.C. § 552(a)(8); see also, e.g., James Madison Project v. ODNI, 725 F. Supp. 3d 81, 90 n.6 (D.D.C. 2024); Lantry v. Kendall, 2024 WL 1366788, at *7 (D.D.C. Mar. 31, 2024).

that the documents it seeks are not covered.  Pl.'s Mem. Supp. Mot. Summ. J. 15-22 (Pl.'s Summ. J. Mot.), Dkt. 22-1.

The documents withheld under exemption 3 here are memoranda about adding companies to the Entity List, mostly prepared for the ERC or ACEP.  See Pl.'s Status Report.  In denying Husch Blackwell's administrative appeal, BIS asserted that the withheld information was "submitted or obtained in connection with" the "operations" of the ERC regarding Entity List changes or was "derived from or directly related to" such information.  Admin. Appeal Decision 3, Dkt. 22-15 (citing 50 U.S.C. § 4820(h)(1)(B)).  BIS also reasoned that the document types listed in clauses (i)-(v) are illustrative rather than exhaustive because they are introduced with the word "including."  Id.  (citing Fed. Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 100 (1941)); see also Samantar v. Yousef, 560 U.S. 305, 317 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive.")  Husch Blackwell challenges each assertion.  Pl.'s Summ. J. Mot. 16-17.

Looking first at the term "other operations," whether documents fall within the scope of that residual clause requires "reviewing text in context," including by applying canons of construction.  See Fischer v. United States, 603 U.S. 480, 486 (2024) (quotation omitted).  Starting with the text, "operation" most plausibly refers here to "the activities of an organization" or a "set of activities planned for a specific objective."  Operation, Black's Law Dictionary (12th ed. 2024) (senses 2 and 3).  This makes sense in context because the preceding terms refer to "other activities" and "an enforcement activity."  50 U.S.C. § 4820(h)(1)(B).  Next, under the canon of noscitur a sociis "a word is 'given more precise content by the neighboring words with which it is associated.'"  Fischer, 603 U.S. at 487 (quotation omitted).  And the canon of ejusdem generis teaches that "a general or collective term at the end of a list of specified items is typically controlled

and defined by reference to the specific classes that precede it." Id. (citation modified). In Fischer, the Court analyzed a sentence consisting "of many specific examples" that was "followed immediately by a residual clause." Id. at 489-90. Following the "familiar" approach to such statutes, the court "limit[ed] the broad language in light of narrower terms that precede it," id. at 490 (quotation omitted), confirming that interpretation by reference to the statutory history and context as well as the consequences of a contrary reading, id. at 491-98.

Looking second at the list preceded by the term "including," this Circuit has recently reiterated that prefacing a list with the word "includes" generally makes it "illustrative." United States v. Brock, 94 F.4th 39, 57 (D.C. Cir. 2024) (citing Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 162 (2012) ("Introducing a definition with the verb 'includes' instead of 'means' makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive." (citation modified))). Nevertheless, "unlisted" types of information "must fit that same mold." Id. Indeed, Husch Blackwell concedes that "including" usually introduces a non-exhaustive list before advancing the threadbare argument that it is ambiguous here because "including" is often "misused" to mean "consists of." Pl.'s Summ. J. Mot. 18.

Here, the general or residual term—"other operations"—is preceded by more specific terms and followed by a list of five examples. 50 U.S.C. § 4820(h)(1)(B). Under Fischer and Brock, the default interpretation is that "other operations" must be similar to the preceding "activities" but that the ensuing list—prefaced by "includes"—is non-exclusive. This makes sense in light of the statutory history and context. ECRA is the "latest version" of the federal government's longstanding efforts "to prevent exports from the United States that could assist the Nation's enemies." Fed. Express Corp. v. Dep't of Com., 39 F.4th 756, 760 (D.C. Cir. 2022). And ECRA states that it is U.S. policy to use export controls to the extent necessary to restrict exports

in light of U.S. national security and foreign policy goals.  50 U.S.C. § 4811(1).  Those sensitive

issues indicate a need for some caution about disclosure.  Conversely, ECRA also states that the

"export control system must ensure that it is <u>transparent</u>, predictable, and timely . . . ."  <u>Id.</u>

§ 4811(8) (emphasis added).  That demonstrates that Congress did not wish to give carte blanche

to BIS to conceal all activities under ECRA.  Indeed, Commerce asked Congress to exempt from

disclosure "all information" submitted under a predecessor statute to ECRA and Congress

declined, exempting instead only "export data."  <u>See</u> <u>Wis. Project on Nuclear Arms Control</u>, 317

F.3d at 379-80.

      This reading also comports with prior cases interpreting other exemption 3 statutes,

including in a context that implicates national security.  To support its position, Husch Blackwell

points to <u>National Security Counselors v. CIA</u>, 960 F. Supp. 2d 101, 176 (D.D.C. 2013), <u>aff'd on</u>

<u>other grounds</u>, 969 F.3d 406 (D.C. Cir. 2020).  Pl.'s Summ. J. Mot. 19.  There, the court considered

the scope for exemption 3 purposes of a statute that shielded the CIA from disclosing "the

organization or functions of the Agency, or of the names, official titles, salaries, or numbers of

personnel employed by the Agency."  50 U.S.C. § 3507 (formerly 50 U.S.C. § 403(g)).[8]  The court

rejected the notion that the CIA could exempt from disclosure any information about the CIA's

organization or functions generally, reasoning that precedent and the context of the relevant statute

limited withholding to "specific categories of personnel-related information."  <u>Nat'l Sec.</u>

<u>Counselors</u>, 960 F. Supp. 2d at 174-80.  It also contrasted the CIA Act at issue there with the NSA

Act, which shielded "the disclosure of the organization or any function of the NSA or any

information with respect to the activities thereof," highlighting the broader language of "activities"

---

[8] Notably, the CIA in <u>National Security Counselors</u> did not also invoke § 403-1(i)(1) (now 50 U.S.C.
§ 3024(i)(1), <u>see</u> 960 F. Supp. 2d at 175, which protects "intelligence sources and methods" and which this Circuit
has broadly interpreted to cover material that "relates to" such methods, <u>Larson</u>, 565 F.3d at 865.

and lack of the narrowing term "personnel."  Id. at 177 (citing Hayden v. NSA, 608 F.2d 1381, 1389-90 (D.C. Cir. 1979)); cf. Khatchadourian v. Def. Intel. Agency, 453 F. Supp. 3d 54, 85-86 (D.D.C. 2020) (interpreting the scope of provision protecting from disclosure "any function" of DIA as shielding "policies" but not "underlying activities").

Here, ECRA contains both the relatively broad language of "operations," synonymous here with "activities," but also the more detailed preceding and succeeding lists of information types, as in National Security Counselors.  Moreover, Congress has stated a policy goal of transparency in ECRA, unlike the NSA Act at issue in Hayden.  Applying the default canons of statutory interpretation and adhering to the requirement that FOIA exemptions should be narrowly construed, the best reading of 50 U.S.C. § 4820(h)(1)(B) is that the lists of information types to be presumptively withheld are not exhaustive but the information must be submitted or obtained in connection with an operation or activity similar to the enumerated list.

Applying that interpretation of ECRA to the facts here, BIS has not done enough.  BIS simply states that the documents that Husch Blackwell seeks from the Vaughn index are memoranda submitted to the ERC or ACEP regarding additions to the Entity List.  See Pl.'s Opp'n 7-8.  That does not provide the Court with a sufficient basis to determine whether the withheld records fall under the scope of 50 U.S.C. § 4820(h)(1)(B).  See Khatchadourian, 453 F. Supp. 3d at 86 n.5, 87 (noting that DIA withheld most responsive documents simply on the basis of revealing agency "functions" and ordering FOIA defendants to "supplement the record to further explain the basis of their withholdings"); Hayden, 608 F.2d at 1390-91 (contrasting detailed affidavits there with those rejected in Scientology II where NSA had simply said that requested records were "obtained through 'lawful signals intelligence activities,' and that disclosure would 'reveal certain functions and activities of the NSA'").  Without more information, this Court cannot discern

whether the withheld memoranda include "information submitted or obtained in connection with" ECRA "operations" similar to the preceding categories of activities or ensuing list of examples. 50 U.S.C. § 4820(h)(1)(B).[9]

Because it remains unclear whether the exemption 3 withholdings were proper, the Court will deny summary judgment to both parties on this issue but also deny in-camera review at this stage. BIS must provide further detail as to the applicability of exemption 3; failure to do so may warrant exercise of the Court's "broad discretion" to conduct in-camera review. ACLU, 628 F.3d at 626 (quotation omitted).

## CONCLUSION

For the foregoing reasons, the Court will deny each party's motion for summary judgment and deny in-camera review at this time. A separate order will accompany this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: October 17, 2025

---

[9] The Court notes that statutorily-protected information would need to go beyond simply the determination that YMTC and YMTJ pose a "risk of diversion" to other listed entities, Entity List Changes, 87 Fed. Reg. at 77,506, because that information is already "in the public domain" through the listing decision, Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007).

Husch Blackwell also points out that BIS released an ERC Recommendation Memo about adding a different company to the Entity List in other litigation. Pl.'s Reply in Supp. of Mot. for Summ. J. 6-7, Dkt. 27. However, there the plaintiff brought Administrative Procedure Act, ultra vires, and constitutional claims, not FOIA claims, so BIS could not rely on exemption 3 for withholding. See Compl. ¶¶ 84-104, Changji Esquel Textile Co. v. Raimondo, Civ. A. No. 21-1798 (RBW), 573 F. Supp. 3d 104 (D.D.C. 2021), aff'd, 40 F.4th 716 (D.C. Cir. 2022), Dkt. 1.