UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUSCH BLACKWELL, LLP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEPARTMENT OF COMMERCE, et al.,<br><br>　　　　　Defendants. | Civil Action No. 24-2733 (JDB) |

**DEFENDANTS' REPLY IN SUPPORT OF ITS SUPPLMENTAL BRIEF ON THE APPLICABILITY OF FOIA EXEMPTIONS 1 AND 3 TO THE DISPUTED RECORDS**

Defendants, the Department of Commerce and its Bureau of Industry and Security ("BIS") (collectively, "Defendants"), by and through undersigned counsel, respectfully submit this reply memorandum and, the attached detailed declaration, in support of their Supplemental Motion for Summary Judgment (ECF No. 35) (Defs.' Supp. MSJ). The remaining documents at issue in this case are five memoranda withheld under Exemption 3 and one document withheld under Exemption 1. For the reasons explained in its supplemental briefing memorandum and further explained in this reply, Defendants respectfully request that the Court find that they properly invoked FOIA Exemptions 1 and 3.

**I.   Plaintiff's proposed two-prong test for interpreting 50 U.S.C § 4820(h) has no basis in case law or legislative history.**

As this Court recognized, Exemption 3 "shields documents that another statute specifically exempts from disclosure" after fulfillment of a "two-step inquiry as to, first, whether the other statute is an exemption 3 withholding statute and, second, whether the withheld records fall within the statute's coverage." Mem. Op., (ECF No. 33) at 9 (citing *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 165 (D.C. Cir. 2012)). In its summary judgment opinion, the Court

1

found that, at the first step, the Export Control Reform Act of 2018 ("ECRA") is an Exemption 3 withholding statute, and ordered supplemental briefing to help the Court make a determination on the second step.

Although the Court previously rejected the framework proposed in Plaintiff's opposition brief, Plaintiff again attempts to impose a *second* two-prong test through a strained statutory interpretation of ECRA's withholding provision, codified at 50 U.S.C. § 4820(h)(1)(B). Plaintiff argues that to qualify for withholding pursuant to Exemption 3, the government must establish the information pertains to "[b]oth a covered operation and a covered type of information." *See* Pl.'s Suppl. Resp., (ECF No. 36) at 1-6. Plaintiff asserted a similar framework in its opening brief. *See* Pl.'s MSJ (ECF No. 22-1) at 16-17, which the Court correctly declined to apply. *See generally* Mem. Op. That framework flies in the face of the statutory language and is unsupported by case law or legislative history.

Plaintiff cites no case to support its proposed interpretation, and the Defendants are unaware of any precedent interpreting this language in ECRA. Courts have, however, interpreted the confidentiality language of ECRA's predecessor statute, the Export Administration Act (EAA),[1] not once applying the kind of two-prong test that Plaintiff asserts. *See, e.g., Wisconsin Project on Nuclear Arms Control v. U.S. Department of Commerce*, 317 F.3d 275, 285 (2003); *Times Pub. Co. v. U.S. Dep't of Com.*, 236 F.3d 1286 (11th Cir. 2001); *Elec. Frontier Found. v. U.S. Dep't of Com.*, 622 F. App'x 627, 628 (9th Cir. 2015); *Elec. Frontier Found. v. Dep't of Com.*, 58 F. Supp. 3d 1008, 1011 (N.D. Cal. 2013), vacated and remanded sub nom. *Elec. Frontier Found. v. U.S. Dep't of Com.*, 622 F. App'x 627 (9th Cir. 2015).

---

[1] Statutory language included in ECRA not only reinstated the FOIA exemption in the EAA, but also further expanded the Department of Commerce's authority to withhold. *Compare* 50 U.S.C. § 4601 *et seq.* (1979) *with* 50 U.S.C. § 4820(h)(1)(B).

Nor does the legislative history of ECRA indicate that Congress intended to create such a two-prong requirement.[2] Although the EAA's confidentiality provision was shorter than that contained in the ECRA, there is nothing in the legislative history to indicate that Congress intended for the analysis for releasing covered information to take an entirely new form under ECRA.

Accordingly, as the Court properly concluded, the only applicable two-step inquiry at issue here was that of Exemption 3. Mem. Op. at 9. Regarding interpretation of the ECRA withholding provision, the Court correctly concluded that it creates a "default" for withholding information when that information is "submitted or obtained in connection with" activities similar to the items enumerated in § 4820(h)(1)(B)'s non-exhaustive list. *Id.*

## II. Entity List determinations are closely linked to the export licensing processes and other activities described in 50 U.S.C § 4820(h)(1)(B).

Plaintiff's assertions that placement on the Entity List is an entirely different process than BIS licensing, and governed by different regulations, are inaccurate and unfounded. The Export Administration Regulations (15 C.F.R Parts 730-774) generally govern the export, reexport, and in-country transfer of items subject to BIS jurisdiction, to include licensing requirements on such transactions, instructions to exporters on how to apply for a license, recordkeeping and reporting requirements for exporters, and enforcement activities. The Entity List, at Supplement No. 4 to 15 C.F.R. Part 744, is a tool used to notify the public of what BIS license requirements apply to transactions involving those entities listed on the Entity List. Moreover, entries on the Entity List

---

[2]     None of the following records, which comprise the legislative history for ECRA, discuss a two-prong test: 164 Cong. Rec. H7202-02 (2018 WL 3578653) (July 25, 2018);  H.R. REP. 115-874, 2018 WL 3620631 (July 25, 2018); 164 Cong. Rec. H6653-01, 2018 WL 3551236 (July 23, 2018) (same); 164 Cong. Rec. S4059-03, 2018 WL 3038310 (June 19, 2018); 164 Cong. Rec. S3403-01, 2018 WL 2902240 (June 11, 2018); 164 Cong. Rec. S3041-01, 2018 WL 2730621 (June 6, 2018). *See also* 1979 U.S.C.C.A.N. 1180, 1194, 1979 WL 10285 (Sept. 27, 1979) (relating to the EAA exclusion provision)

are BIS license requirements, with each entry including the scope of the license requirement and the review policy BIS will apply to review license applications submitted under this requirement.

To develop such BIS license requirements on end users, the End User Review Committee ("ERC"), chaired by BIS, relies on agency recommendations underpinned by information protected under ECRA, including, among other things, information about export transactions from license applications and Electronic Export Information forms submitted by exporters. The "other operations" covered in 4820(h)(1)(B) are those that are carried out under Title 50, Chapter 58, Subchapter I, which encompasses the licensing statute at 4815(a). That licensing statute requires the Commerce Secretary to establish a licensing procedure. And § 4812(b)(7) covers the Entity List ("lists of foreign persons who threaten the national security or foreign policy of the United States."). In sum, the operations of the ERC dovetail with the various activities of BIS described in 50 U.S.C. § 4820(h)(1)(B), in particular with respect to licensing. The reason for the need to protect information submitted to or obtained by the ERC—to promote candor and accuracy in the exporting public's engagement with BIS so that the agency can develop well-informed export controls consistent with U.S. national security and foreign policy priorities, and enforce those controls—is consistent with the need to protect information described in the BIS activities specifically described in § 4820(h)(1)(B).

**III.    The withheld memoranda contain information submitted by export license applicants or obtained in connection with BIS investigations covered by 50 U.S.C § 4820(h)(1)(B)(i)-(v).**

Plaintiff's argument that the ECRA does not require withholding of the memoranda submitted to the ERC because the memoranda are not included in the non-exhaustive, illustrative list of information types set forth in 50 U.S.C. § 4820(h)(1)(B)(i)-(v) is unavailing as these memoranda contain information from the types of sources included in that list.

4

As explained in Defendants' supplemental brief, the memoranda include information pertaining to export license determinations (§ 2840(h)(1)(B)(iii)) as well as information obtained in the course of BIS Export Enforcement investigations (§ 2840(h)(1)(B)(iv)). *See* Defs.' Supp. MSJ at 6. Since that information pertaining to license determinations and those investigation files is protected from disclosure by § 4820(h)(1)(B), then the information is also protected when it is contained in other sources, such as the memoranda and draft memoranda at issue. It is the content of the information, not the label of the document in which it appears, that exempts it from disclosure. *See, e.g., Currie v. I.R.S.*, 704 F.2d 523, 531 (11th Cir. 1983) (holding that agency memoranda could be withheld because they contained information from tax returns.).

Plaintiff argues that it is not seeking release of any such exempt information, but merely the memoranda that contain it, and that any exempt information can be redacted. *See* Pl.'s Opp'n (ECF No. 36) at 6-9. But redaction of these memoranda would not produce useable documents. The exempt, protected information is inextricably intertwined with the remaining content, such that redaction of exempt content would render the memoranda meaningless. *See* Boucher 4th Decl. ¶ 4. The D.C. Circuit has consistently held that agencies are not required to attempt such redaction when a small percentage of the content of a document is non-exempt "and it is interspersed line-by-line throughout the document [such that] the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words []." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977); *Farahi v. Federal Bureau of Investigation*, 153 F.4th 1283, 1286 (D.C. Cir. 2025).

Plaintiff argues, in the alternative, that the Court should reconsider its prior pronouncement and instead order the Defendants to disclose redacted versions of the memoranda. Pl.'s Suppl. Resp. at 7-9. However, the Court, with much consideration and support, correctly concluded that

"there is no segregation requirement for records properly withheld under exemption 3." Mem. Op. at 6. This comports with the D.C. Circuit's view that "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; [but rather] the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Gannett Satellite Info. Network, LLC v. U.S. Dep't of Just.*, No. 22-CV-475 (BAH), 2023 WL 2682121, at *5 (D.D.C. Mar. 29, 2023) (quoting *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007)). Accordingly, because the documents at issue here are properly withheld under Exemption 3, there is no duty to disclose redacted versions of these documents (were meaningful redaction possible, which it is not).

IV. **Plaintiff's arguments regarding FOIA Exemption 1 do not address the required elements of that exemption.**

Defendants' Supplemental Brief established that Document 121 contained information that has been deemed classified and was in fact properly classified under Executive Order 13526 of December 29, 2009, *Classified National Security Information,* and that proper procedures were followed when classifying the record. Rather than challenging the evidence that the Defendants have provided to satisfy these criteria, Plaintiff offers arguments that are at best tangential to the required Exemption 1 analysis. First, Plaintiff notes that Carmen Quesenberry does not state in her declaration that she has classifying authority and does not identify the classifying authority. However, there is no requirement that Quesenberry possess such authority or that Defendants identify the classifying authority. *See Judicial Watch, Inc. v. U.S. Dept. of Defense*, 857 F.Supp.2d 44, 59 (D.D.C., 2012) (procedural defects insufficient to justify release if classification decision was correct.). Instead, the key question is whether an appropriate authority made the classification, and Chair Quesenberry's declaration affirms that this is the case. *See* Quesenberry Decl. (ECF No. 35-2) ¶12. In addition, Stephanie Boucher, BIS's Director of the Office of Planning, Evaluation

6

and Management, has confirmed with the agency that classified this document that it has done so in accordance with that agency's classification guide. Boucher 4th Decl. ¶2.

Second, Plaintiff appears to argue that because YMTC and YMTJ are not named in the declaration's Exemption 1 explanation, Defendants have failed to provide an explanation that is tailored to the facts of this case. But the declaration provides details that address the specifics of this document. It states that the withheld "materials contain information regarding intelligence activities and sources and methods authorized under the Foreign Intelligence Surveillance Act of 1978" and "include technical analyses, intelligence assessments, and communications that reveal the scope, methods, and strategic priorities of U.S. export control enforcement related to advanced dual-use technologies." Quesenberry Decl. ¶¶ 14-15. It is not necessary for Defendants to name YMTC, YMTJ, or any other company to establish that this document was properly classified and that its release would cause exceptionally grave damage to national security.

Finally, Plaintiff's proposal to release portions of the document is unworkable. Releasing information such as the author, date, and title of the withheld document would effectively disclose exempt information about the methods the Government uses to enforce the export control laws of the United States. *See American Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 433 (D.C. Cir., 2013) (noting that there may be cases where the agency can recognize the existence of documents while defensibly withholding description of those documents.). The agency that classified this document has confirmed that its source is not to be identified, as attribution of the source could itself lead to disclosure of that agency's sources and methods. *See* Boucher 4th Decl. ¶ 3.

Dated: February 23, 2026                           Respectfully submitted,

                                                     JEANINE FERRIS PIRRO
                                                     United States Attorney

By: */s/ Derrick A. Petit*
Derrick A. Petit, D.C. Bar No. 144466
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7269
Derrick.Petit@usdoj.gov

*Attorneys for the United States of America*