UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HUSCH BLACKWELL LLP, | ) ) ) | Civil Action No. 1:24-cv-02733 |
| Plaintiff, | ) ) | (JDB) |
| v. | ) ) | |
| DEPARTMENT OF COMMERCE, et al., | ) ) ) | **PLAINTIFF'S RESPONSE BRIEF PER COURT ORDER [ECF 38]** |
| Defendants. | ) ) ) | **[ORAL ARGUMENT REQUESTED]** |
| | ) | |

The Government still refuses to disclose the basic facts. It obscures from public view *which* of six memoranda was the "final proposal" that resulted in YMTC's and YMTJ's placement on the Entity List, *how* the ERC and ACEP member agencies voted (the votes were necessarily contested, *see* ECF 36, at 9 n.4), and *when* the votes took place. The Government offers no sufficient justification for withholding these basic facts—or any other information.

The Government retreats from its prior position that the memoranda, in their entirety, are exempt under ECRA's "other operations" language. While nominally still defending that position, the Government does so only as an afterthought, adding nothing new. *See* ECF 39, at 5. For its principal argument, the Government pivots to claiming that the withheld memoranda *contain* protected information. The Government thereby effectively concedes that parts of the memoranda can—and must—be analyzed separately to determine whether they are protected. If the Government is wrong about any *part* of any memorandum, then, that part should be segregated and disclosed. ECF 36, at 7–9 & n.2. (Indeed, even under Exemption 3, the Government has already *partially produced* emails. *E.g.*, ECF No. 22-17 at 2, 4 of 63.)

The memoranda should be disclosed. If some information is covered by Exemption 3, it should be redacted. At minimum, public information and voting information should be disclosed.

**Document 118**

Category 1 includes "a summary of ERC procedures and calls for a vote on the recommended action." ECF 39, at 2. The Government's explanation for withholding this information is unsupported and conclusory. The explanation, in its entirety, is that the information was "obtained in the course of then-ongoing BIS investigations of potential violations of the [EAR]," and "[a]s such, it is information obtained in connection with an 'enforcement activity.'" *Id.* This explanation

1

is not supported by a declaration[1] and offers nothing new or responsive to the Court's order. And it is a conclusory recitation of statutory language that does not suffice.[2]

Separately, the Government does not explain how a "summary of ERC procedures" or "calls for a vote on the recommended action" were—or could have been—"obtained in the course of then-ongoing BIS investigations." ECF 39, at 2. Such a "summary" and "calls for a vote," especially in final form as requested by Husch, cannot be "obtained" in any investigation or "obtained" at all; it is information *created* or *prepared*. The statute's use of the words "submitted or obtained"—as opposed to a phrase like "prepared in connection with" or a broader term like "related to"—shows that Congress sought to protect outside information making its way into an agency's hands, either voluntarily or upon request. *See* ECF 36, at 3–4; *infra* note 4.

Category 2: The Government's explanation is again unsupported and conclusory. Plus, Category 2 is made up of "open-source"—i.e., public—information that is not protected.[3]

Categories 3–5: The Government's explanation is again unsupported and conclusory.

Category 6: As Husch explained previously, for ECRA's confidentiality provision to apply, the responsive information must *both* (1) have been "submitted or obtained in connection with" a covered operation, and (2) be a covered type of information. ECF 36, at 1–3; 50 U.S.C. § 4820(h)(1)(B). The Government says the information in Category 6 was "submitted or obtained

---

[1] The Quesenberry Declaration states only that "as part of its consideration of Entity List recommendations, the ERC reviews information obtained in connection with enforcement-related investigations and other enforcement activities." ECF 35-2, ¶¶ 29–30. Chair Quesenberry neither states that the ERC actually did so here, provides detail about any actual investigation, nor explains which documents or parts thereof contain such enforcement- or investigation-related information.
[2] *See Shapiro v. U.S. Dep't of Just.*, 507 F. Supp. 3d 283, 314 (D.D.C. 2020) (explaining that "an agency invoking Exemption 3 must demonstrate its applicability in a nonconclusory and detailed fashion" with "the kind of detailed, scrupulous description that enables a District Court judge to perform a searching de novo review" (citation modified)).
[3] *See Lenz v. CIA*, 2025 WL 2390005, at *6 (D.D.C. Aug. 18, 2025) ("[I]f the information the IRS has redacted pursuant to Exemption 3 is already public, then the Exemption cannot be invoked.").

in connection with" a "license or other authorization" or "a recordkeeping or reporting require-ment.'" ECF 39, at 2. But those are merely covered operations—half of what the Government had to show. The Government never explains how the Category 6 EEI documents fit into one of ECRA's (i)–(v) covered types of information or something else "in the same mold." ECF 33, at 12.

**<u>Document 112</u>**

Categories 1–2: The Government's asserted justification reads, in its entirety: "The infor-mation . . . was 'submitted or obtained in connection with . . . other operations under this subchap-ter,' *because they are ERC records*." ECF 39, at 3 (emphasis added). That is, the Government says all ERC records are exempt under ECRA. But this Court rejected the Government's prior resort to an identical explanation—that information is "shielded under ECRA simply 'because Entity List activities fall within the "other operations" prong' of the statute"—as "not responsive to the Court's order." ECF 38, at 1. The Government has never satisfactorily explained how the Entity List pro-cess is an "other operation[] under this subchapter." ECF 36, at 7–8. Even if it had, that still would not be enough: while "other operations" is a covered operation, the information in Categories 1 and 2 is not *also* a covered type of information. ECF 36, at 1–3; 50 U.S.C. § 4820(h)(1)(B).

Category 2, moreover, contains public "open-source information" that is not protected.

Categories 3–7: The Government's explanation here mimics that for Categories 1 through 5 of Doc. No. 118. It is unsupported and conclusory for the same reasons. Category 3 also contains public "open-source information" that is not protected. *Lenz*, 2025 WL 2390005, at *6.

Category 8: This category—and the response to it—parallels Category 6 of Doc. No. 118.

Category 9: The Government says that this information was "submitted or obtained in con-nection with an application for a license or other authorization," a covered operation. But only one of the multiple pieces of information in Category 9—"the determination of that license request"—is *also* a covered type of information, as ECRA's text requires. Plus, none of the Government's

declarations provide detail about such a license request or determination beyond parroting statutory language. As to the other information, the Government's conclusory reference to "enforcement activity" fails for the same reason it fails to support the Categories 3 through 7 withholdings.

**Document 106**

"This document contains a summary of relevant prior actions by the ERC regarding YMTC, Yangtze Memory Technologies (Japan) Inc. ("YMTJ"), Hefei, and two other companies, including the results and effect of a recent ERC vote." ECF 39, at 3–4. The Government had previously relied on the "other operations" language in ECRA. ECF 35-4, at 9. Now, for the first time, the Government claims that the "information contained in this document was obtained in the course of the enforcement investigations described in Documents 112 and 118." ECF 39, at 3–4.

This explanation does not meet the Government's burden. The Government apparently contends that a "summary" of "actions" and "the results and effect of a recent ERC vote" is "information submitted or obtained in connection with . . . an enforcement activity." § 4820(h)(1)(B). But such a summary of actions and result of a vote is not information "submitted or obtained" at all; it is information *created* or *prepared*. The statute's use of the words "submitted or obtained"—as opposed to a phrase like "prepared in connection with" or a broader term like "related to"—shows that Congress sought to protect outside information making its way into an agency's hands, either voluntarily or upon request. *See* ECF 36, at 3–4.[4] The information at issue is not protected.

Besides its say-so, moreover, the Government never explains *how* the information falls within the "enforcement activity" description. Though the Government refers to "enforcement

---

[4] Further, the Government's position that procedural "actions by the ERC" and "the results and effect of a recent ERC vote" were somehow "obtained in the course of . . . enforcement investigations" contradicts the Government's prior, primary Exemption 3 argument that the Entity List process, which is administered by the ERC, is "closely linked with" and "just the other side of the same licensing coin" as affirmative licensing activities. ECF 39, at 5, 6–7.

investigations described in Documents 112 and 118," those documents have also been withheld. Neither Husch nor the Court knows whether any "enforcement investigations" were "described in Documents 112 and 118," much less what any such investigations entailed.

Again, the Quesenberry Declaration does not help the Government meet its burden. Chair Quesenberry states only that "as part of its consideration of Entity List recommendations, the ERC reviews information obtained in connection with enforcement-related investigations and other enforcement activities." ECF 35-2, ¶¶ 29–30. She does not state that the ERC actually reviewed such information here—nor, more importantly, that the information was "submitted or obtained" in connection with an "enforcement activity" or other covered operation. Merely "review[ing]" information is not the same. Finally, she provides no information about Documents 112 or 118 or what "enforcement investigations" were supposedly described in those documents.[5]

**Documents 98, 14, 22**

The Government's justifications for withholding Documents 98, 14, and 22 mirror its justifications for withholding Document 106. Husch's response is the same, too.

## CONCLUSION

The Court should order the Government to disclose all documents remaining at issue in their entirety. Alternatively, the Court should order the Government to disclose properly redacted versions of those documents. The Court should also conduct *in camera* review.

---

[5] *See Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 106 (D.D.C. 2009) (Bates, J.) (rejecting as insufficient declaration that stated "[b]ecause the Corps had an enforcement pending for potential permit non-compliance on Little Island [and Dobbins Island], certain records relating to those investigations were flagged for potential withholding under exemption 7"); *Brick v. Dep't of Just.*, 293 F. Supp. 3d 9, 11 (D.D.C. 2017) (K.B. Jackson, J.) (rejecting as insufficient declaration "consisting almost entirely of the conclusory contention that 'the information collected was integrated into national security/criminal investigation of third party individuals'"); *Miller v. U.S. Dep't of Just.*, 562 F. Supp. 2d 82, 118 (D.D.C. 2008) ("The State Department's supporting declaration neither explains adequately the manner and circumstances under which the telegrams were compiled nor links these telegrams to any enforcement proceeding.").

DATED: March 20, 2026.

Respectfully submitted,

By: /s/ Joseph S. Diedrich
    Joseph S. Diedrich (D.C. Bar No. 90006611)
    Steven A. Neeley (D.C. Bar No. 998792)
    HUSCH BLACKWELL LLP
    1801 Pennsylvania Avenue NW, Suite 1000
    Washington, DC  20006
    Telephone: (202) 378-2331
    Facsimile: (202) 378-2319
    joseph.diedrich@huschblackwell.com
    steve.neeley@huschblackwell.com

    *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Memorandum of Points and Authorities was served on Defendant via CM/ECF, per LCvR 5.4(d)(1), this 20th day of March, 2026, to the following:

Jeanine Ferris Pirro
United States Attorney

Derrick Petit
Assistant United States Attorney

601 D Street, NW
Washington, DC 20530
(202) 252-2550

*Attorneys for the United States of America*

/s/ Joseph S. Diedrich
Joseph S. Diedrich

7