UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUSCH BLACKWELL LLP,
    Plaintiff,

    v.

DEPARTMENT OF COMMERCE, *et al.*,
    Defendants.

Civil Action No. 24-2733 (JDB)

MEMORANDUM OPINION

In this Freedom of Information Act (FOIA) dispute, Husch Blackwell seeks the final proposal to list two foreign corporations—Yangtze Memory Technologies Corporation (YMTC) and Yangtze Memory Technologies Corporation (Japan) (YMTJ)—on the Bureau of Industry and Security's (BIS) export restrictions list. BIS withheld the responsive documents under FOIA's national security and statutory exemptions and, in an earlier opinion, the Court ordered BIS to provide further detail on why the two relevant exemptions applied.

In its supplemental brief and accompanying declarations, BIS provided a detailed explanation of the potential harm to national security from disclosure of information in the sole document withheld under FOIA's national security exemption, thereby satisfying its burden as to that document. And it adequately explained that another document was properly withheld under the Export Control Reform Act of 2018 (ECRA) pursuant to its FOIA exemption for information submitted in connection with a reporting requirement.

However, because BIS's supplemental brief was not fully responsive to the Court's order and was ambiguous in places, the Court ordered another brief to clarify the government's asserted bases for withholding other documents under FOIA's statutory exemption. Following its second

1

supplemental brief, BIS has adequately explained that eight unique memoranda are subject to withholding under the statutory exemption because they contain information obtained in the course of investigations. And all other documents are copies or drafts of those eight memoranda.

Therefore, the Court will grant BIS's renewed motion for summary judgment.

### Background

The overall statutory and procedural background is set out in the Court's prior opinion. See Husch Blackwell LLP v. Dep't of Com., Civ. A. No. 24-2733, 2025 WL 2959639, at *1-2 (D.D.C. Oct. 17, 2025). This opinion will therefore address only the outstanding issues, which pertain to FOIA exemptions 1 and 3. FOIA exemption 1 shields from disclosure information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 3 generally covers information "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." Id. § 552(b)(3)(A).

In its earlier opinion, the Court held that BIS had not carried its burden under exemption 1 because it "simply recite[d] the statutory standard that the information is classified and its release would cause grave damage to national security." Husch Blackwell, 2025 WL 2959639, at *5. Although courts "'defer[] to executive affidavits predicting harm to national security' under exemption 1[,] . . . "a declaration will not suffice . . . 'if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" Id. at *4 (first quoting ACLU v. DOD, 628 F.3d 612, 624 (D.C. Cir. 2011); then quoting Campbell v. DOJ, 164 F.3d 20, 30

(D.C. Cir. 1998)).  Thus, the Court ordered BIS to provide "a more specific declaration explaining the national security risks from disclosure."  Id. at *5.

As to exemption 3, the Court first determined that ECRA is an exemption 3 withholding statute because it "specifically cites to exemption 3 and refers to particular types of matters to be withheld."  Id. (citations omitted).  However, the Court then held that, although ECRA's "lists of information types to be presumptively withheld are not exhaustive," the information still "must be submitted or obtained in connection with an operation or activity similar to the enumerated list."  Id. at *7.[1]  In support of its withholding decision, BIS "simply state[d] that the documents that Husch Blackwell seeks . . . are memoranda submitted to the ERC [End-User Review Committee] or ACEP [Advisory Committee on Export Policies] regarding additions to the Entity List."  Id. at *7.  The Court accordingly concluded that BIS had "not done enough" and ordered it to "provide further detail as to the applicability of exemption 3."  Id. at *7-8.

The Court further noted that failure to provide the requisite level of detail to sustain withholding information under either exemption "may warrant exercise of the Court's 'broad discretion' to conduct in-camera review."  Id. at *8 (quoting ACLU, 628 F.3d at 626).

---

[1] ECRA describes information to be presumptively withheld as:

> [I]nformation submitted or obtained in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, an enforcement activity, or other operations under this subchapter, including—
>
> (i) the license application, license, or other authorization itself;
>
> (ii) classification or advisory opinion requests, and the response thereto;
>
> (iii) license determinations, and information pertaining thereto;
>
> (iv) information or evidence obtained in the course of any investigation; and
>
> (v) information obtained or furnished in connection with any international agreement, treaty, or other obligation.

50 U.S.C. § 4820(h)(1)(B).

In response to the Court's order, BIS submitted a supplemental motion for summary judgment along with two declarations, an updated Vaughn index, and a supplemental statement of facts. Defs.' Suppl. Mot. & Attachs. (Defs.' Mot.), Dkt. 35. Husch Blackwell opposes summary judgment and asks the Court to order disclosure of responsive documents or, in the alternative, to conduct in camera review. Pl.'s Opp'n 1, 10, Dkt. 36. Because BIS's first supplemental brief was in part not responsive to the Court's order and in part ambiguous, the Court ordered BIS to clarify its bases for withholding certain memoranda under exemption 3. See Order, Dkt. 38. BIS has now provided its second supplemental brief, Defs.' 2d Suppl. Br., Dkt. 39, and Husch Blackwell has responded, Pl.'s Resp., Dkt. 40. The supplemented motions are therefore ripe for consideration.

## Discussion

### I.      Exemption 1

BIS has withheld one 13-page document under exemption 1, which it describes as a "[c]lassified document from [a] non-attribution agency related to adding entities to the Entity List and providing supporting information." Vaughn Index 11, Dkt. 35-4. To bolster its withholding decision, BIS has now submitted a declaration from Carmen Quesenberry, Chair of the ERC, detailing the potential harm from disclosing the document at issue. Decl. of Carmen Quesenberry, Dkt. 35-2 (Quesenberry Decl.).

Quesenberry first states that the withheld document is classified as top secret. Id. ¶¶ 12-13. She then explains that it contains "information regarding intelligence activities and sources and methods authorized under the Foreign Intelligence Surveillance Act of 1978 (FISA)" as well as "technical analyses, intelligence assessments, and communications" about "export control enforcement related to advanced dual-use technologies." Id. ¶¶ 14-15.

4

According to Quesenberry, disclosure could reveal "sensitive collection capabilities and targets of foreign intelligence," "the scope, methods, and strategic priorities of U.S. export control enforcement," and "strategic insights into U.S. national security decision-making processes, significantly weakening the nation's ability to prevent the proliferation of controlled technologies." Id. ¶¶ 14-16. Moreover, she asserts that disclosure could "enabl[e] foreign adversaries to circumvent U.S. controls," "[e]xpose the identities of foreign partners, intelligence sources, or investigative targets," "allow hostile entities to design around U.S. controls," and "impede the free exchange of classified information among allies." Id. ¶ 17. Finally, she says that disclosure of FISA-related materials could reveal "how intelligence is collected" and "operational tradecraft" as well as "undermine foreign partnerships." Id. ¶ 18.

This is precisely the kind of detailed agency declaration predicting harm to national security that warrants judicial deference. See ACLU, 628 F.3d at 624 (affirming withholding of classified information where the agency "identified five reasons" why disclosure may harm national security).

Husch Blackwell offers three arguments for why BIS's declaration remains insufficient, none of which holds water. First, it observes that BIS does not identify the classifying authority for the withheld document. Pl.'s Opp'n 9. However, BIS does explain that the document came from a "non-attribution agency." Vaughn Index 11. In other words, the name of the originating agency is itself classified, which makes sense when it would harm national security to disclose that a specific agency was engaged in particular intelligence activities. Cf. Nat'l Sec. Couns. v. CIA, 960 F. Supp. 2d 101, 165-68 (D.D.C. 2013) (rejecting challenge to exemption 1 withholding as to properly classified information about "the specifics of FOIA requests referred from other government agencies for which the CIA sought non-attribution"). Quesenberry's declaration also

states that she "confirmed with the original classifying authority" the national security harms from disclosure, Quesenberry Decl. ¶ 12, and there is no indication that the original classification was improper.

Second, Husch Blackwell points out that the Quesenberry declaration does not use the words YMTC or YMTJ.  Pl.'s Opp'n 9.  But that misconstrues the exemption 1 test, which focuses on the national security harm from disclosure.  And to the extent that Husch Blackwell is implying that the withheld document is not relevant to its inquiry, then it would be properly withheld as nonresponsive in any event.

Third, Husch Blackwell highlights that the Quesenberry declaration does not speak to segregability, id. at 10, but in a supplemental declaration the agency explains that even releasing the document's "title, date, and authors could lead to the disclosure of sources and methods," 4th Decl. of Stephanie Boucher ¶ 3, Dkt. 37-1 (4th Boucher Decl.).  That is logical in light of the originating agency's request for non-attribution.  And the D.C. Circuit has "consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated."  Ctr. for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 927 (D.C. Cir. 2003).

Thus, BIS's withholding under exemption 1 is proper.

## II.        Exemption 3

BIS has withheld 23 memoranda totaling 114 pages under exemption 3.  See Vaughn Index.[2]  Numerous memoranda are also unsigned drafts or duplicates of other memoranda in the Vaughn index.  The only memoranda withheld under exemption 3 that are not unsigned drafts or

---

[2] BIS now states that six memoranda totaling 36 pages were included in the list of responsive records in error because they do not refer or relate to either YMTC or YMTJ.  See Defs.' Mot. 2 n.2; Boucher Decl.; Defs.' Suppl. Statement of Material Facts ¶ 5, Dkt. 35-5.  Those six memoranda are not included in the tally of 23 withheld memoranda.

duplicates of other memoranda identified in the Vaughn index are documents 14, 22, 98, 101, 106, 112, 114, 118, and 120, totaling 54 pages.[3]

Following the Court's order for more specificity, BIS argued in its first supplemental brief that the withheld information is similar to "an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities, a recordkeeping or reporting requirement, [or] an enforcement activity."  See 50 U.S.C. § 4820(h)(1)(B); Defs.' Mot. 6-9; Quesenberry Decl. 7-11; Vaughn Index.  Out of the nine unique documents identified above, BIS contended that information "was obtained for licensing and/or in the course of an investigation" for the following memoranda: 14, 22, 98, 112, 114, 118, and 120.  See Vaughn Index.  For document 101, BIS also said the information was obtained "from recordkeeping and reporting requirements."  Id. at 9.  For document 106, BIS simply said that the information falls within the residual clause of "other operations."  Id.

A.    Statutory Interpretation

Husch Blackwell contests the Court's interpretation in its earlier memorandum opinion of both FOIA and ECRA.  The Court maintains its view of both statutes.

Husch Blackwell first contests the Court's determination that the FOIA Improvement Act carved out exemption 3 from FOIA's general segregability requirements.  Pl.'s Opp'n 7 n.2; see also 5 U.S.C. § 552(a)(8).  For Husch Blackwell, the Improvement Act added a foreseeability-of-harm test into FOIA and excluded from that new test information withheld under exemption 3 but did nothing to change FOIA's segregability requirements as to exemption 3.  Pl.'s Opp'n 7 n.2.

---

[3] The Vaughn index states that documents 14 and 101 are themselves unsigned drafts, and Husch Blackwell requested the "final proposal" to list YMTC and YMTJ, Pl.'s Opp'n 1, so it is not clear how these two documents are responsive.  Nevertheless, the Court includes them in the count of unique documents because BIS considers them to be responsive.

In its second supplemental brief, the government states for the first time that documents 114 and 120 are in fact duplicates of document 112.  Defs.' 2d Suppl. Br. 3.  The outcome would be the same either way.

The problem with this reading comes in the structure of the relevant provision.[4]  Paragraph 552(a)(8) is broken down into subparagraphs (A) and (B).  Within subparagraph (A), clause (A)(i) adds the foreseeability-of-harm test and clause (A)(ii) requires segregation of nonexempt information.  Subparagraph (B) in turn carves out information "otherwise exempted from disclosure under subsection (b)(3)."  In other words, exemption 3 information is carved out of both the Improvement Act's foreseeability-of-harm test and its reiteration of FOIA's reasonable segregation requirement.  If Congress wanted to keep the segregability requirement as to exemption 3 information, it would have put the exemption 3 carve-out into clause (A)(i).  And Husch Blackwell's interpretation does not make logical sense either: it reads the Improvement Act as doing away with the responsibility to "tak[e] reasonable steps necessary to segregate" information except insofar as the information was "reasonably segregable."  Compare 5 U.S.C. § 552(a)(8)(A)(ii)(II), with 5 U.S.C. § 552(b).  Thus, the Court remains of the view that segregation is not required for records properly withheld under exemption 3.[5]

---

[4] The full text of paragraph 552(a)(8) is:

(A)An agency shall—

  (i) withhold information under this section only if—

    (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

    (II) disclosure is prohibited by law; and

  (ii)

    (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

    (II) take reasonable steps necessary to segregate and release nonexempt information; and

  (B) Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3).

5 U.S.C. § 552(a)(8).

[5] There is also no indication that BIS has tried to improperly insulate otherwise disclosable records by tacking on exemption 3 information.  Of course, courts retain discretion to deny summary judgment when presented with "evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quotation omitted).

Even if segregation were required, "the government may withhold records in their entirety when nonexempt portions are inextricably intertwined with exempt portions." Farahi v. FBI, 153 F.4th 1283, 1286 (D.C. Cir. 2025) (citation modified). "A court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." Id. (quotation omitted); see also Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (affirming district court finding of non-segregability when Vaughn index described each document withheld and affidavit from agency official stated that the official "personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained releasable information which could reasonably be segregated from the nonreleasable portions'").

Here, BIS submitted a declaration stating that Stephanie Boucher, the agency's FOIA supervising official, "personally conducted a line-by-line review of all unclassified records responsive to Plaintiff's FOIA requests . . . and concluded that the Department released all reasonably segregable non-exempt information, and that no further segregation is possible without disclosing exempt information." Decl. of Stephanie Boucher ¶ 49, Dkt. 21-1 (Boucher Decl.). To further bolster that assertion, in Boucher's latest declaration she stated that exemption 3 information is "interwoven into all parts of the memoranda, such that removing the confidential information protected by statute would render the documents meaningless." 4th Boucher Decl. ¶ 4. In light of the D.C. Circuit's deference to similar agency declarations about segregability, and absent any indication of bad faith, the Court finds that information in the memoranda at issue is not reasonably segregable.

Turning next to ECRA, Husch Blackwell argues that withheld information must relate to "[b]oth a covered operation and a covered type of information" to be protected from disclosure by

9

exemption 3. Pl.'s Opp'n 3. In other words, in Husch Blackwell's view 50 U.S.C. § 4820(h)(1)(B) establishes a two-pronged test. Not so. The Court expressly held in its earlier opinion that "the lists of information types to be presumptively withheld are not exhaustive but the information must be submitted or obtained in connection with an operation or activity similar to the enumerated list." Husch Blackwell, 2025 WL 2959639, at*7. Simply put, the question at issue is "whether the withheld memoranda include 'information submitted or obtained in connection with' ECRA 'operations' similar to the preceding categories of activities or ensuing list of examples." Id. (emphasis added) (quoting 50 U.S.C. § 4820(h)(1)(B)). And as the government points out, Husch Blackwell "cites no case to support its proposed interpretation." Defs.' Reply 2, Dkt. 37.

Thus, the Court rejects Husch Blackwell's interpretation of both FOIA and ECRA.

B.    Application to Documents in Dispute

Returning to the list of documents that remain in dispute, all nine unique memoranda have been properly withheld. Because the other documents are copies or drafts of those nine memoranda, they have been properly withheld as well.

First, document 101 has been properly withheld. The Vaughn index explains that this memorandum includes "trade data reported in Electronic Export Information (EEI) from the U.S. Automated Export System (AES)," i.e., "reporting requirements under the Export Administration Regulations [(EAR)]." Vaughn Index at 9; see also Defs.' Mot. 8 (explaining that the "EAR requires exporters to file an EEI in certain circumstances" (citing 15 C.F.R. § 758.1.)); 50 U.S.C. § 4820(h)(1)(B) (setting out "recordkeeping or reporting requirement" basis for withholding). And "Congress's actions throughout the long history of [ECRA's predecessor statute] evince a clear appreciation of the dangers inherent in exposing export application data to public view." Wis. Project on Nuclear Arms Control v. Dep't of Com., 317 F.3d 275, 281 (D.C. Cir. 2003); see also

15 C.F.R. § 30.69 (setting out confidentiality of EEI).  Husch Blackwell's only arguments for the release of this memorandum are premised on either its two-pronged test or inadequate segregation, but the Court rejected both of those theories above.

That leaves eight memoranda (including two unsigned drafts) totaling 46 pages.  For one memorandum—document 106—BIS plainly did not adequately explain its withholding decision in its first supplemental brief.  As discussed above, the Court instructed BIS to explain how the withheld information was "similar to the preceding categories of activities or ensuing list of examples."  Husch Blackwell, 2025 WL 2959639, at *7 (emphasis added) (citing 50 U.S.C. § 4820(h)(1)(B)).  But the Vaughn index entry for document 106 simply gestures to the residual category of "other operations," which is exactly the general term that cannot bear the weight BIS seeks to place on it.

For seven more memoranda—documents 14, 22, 98, 112, 114, 118, and 120—the government stated in its first supplemental brief that the information in the memoranda was "obtained for licensing and/or in the course of an investigation."  Vaughn Index, passim.  It is not entirely clear what the government means by "for licensing," but the Court discerns three possible readings in the government's briefing.

First, in its initial supplemental brief the government contended that imposing license restrictions by adding an entity to the Entity List is "just the other side of the same licensing coin" as "issuing a license." Defs.' Mot. 7.  That suggests that the government may view the memoranda as including information "submitted or obtained in connection with an application for a license or other authorization to export, reexport, or in-country transfer items or engage in other activities." 50 U.S.C. § 4820(h)(1)(B).  But as Husch Blackwell points out, a license application "is initiated by an outside party to obtain a license for itself" whereas a listing decision is a "determin[ation]

that exports by <u>others</u> are presumptively prohibited <u>to</u> an entity on the List."  Pl.'s Opp'n 5.

Though it is plausible that Congress would want to shield both types of information, the reasons

for shielding application information (e.g., privacy of an applicant) are quite different from those

for shielding a listing determination (e.g., national security).  And the fact that Congress listed

licensing "determinations" later in the same list suggests that it did not intend for licensing

"application" to bear so capacious a meaning.  <u>See, e.g.</u>, <u>Sw. Airlines Co. v. Saxon</u>, 596 U.S. 450,

457-58 (2022) (applying the "meaningful-variation canon" (citing A. Scalia & B. Garner, Reading

Law 170 (2012))).

Second, in its reply, the government also stated that "Entity List determinations are closely

linked to the export licensing processes."  Defs.' Reply 3.  To the extent that the government is

making a general argument that, without more, "memoranda submitted to the ERC or ACEP

regarding additions to the Entity List" are shielded from disclosure in view of the overall statutory

purposes and scheme, that argument is foreclosed by the Court's holding to the contrary in its

earlier opinion.  <u>Husch Blackwell</u>, 2025 WL 2959639, at *7.

Third, the reply argued that listing decisions are similar to "license determinations, and

information pertaining thereto," 50 U.S.C. § 4820(h)(1)(B)(iii), <u>cited by</u> Defs.' Reply 5, but that

argument is forfeit because it appears nowhere in the opening brief, <u>see, e.g.</u>, <u>Twin Rivers Paper</u>

<u>Co. v. SEC</u>, 934 F.3d 607, 615 (D.C. Cir. 2019) (explaining that "an argument is forfeited if the

petitioners 'were obscure on the issue in their opening brief and only warmed to the issue in their

reply brief'" (quotation omitted)).  Thus, in its first supplemental brief the government advanced

no satisfactory basis for withholding documents containing information "obtained for licensing."

And because the government stated that the seven memoranda were withheld for including

information "obtained for licensing and/<u>or</u> in the course of an investigation," <u>Vaughn</u> Index,

passim (emphasis added), the first supplemental brief did not make clear that there was an independent ground for withholding these memoranda on the sole basis that they contain investigatory information. Therefore, BIS initially did not carry its burden as to these documents either.

Nevertheless, BIS's second supplemental brief has cured this deficiency. In that brief, the government explains that documents 14, 22, 98, 106, 112, 114, 118, and 120 all contain information obtained in the course of then-ongoing BIS investigations into potential EAR violations. See Defs.' 2d Suppl. Br.; 50 U.S.C. § 4820(h)(1)(B)(iv) (setting out "information or evidence obtained in the course of any investigation" as a basis for withholding). All other documents that remain at issue are duplicates or drafts of these eight memoranda, so the same withholding logic applies. See Vaughn Index, passim. And as discussed above, BIS need not segregate documents withheld under exemption 3 and, in any event, adequately explained why the documents that remain at issue here are not reasonably segregable.

In response, Husch Blackwell primarily renews its statutory interpretation arguments, which the Court rejected above, and argues that BIS's assertions—that information included in the withheld memoranda was obtained in the course of investigations—are too conclusory to pass muster. Pl.'s Resp. But "[e]xemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quotation omitted). Moreover, BIS does provide detail on the investigatory information, for example describing it as "information regarding YMTC's linkages with certain foreign governments and private companies," "information regarding corporate structure and capabilities of some companies

related to YMTC," and "information about a BIS investigation into a separate company."  Defs.'

2d Suppl. Br. 1-2; see also id. at 2-3.  That is enough specificity.

Accordingly, BIS has satisfied its burden to show that it properly withheld the documents

in dispute under exemption 3.

## CONCLUSION

For the foregoing reasons, the Court will grant BIS's motion for summary judgment as to

all documents that remain in dispute.  A separate order will accompany this opinion.

/s/

JOHN D. BATES

United States District Judge

Date: April 7, 2026

14